UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

APPEAL NO. 20-13983

---

SOUL QUEST CHURCH OF MOTHER EARTH, INC., AND
CHRISTOPHER YOUNG,

APPELLANTS,

VS.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA, AND ANNE MILGRAM, ADMINISTRATOR OF THE
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,

APPELLEES.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT,
MIDDLE DISTRICT OF FLORIDA

---

BRIEF OF APPELLANTS, SOUL QUEST CHURCH
OF MOTHER EARTH, INC., AND CHRISTOPHER YOUNG

---

Derek B. Brett, Esq.
Fla. Bar No. 0090750
BURNSIDE LAW GROUP
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Lead Counsel for Appellants

A. Brian Phillips, Esq
Fla. Bar No. 0067113
A. BRIAN PHILLIPS, P.A.
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Local Counsel for Appellants

## APPELLANTS' CERTIFICATE OF INTERESTED
## PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-3, the undersigned hereby certifies that the following persons and entities have an interest in the outcome of this case:

1. Barkley, Mary, former associate attorney at the firm of A. Brian Phillips, P.A. and former co-counsel for Appellant(s);

2. Berger, Wendy W., United States District Court Judge;

3. Brett, Derek B., Attorney for Appellant(s);

4. Gaffney, Michael James, United States Attorney for Appellee(s);

5. Hancock, Kevin P., Former Attorney for Appellee(s);

6. Irick, Daniel C., United States Magistrate Judge;

7. Phillips, Andrew Brian, attorney for Appellant(s);

8. Straus-Harris, Julie, United States Attorney;

9. Sturgill, Lowell V., United States Attorney;

10. Young, Christopher, Appellant;

11. Young, Verena, Officer and Member of Appellant, Soul Quest Church of Mother Earth, Inc.,

No publicly traded company or corporation has an interest in the outcome of this appeal.

s/Derek B. Brett, Esq.
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email:dbb@burnsidelaw.net
Lead Counsel for Appellants

s/A. Brian Phillips, Esq.
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Telecopier: (407) 872-0704
Email:
Brian.Phillips@Phillips-Law-Firm.com
Local Counsel for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants SOUL QUEST CHURCH OF MOTHER EARTH, INC., and CHRISTOPHER YOUNG, respectfully request that this Court permit oral argument in this case pursuant to Fed.R.App.P. 34(a)(1). Appellants believe that an oral presentation offering the opportunity to expand on both the intricate nature of the underlying factual predicate in this matter and the intricate legal analysis that flows from the same would afford the Court valuable aid in its decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................... C-1-C-2

STATEMENT REGARDING ORAL ARGUMENT ......................... i

TABLE OF CONTENTS ............................................... ii

TABLE OF CITATIONS .............................................. iii

STATEMENT OF JURISDICTION .................................... vii

STATEMENT OF THE ISSUES ........................................ 1

STATEMENT OF THE CASE ......................................... 1

    A.    Course of Proceedings ..................................... 1

    B.    Statement of the Facts ..................................... 7

    C.    Statement of the Standard of Review ........................ 11

SUMMARY OF THE ARGUMENT .................................... 12

ARGUMENT AND CITATIONS OF AUTHORITY ...................... 12

    A.    The DEA Has No Authority Whatsoever to Rule Upon Petitions for Religious Exemption. ...................................... 12

    B.    The District Court Erred in Failing to Recognize the Appellees' Abrogation of APA Requirements .......................... 19

    C.    The District Court Erred in Failing to Recognize Congress' Clear Assignment of Jurisdiction to the Courts Under RFRA ........... 22

    D.    The Major Rules Doctrine Acts as Any Further Bar Upon the Appellees' Assertion of Authority .......................... 26

CONCLUSION .................................................... 31

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS . . . . . . 31

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## Table of Citations

**Cases**                                                                **Page(s)**

Advanced Integrative Medicine Science Institute vs. DEA, Docket No. 21-70544 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Black Warrior Riverkeeper v. Army Corps of Eng'rs, 781 F. 3d 1271 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020) . . . . . . . . . . . . . . . 22

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) . . . . . . . . . . . . . . . . . 13

Cath. Diocese of Beaumont v. Sebelius, 10 F.Supp.3d 725 (E.D. Tex. 2014). . . . . 25

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984) . . . 27,29

Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210 (D. Or. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,18,24

Council of S. Mountains, Inc. v. Donovan, 653 F. 2d 573 (D.C. 1981) . . . . . . . . . 20

Dept. of Homeland Sec. v. Regents of Univ. of Cal., 140 S. Ct. 1891 (2020) . . . . 20

Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 874 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal, 546 U.S. 418 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,7,12, 14-15,23-24

Gutierrez-Brizuela v. Lynch, 834 F.3d 1142 (8th Cir. 2016) . . . . . . . . . . . . . . . . 29

Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356 (2019) . . . . . . . . . . 28-29

Health Freedom Defense Fund, Inc. v. Biden 2022 WL 1134138, (M.D. Fla. Apr.18, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst., 448 U.S. 607 (1990)....26-27

King v. Burwell, 135 S. Ct. 2480 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27-28

Lawrence v. Dunbar, 919 F.2d 1525 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 11

McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991) . . . . . . . . .6-7,24-25

O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft, 282 F. Supp. 2d 1236 (D. N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15,23

Olsen v. DEA, 878 F.2d 1458 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Soul Quest Church of Mother Earth, et al, v. Garland, et al, 6:20-cv-000701-WWB-DCI, (M.D. Fla. April 22, 2020) . . . . . . . . . . . . . . . . . . . . . . . .1-7,15-16,22

U.S. v. Carlson, 87 F. 3d 440 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S. v. Mead Corp., 533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

Util. Air Regulatory Grp. v. EPA, 573 U.S. 302 (2014) . . . . . . . . . . . . . . . . . . . .27

Western Radio Services Co., Inc. v. Espy, 79 F. 3d 896 (9th Cir. 1996) . . . . . . 19-20

**Statutes, Legislative History, and Rules**

5 U.S.C. § 551. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1-2,4-6,11,19,21,27

5 U.S.C. § 553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21

5 U.S.C. § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20-22

21 U.S.C. § 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8,14-17

21 U.S.C. § 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16,18

21 U.S.C. § 877 . . . . . . . . . . . . . . . . . . . . . . . . . 5-6,18-19,22-24,26

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

29 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

42 U.S.C. § 2000bb. . . . . . . . . . . . . . . . . . .1-3,5-10,11-15,17,22-29

11th Cir. R. 26.1-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

11th Cir. R. 26.1-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Fed. R. App. P. 26(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Fed. R. App. P. 32(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. App. P. 32(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. App. P. 34(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-12

U.S. Const. Art. I, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7,26

## Other Authorities

Adams, John, *Braintree Decr. 18th. 1765. Wednesday.,* Founders Online, National Archives, https://founders.archives.gov/documents/Adams/01-01-02-0009-0005-0001. Original source: The Adams Papers, Diary and Autobiography of John Adams, vol. 1, 1755–1770, ed. L. H. Butterfield. Cambridge, MA: Harvard University Press, 1961, pp. 263–265. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Drug Enforcement Administration, *2020 Drug Enforcement Administration National Drug Threat Assessment*, (Mar. 2021), https://www.dea.gov/sites/default/files/2021-02/DIR-00821%202020%20National %20Drug%20Threat%20Assessment_WEB.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lowell V. Sturgill, Jr., *Serving God in Government: Christian Duties in a Complex World*, 15 Christian Legal Soc'y Q. 7 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Office of the Attorney General, *Federal Protections for Religious Liberty*, (Oct. 6, 2017) https://web.archive.org/web/20220319150915https://www.justice.gov/opa/press-release/file/1001891/download. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

The following is an appeal of a final order of the United States District Court for the Middle District of Florida.  Appellants, Christopher Young and Soul Quest Church of Mother Earth, Inc., timely filed a notice of appeal on April 4, 2022. Dkt. 76.  This Court has jurisdiction per 29 U.S.C. § 1291.

The District Court's jurisdiction of this case was pursuant to 28 U.S.C. § 1331, presenting federal questions arising under the Constitution and Laws of the United States.

The Appellants assert the following as issues of this Appeal:

1.      Whether the District Court erred in granting Appellees' Motion to Dismiss and, by doing so, violated Congress' clear intent/express delegation of review authority per the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1.

2.      Whether the District Court erred in granting Appellees' Motion to Dismiss and, by doing so, permitting a derogation of the provisions of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*

3.      Whether Appellees' actions are barred by the Religious Freedom Restoration Act, the Administrative Procedures Act, and the Major Rules Doctrine.

**STATEMENT OF THE CASE**

**A.      Course of the Proceedings and Disposition Below**

Appellants SOUL QUEST CHURCH OF MOTHER EARTH, INC. (hereinafter, "Soul Quest Church"), and CHRISTOPHER YOUNG (hereinafter, "Young") commenced proceedings before the United States District Court, Middle District of Florida, on April 22, 2020.  On that date, the Appellants filed their Complaint for Declaratory and Permanent Injunctive Relief (hereinafter, "Initial Complaint").  Initial Complaint, *Soul Quest Church of Mother Earth, et al, v. Garland, et al*, 6:20-cv-000701-WWB-DCI, (hereinafter "*Soul Quest v. Garland*") (M.D. Fla. April 22, 2020) (ECF No. 1).  Separately, the Appellants filed their

Motion for Preliminary Injunction. Motion, *Soul Quest v. Garland*, (M.D. Fla. April 22, 2020) (ECF No. 2). The lawsuit followed a 3+ year period where Soul Quest Church had filed a "Petition for Religious Exemption" with Appellee, Drug Enforcement Administration (hereinafter "DEA"), but had received neither response, update, nor input. As discussed, *infra*, the Appellants' Initial Complaint asserted, among other causes of action, the Appellees' violations of both the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et seq.* (hereinafter, "RFRA"), and the First Amendment's Free Exercise Clause, U.S. Const. Amend. 1, cl. 2.

The underlying basis for the Appellants' Initial Complaint, and its later amendments, involved the failure of Appellees to issue a "religious exemption" to permit for the Appellants' practicing of their religious belief involving the sacramental use of ayahuasca. Ultimately, through multiple permitted amendments to the Initial Complaint, the Appellants' underlying causes of action are as follows:

1.     Appellees' RFRA violations, as a result of their claim of jurisdiction over the Appellants' religious practices involving the sacramental use of ayahuasca.

2.     The Appellees' violations of the Admin. Procedures Act, 5 U.S.C. § 551, *et seq.* (hereinafter, "APA"), as premised upon Appellees' alleged authority to render decisions under RFRA; the absence of written rules subject to public review; and the lack of any congressional approval for any regulatory authority.

3. The Appellees' violations of the First Amendment's Free Exercise Clause, as premised by its abridgement of the Appellants' rights to practice their sincere religious beliefs through the sacramental use of ayahuasca. Third Amended Complaint, *Soul Quest v. Garland*, (M.D. Fla. July 22, 2021) (ECF No. 59).

On June 15, 2020, the Parties filed their "Joint Motion to Stay All Proceedings for 120 Days" (hereinafter, "Joint Motion"). The purpose of the Joint Motion was to permit the Parties to "engage in good-faith negotiations regarding Plaintiffs' [Preliminary Injunction] Petition and the course of the litigation." Joint Motion at 3, *Soul Quest v. Garland*, (M.D. Fla. June 15, 2020) (ECF No. 23).

Throughout the entirety of the stay period, the Appellants believed that all negotiations would be geared toward a positive case resolution and conducted based upon mutual agreement: this understanding was consistent with party discussions, as well as the language and intent of the Joint Motion. Unfortunately, this did not occur. Rather, without any prior knowledge or notice to Appellants, on April 16, 2021, the Appellees issued a denial of Soul Quest Church's Petition for Religious Exemption. (hereinafter, "DEA Denial Letter").

The DEA Denial Letter asserted that it had:

> evaluated Soul Quest's petition in accordance with DEA has evaluated Soul Quest's petition in accordance with the framework set forth in the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1; the Attorney General's guidance memorandum, "Federal Law Protections for Religious Liberty" (October 6, 2017) (AG Memorandum)1; the Supreme Court

decision in *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal,* 546 U.S. 418 (2006) (*"O Centro"*); DEA's "Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act.

DEA Denial Letter, at p. 1.

Responsive to Appellees' surreptitious actions culminating in issuance of the DEA Denial Letter, on May 11, 2021, Appellants filed their Second Amended Complaint. In doing so, the Appellants asserted Appellees' violations of the APA. Second Amended Complaint, at 32, *Soul Quest v. Garland,* (M.D. Fla. May 11, 2021) (ECF No. 42). The Second Amended Complaint also contained several references to the Sworn Affidavit of Christopher Young (hereinafter, "First Young Affidavit"), filed alongside Appellants' Amended Motion for Preliminary Injunctive Relief. Second Amended Complaint, at Ex. 5, *Soul Quest v. Garland*, (M.D. Fla. May 11, 2021) (ECF No. 42).

The First Young Affidavit provided necessary factual background regarding the Appellees' underlying behavior throughout the entirety of the stay period leading up to issuance of the DEA Denial Letter. Of greatest pertinence to the issues under appeal, herein, the First Young Affidavit revealed the wholesale failure of the Appellees to conduct any investigation involving the sincerity of the Appellants' religious use of ayahuasca. Second Amended Complaint, at Ex. 5, *Soul Quest v. Garland*, (M.D. Fla. May 11, 2021) (ECF No. 42).

After making these "findings" – never substantively investigated by any DEA or DOJ personnel – on religious sincerity, as well as on control-diversion issues, the Appellees rendered determinations and purported to issue a denial of Soul Quest Church's petition for religious exemption and proceeded to declare its actions as "a final determination under 21 U.S.C. § 877," and then sought to argue that the issuance of their "Final Determination" mandated removal to the Appellate Court. Second Motion to Dismiss, *Soul Quest v. Garland*, (M.D. Fla. June 1, 2021) (ECF No. 44) (citing to 21 U.S.C. § 877). In so doing, the Appellees erroneously asserted that the Appellants' arguments were directed against their "Final Determination," and not as a challenge to the DEA's authority to make such a decision in the first place. *Id.* at p. 11. The Appellees' unwritten and *ad hoc* process for "investigation" was defective in practice; yet, on a *de jure* level, the actions of the Appellees fall prey to their severe constitutional and statutory defects.

Appellants responded to this by filing their Third Amended Complaint, in which they asserted causes of action – once again for RFRA and First Amendment violations – while also adding in a specific cause of action for Appellees' violations of the APA. Third Amended Complaint at 33, *Soul Quest v. Garland*, (M.D. Fla. July 22, 2021) (ECF No. 59). Indeed, what Appellees' actions revealed during the course of the litigation was the fatal defects of their entire "regulatory" scheme.

The Appellants' Third Amended Complaint directed its focus upon the Appellees' actions taken in excess of their statutory authority. Third Amended Complaint at 31, 34, *Soul Quest v. Garland*, (M.D. Fla. July 22, 2021) (ECF No. 59). This included most notably, but was not limited to, allegations of the Appellees' sham evaluation of Appellants' religious sincerity and the Appellees' abrogation of APA standards. Third Amended Complaint at 34, 36, *Soul Quest v. Garland*, (M.D. Fla. July 22, 2021) (ECF No. 59). In response, Appellees filed an Amended Motion to Dismiss, raising similar arguments to those advanced against Appellants' Second Amended Complaint. Generally, Appellees' arguments reflect total reliance upon misperceived strengths of 21 U.S.C. § 877, and the Controlled Substances Act's, 21 U.S.C. § 801, *et seq.* (hereinafter, "CSA"), status as a "neutral law of general applicability." Motion to Dismiss, 10-19, *Soul Quest v. Garland*, (M.D. Fla. August 26, 2021) (ECF No. 61).

In issuing its Order granting the Appellees' Amended Motion to Dismiss, the District Court erroneously misconstrued the Appellants' arguments. First, the District Court wrongfully determined that Appellees were authorized to adjudicate the Appellants' RFRA claims when, in actuality, the Appellees lack any statutory, regulatory or constitutional authority to do so. Order at 4-5, *Soul Quest v. Garland*, (M.D. Fla. March 4, 2022) (ECF No. 74). Further, the District Court erroneously interpreted the Appellants' APA claims in light of the decision in *McNary v. Haitian*

*Refugee Center, Inc.*, 498 U.S. 479 (1991). Order at 5-6, *Soul Quest v. Garland*, (M.D. Fla. March 4, 2022) (ECF No. 74).  In rendering its flawed analysis and decision, the District Court undermined the plain language of RFRA; the precepts of the APA; United States Constitution's Non-Delegation Clause, U.S. Const. Art. I, § 1, and the "major rules doctrine." Consequently, the instant appeal followed.

## B.    Statement of the Facts

Appellant Soul Quest Church is a church whose members engage in the ritual use of sacramental ayahuasca during religious ceremonies held at the Church's location in Orange County, Florida.  Appellant Young is both a member of Soul Quest Church and its spiritual leader.  This case touches on a grave, serious matter concerning the religious freedom rights of a small church, which Appellees have obliterated by interfering with and denying Appellants' religious exercise with ayahuasca, a brew made from the *Banisteriopsis caapi* vine and the *Psychotria viridis* shrub, and widely used in ceremonial settings during religious exercises both domestically and abroad. The underlying religious and historic significance of ayahuasca to Soul Quest Church and its members has been described throughout this litigation, and within materials previously submitted to the DEA.

The sincerity of religious exercise with ayahuasca has been uniformly upheld by the courts.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp.

2d 1210 (D. Or. 2009). As such, the DEA has consistently viewed religious exercise with Ayahuasca as a low law enforcement priority and one devoid of issues related to diversion, or health and safety to religious adherents or members of the general public.

On approximately August 1, 2016, Appellant Soul Quest Church received written correspondence from Appellee, DEA, advising Soul Quest Church to apply for a religious exemption to the CSA, or otherwise risk prosecution. Subsequently, in August 2017, Soul Quest Church filed an "application for religious exemption." The only guidance from the DEA – purporting to act under color of lawful authority – pertaining to the "process" of filing for a religious exemption was a 1½ page item located on the DEA's website and titled "*Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*" (hereinafter, "DEA RFRA Guidance"). (emphasis added). No other process exists from DEA (or any identifiable source) on this purported religious exemption process, nor was any additional process or guidance ever asserted by Appellees throughout the course of the underlying litigation.

Soul Quest Church's application for religious exemption provided a comprehensive understanding of the religious foundations of Church beliefs and practices; the sacred nature of ayahuasca; and the protocols in place to ensure the safe use and the security over the ayahuasca blended for use as a ritual tea. Over the

course of the ensuing 3½ years, DEA failed to take action on the processing of Soul Quest Church's application. Further, DEA failed to even once communicate on any level with Soul Quest Church regarding its application, despite the Appellants' efforts, through their counsel, to make contact on the status of the application's review. From initial receipt of the DEA's 2016 correspondence, through the filing of the August 2017, application, and continuing through the present, Appellants have lived under constant fear that the practice of their sincere religious beliefs via the ayahuasca sacrament would result in DEA criminal enforcement action.

Ultimately, in April 2020, the Appellants sought legal recourse for the Appellees' actions in the United States District Court in the Middle District of Florida. Soul Quest Church's Initial Complaint, and its separate Motion for Preliminary Injunctive Relief, both originally and as later amended, claimed a violation of RFRA and the U.S. Constitution's First Amendment's Free Exercise Clause. In June 2020, the Parties jointly requested that the matter be stayed for engagement in private settlement negotiations. In the ensuing months, the Appellants actively attempted to accommodate DEA's requests, in the belief that such engagement would allow for a positive case resolution. This cooperation – which was premised upon settling the litigation and not idle submission to an unknown and unpublished regulatory scheme – included, but was not limited to, permitting DEA agents to inspect the Soul Quest Church facilities.

During this entire period and until April 2021, Appellees maintained the façade that Appellants were engaged in a settlement negotiation process, albeit while refusing to discuss any mutual strategy or guidelines to achieve positive case resolution with the issuance of some form of "religious exemption." Further, the DEA failed to engage the Appellants or Soul Quest Church's members on any level pertaining to the sincerity of their religious beliefs. Instead, the DEA was represented by and through two DEA agents lacking any ability to assess and understand religious practices. Indeed, these agents focused their inquiries with Soul Quest Church and one of its lawyers on 'control-diversion' aspects, which are purportedly designed to limiting the prospect of ayahuasca being readily accessed by persons not immediately engaged in use for religious sacramental purposes.

Unbeknownst to the Appellants, the Appellees were surreptitiously engaged in a different process. On April 16, 2021, the DEA issued a finding denying Soul Quest Church's August 2017, religious exemption application, and making specific findings as to the religious sincerity of Soul Quest Church's sacramental use of ayahuasca, as well as regarding control-diversion issues. Working under the factually and legally questionable rubric of "Final Agency Decision," Appellees violated the Appellants' rights as articulated under RFRA and the First Amendment, and contrary to Appellees' own internal guidelines. Appellees seized powers to act under the RFRA, despite no congressional grant of authority, specific or otherwise;

no published regulations by Appellees; no submission by Appellees to APA requirements; no public comment on, or distribution of any guidelines for DEA's review; and all while cloaking their actions from the District Court and Appellants under the false notion of negotiating mutual terms for resolution of the matter.

## C.    Statement of the Standard of Review

A district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is a question of law and, accordingly, is subject to review *de novo*. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1250 (11th Cir. 2007). A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack to jurisdiction. *See Id.* at 1251; *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529. On the other hand, a facial attack involves a court examining whether the complaint sufficiently alleges subject matter jurisdiction.

Akin to consideration of a Rule 12(b)(6) motion to dismiss for failure to state a claim, the appellate court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *McElmurray*, 501 F.3d at 1251 (noting in a Rule 12(b)(1) facial challenge

a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised").

Appellant respectfully submits that his rejected arguments on his Motion to Vacate warrant a certificate of appealability by the Eleventh Circuit. Specifically, Appellant claims that the District Court failed to properly consider the DEA's total lack of authority to rule upon petitions for religious exemptions, Appellees' routine actions amounts to a violation of the Administrative Procedures Act, RFRA's nature as a "super-statute" and its jurisdictional clause, and the Major Rules Doctrine.

## LEGAL ARGUMENT

### A. The DEA Has No Authority Whatsoever to Rule Upon Petitions for Religious Exemption

In the case at bar, the DEA's Denial Letter is premised upon the existence of a "framework" that, it claims, allows it to accept, and render decisions upon, petitions for religious exemption. DEA Denial Letter, at p. 1. The DEA sources this "framework" to RFRA, a guidance memorandum from the Attorney General titled "Federal Protections for Religious Liberty[1]" ("AG Memorandum"), *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418 (2006) ("*UDV*"), the DEA's own "Guidance," and "subsequent case law." *Id*. However, as will be

---

[1] https://web.archive.org/web/20220319150915/https://www.justice.gov/opa/press-release/file/1001891/download (accessed on 20220518).

demonstrated, *none of these authorities* permit the DEA to accept, review, or make any decision whatsoever upon any petition for religious exemption.

Jurisprudence surrounding the Free Exercise Clause of the First Amendment to the United States Constitution was upended in 1990, when the Supreme Court decided the case of *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 874 (1990). This case "largely repudiated the method of analyzing free-exercise claims that had been used in cases like *Sherbert v. Verner* and *Wisconsin v. Yoder.*" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 691 (2014) (internal citations omitted). In response to *Employment Div., Dept. of Human Resources of Oregon v. Smith*, the United States Congress passed the Religious Freedom Restoration Act (hereinafter, "RFRA") three years later. 42 U. S. C. § 2000bb(a)(4).

RFRA operates to explicitly restore the "compelling-interest test as set forth in *Sherbert v. Verner*, and *Wisconsin v. Yoder.*" 42 U.S. Code § 2000bb(b)(1). To succeed upon a free-exercise claim under this test, plaintiff[s] must show the existence of three separate elements:

(1)     That the Plaintiff[s]' religious practice has been substantially burdened by a governmental act;

(2)     Once the Plaintiff[s] have demonstrated that their religious practice has been substantially burdened by governmental acts, the Defendants must demonstrate that its actions serve a compelling governmental interest; and

(3)     The Defendants must also show that the governmental acts performed in furtherance of this compelling interest are the least restrictive means available to further that governmental interest.

*Burwell*, 573 U.S. at 705.

For purposes of the case-at-bar, a critical feature of RFRA is found at Section (c), providing relief for substantial burden of religious exercise. Under this particular provision, Congress provided for exclusive judicial relief, *to wit*:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense *in a judicial proceeding* and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution. 42 U.S.C. §§ 2000bb-1(c).

(emphasis added). In other words, nowhere within RFRA was it anticipated that the DEA would be vested with the power and authority to determine which adherents are entitled to a religious exemption.

Second, the DEA alleges that the AG Memorandum somehow grants it the authority to rule upon petitions for religious exemption. DEA Denial Letter, at p. 1. However, at no point in the document does the Attorney General mention the DEA, religious exemptions to the CSA, ayahuasca, or give any authority to any agency whatsoever. *See* AG Memorandum, *passim*. The DEA also claims that the Supreme Court in *UDV* grants it authority to receive and rule upon petitions for religious exemption. DEA Denial Letter, at p. 1. However, *UDV* itself began with a filing in a district court, and *not* a petition for a religious exemption. *O Centro Espirita*

*Beneficiente Uniao do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236 (D. N.M. 2002). Furthermore, *nothing* in the *UDV* decision references, empowers, or in any other way *enables* the DEA to receive and render decisions upon petitions for religious exemption.

Further, the DEA claims that its own Guidance permits it to receive petitions for religious exemption. DEA Denial Letter, at p. 1. The Guidance itself states that the authority for *its* issuance arises from RFRA and *UDV*, however, as discussed, *supra*, neither RFRA or *UDV* support, reference, or empower the DEA to receive and render decisions upon petitions for religious exemption. Accordingly, the DEA's reliance upon its own Guidance is circular at best, and authoritarian at worst.[2] As a result, the DEA's reference to "subsequent case law" as basis for its authority to administer decisions on petitions for religious exemption, is, at best, a general catch-all. DEA Denial Letter at p. 1. Also, the DEA has never identified these "subsequent case[s]" are, nor has it ever cited any basis for its authority to rule on petitions for religious exemption. Consequently, the DEA cannot rely upon this mysterious, ambiguous citation to "subsequent case law" for any basis of authority.

In later filings in the case-at-bar, the DEA would also claim that the CSA grants it the authority to receive and determine petitions for religious exemptions.

---

[2] There is something alarmingly imperious in an Executive Agency claiming that it has the power to act 'because it said so.' Yet, ostensibly, this appears to be the thrust of the Appellees' posture herein.

Motion to Dismiss, *Soul Quest v. Garland*, (M.D. Fla. August 26, 2021) (ECF No. 61). This is a curious statement, as the word "religion" is found nowhere within the CSA. *See* 21 U.S.C. § 801, *et seq.* Further, the only exemption applications the CSA permits are those for "medical, scientific, research, or industrial channels." 21 U.S.C. § 823(a)(1). Accordingly, there is simply no authority whatsoever within the CSA permitting DEA to render *any* decision upon a request for a religious exemption.

In light of the DEA's failure to properly promulgate *any* administrative procedures governing petitions for religious exemption, as discussed, *supra*, the DEA has *zero* regulatory or statutory authority to accept, or render decisions upon, petitions for religious exemption like that filed by the Appellants in the case-at-bar. Ironically, the DEA has – *just this year*, no less – embraced the argument now being asserted by the Appellants. The DEA has asserted in a case presently before the Ninth Circuit, that a specific lack of statutory authority prevents its ability to take action under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*

In *Advanced Integrative Medicine Science Institute vs. DEA*, 21-70544 (9th Cir. 2021) (hereinafter, "*AIMS v. DEA*") the plaintiffs were challenging an administrative ruling involving the compassionate use of psilocybin. In the DEA's refusal to grant an exemption under what are deemed "Right to Try" laws, the DEA asserted that "absent an explicit statutory exemption to the Controlled Substances

16

Act, DEA *has no authority to waive any of the CSA's requirements....*" Petitioner's

Brief at 16-17, DEA Correspondence, at 8-9, *AIMS v. DEA*, (9th Cir. May 11,14,

2021) (ECF Nos. 18, 19)(emphasis added)[3]. At a minimum, the DEA's assertion in

*AIMS v. DEA* is consistent with its approach taken in earlier case challenges. *See*

*Olsen v. DEA*, 878 F.2d 1458, 1460-61 (D.C. Cir. 1989).[4]

DEA's incongruous approach between what the Appellees assert in the case-

at-bar, versus what it asserts in *AIMS v. DEA*, demonstrates the Appellees'

propensity to argue whatever it requires to justify its end game. Whereas Appellees

assert, herein, that the DEA strongly asserts its authority to rule on a subject where

there is *no* Congressional grant of authority (specifically, as pertains to religious uses

of controlled substances), in *AIMS v. DEA*, the DEA strongly rejected any such

authority to rule upon a subject lacking a specific grant of authority by Congress –

in any statute or regulation. The Appellees, in the DEA's 'RFRA Determination' of

April 16, 2021, assert that its complete prohibition on Ayahuasca is the only method

---

[3] The DEA makes this assertion under the CSA, where its authority seems rather clear – as opposed to the void of any authority under RFRA to make such determinations. If Appellees are resting their credentials entirely on the CSA, which contains no language regarding its applicability to religious uses of controlled substances, and which Appellants assert is inapplicable, then DEA has taken a contrary position on its empowerment to act in the absence of an enabling statute.

[4] *Olsen* is also notable for then-Judge (later Justice) Ginsberg's acknowledgment that "even if the DEA were not empowered or obliged to act, Olsen would be entitled to a judicial audience. Ultimately, the courts cannot escape the obligation to address his plea that the exemption he seeks is mandated by the first amendment's religion clauses." *Id.* at 1460.

to safeguard people and to prevent diversion to unauthorized individuals. However, ayahuasca is of such little interest to the DEA that its own annual – rather comprehensive, threat assessment – reports fail to ever mention Ayahuasca. Such reports never mention the existence of any black market for Ayahuasca, or any issue with the health and safety of members of the public. *See, e.g., 2020 Drug Enforcement Administration National Drug Threat Assessment* (March 2021).[5]

Relatedly, none of Appellees' filings, in the case-at-bar, reveal that its authority over granting registrations is, in fact, limited to "legitimate medical, scientific, research or industrial uses." 21 U.S.C. § 823. In other words, as argued throughout the Appellants' filings, the DEA has never been provided with any official authority over religious uses. The exclusion of such information from the Appellees' filings is telling; it reflects a lack of candor and a blatant subterfuge – one resembling its tack in earlier religious exemption cases. *See, e.g., Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).

Notwithstanding Appellees' strategic maneuvering, the Appellants would assert that it is unquestionable that the DEA's decision herein is reflecting of *ultra vires* action premised upon a secretive and *ad hoc* process. The DEA possessed no legal authority to investigate once the Appellants filed their lawsuit in May 2020, defied the court's authority when it indicated its intent to negotiate case resolution while – unbeknownst to the Appellants and during the stay of the matter – conducted a surreptitious investigation designed entirely to provide a façade of legitimacy to

---

[5] Located at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

its illegitimate actions. The Appellees' assertions of 21 U.S.C. § 877 are simply another method intended to further its subterfuge.

**B.    The District Court Erred in Failing to Recognize the Appellees' Abrogation of APA Requirements.**

The Appellees are authorities falling under the Executive Branch. Accordingly, the Appellees are bound by the terms of the Administrative Procedure Act. 5 U.S.C. § 551(1). Per the APA, an agency "rule" is defined as, in relevant part, "whole or a part of an agency statement of general or particular applicability … designed to implement, interpret, or prescribe law or policy… and includes the approval or prescription for … services or allowances." 5 U.S.C. § 551(4).

Accordingly, as DEA's Guidance clearly implements a policy involving a service to the public, it would necessarily then be deemed an agency rule under the APA. Further, pursuant to Eleventh Circuit precedent, Appellees' decision in April 2021, to suddenly invoke 21 U.S.C. § 877 amounts to an irrevocable assertion that its Guidance is a rule. *U.S. v. Carlson*, 87 F. 3d 440, 446 (11th Cir. 1996) ("[j]udicial review of a DEA final rule is governed by … 21 U.S.C. § 877").

Yet, in the case-at-bar, there is no final rule; there is no proposed rule; there is no indication that the APA process has ever been formally invoked. There is nothing – other than the 1½ page DEA Guidance, essentially carrying no legal effect – much less one passing muster under the APA canon. Before implementing a rule, the APA requires federal executive agencies and departments, like the Appellees, to

take certain procedural steps.  *Western Radio Services Co., Inc. v. Espy*, 79 F. 3d 896 (9th Cir. 1996) (holding that, for an agency rule to have the force of law, it "must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress").

First, the DEA must publish a "general notice of proposed rulemaking" in the Federal Register.  5 U.S.C. § 553(b).  Once general notice has been provided, the DEA is obligated to give "interested persons" the opportunity to "participate in the rule making." 5 U.S.C. § 553(c).  This procedure, commonly termed "notice and comment," allows interested parties, like Appellants, to "criticize projected agency action before that action is embedded in a final rule and allows the agency to benefit from the parties' suggestions." *Council of S. Mountains, Inc. v. Donovan*, 653 F. 2d 573 (D.C. 1981).[6]  This process also acts to allow democratic participation in what could otherwise be an "undemocratic and unaccountable rulemaking process." *Dept. of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1929 n.13 (2020).

---

[6] *See also* Lowell V. Sturgill, Jr., Serving God in Government: Christian Duties in a Complex World, 15 Christian Legal Soc'y Q. 7 (1994) (noting that "[i]ndividuals of all religious faiths have the right to participate in the policy-making process *(McDaniel v. Paty,* 435 U.S. 618 (1978)), and government policy is not unlawful merely because it coincides with religious tenets or interests *(Harris v. McRae,* 448 U.S. 297 (1980). The political and legal process operates best when it reflects the concerns of all whose interests are at issue.  Thus, to bar religious goals from law and politics would distort the policy-making process, not help it").

Given the critical nature of this process, a reviewing court is empowered to "hold unlawful and set aside agency action" when an agency action is, among other issues, "not in accordance with law." 5 U.S.C. § 706 (2), *et seq*. Failure to allow for a notice-and-comment period without alleging an exception has been deemed suitable grounds for setting aside of an agency action, unless an exception applies. *See, e.g., Health Freedom Defense Fund, Inc. v. Biden*, 2022 WL 1134138, (M.D. Fla. Apr. 18, 2022). The requirement for a notice-and-comment period does *not* apply when " the agency for good cause finds *(and incorporates the finding and a brief statement of reasons therefor in the rules issued)* that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B) (emphasis added). And yet, there is no evidence of any such "findings" or a "brief statement of the reasons therefor" in the DEA's Guidance. DEA's Guidance, at 1. In the present case, DEA entirely failed to follow the APA's requirements for publication, did not allow for a notice-and-comment period, and did not seek an exception thereto. Further, the DEA never published notice of any impending rulemaking in the Federal Register, never permitted *any* interested parties to advise and comment upon its proposed rule, and never sought to except the "Guidance" from these requirements.

Accordingly, the DEA violated the Administrative Procedures Act in issuing its "Guidance," and so any actions taken under it must be "set aside and held

unlawful." 5 U.S.C. § 706(2). Indeed, this Circuit has recognized that "vacatur… is the ordinary APA remedy" for when an agency acts improperly. *Black Warrior Riverkeeper v. Army Corps of Eng'rs*, 781 F.3d 1271, 1920 (11th Cir. 2015) (internal citation omitted). Consequently, the DEA's Guidance, and its decisions made thereunder, must be vacated.

### C. The District Court Erred in Failing to Recognize Congress' Clear Assignment of Jurisdiction to the Courts Under RFRA.

Appellants advanced a complaint under RFRA before the District Court, alleging that the DEA was infringing upon its right to religious expression. Third Amended Complaint, *Soul Quest v. Garland*, (M.D. Fla. March 4, 2022) (ECF No. 59). After Appellees' lulling Appellants with a false offer of settlement, the DEA then issued its "Denial Letter." By virtue of its issuance of this "Denial Letter," the DEA then claimed – for the first that the District Court had been stripped of its jurisdiction, pursuant to 21 U.S.C. § 877. Motion to Dismiss, *Soul Quest v. Garland*, (M.D. Fla. August 26, 2021) (ECF No. 61). Thereafter, the District Court erred when granting the Appellees' Amended Motion to Dismiss and while completely failing to consider RFRA's jurisdictional mandate. Order, *Soul Quest v. Garland*, (M.D. Fla. March 4, 2022) (ECF No. 74).

RFRA is "a kind of super-statute." *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1754 (2020). Accordingly, the protections granted under RFRA apply to "all Federal law, and the implementation of that law, whether statutory or

otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3. As 21 U.S.C. § 877 is a federal law, RFRA protections apply to limit any conflicting scope and requires other statutes to yield to RFRA's clear language.

A key RFRA protection is the right to seek *judicial* relief for an alleged violation 42 U.S.C. § 2000bb-1(c). Further, standing to bring an RFRA claim "shall be governed by the general rules of standing under Article III of the Constitution," and *not* 21 U.S.C. § 877, the DEA's preferred statute, herein. *Id.* The seminal case involving RFRA protection from Government efforts to curb religious institution and its members' right to engage in religious-based use of ayahuasca is *UDV*, *supra*; *UDV* has several parallels with the case-at-bar.

Analogous to Soul Quest Church, the *UDV* plaintiff was (and remains) a small denominational church. *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236, 1240 (D.N.M. 2002). Also, like Soul Quest Church, the *UDV* plaintiff filed suit *in its local U.S. District Court*, requesting that the court grant its petition for a preliminary injunction and complaint for permanent injunctive relief. *Id.* at 1240. Just as in the case-at-bar, the injury alleged by the *UDV* plaintiff involved an effort by the Government to interfere with a church's ability to fulfill its religious obligations via the consumption of sacramental ayahuasca. *Id.*

As the Supreme Court noted, by enacting RFRA, "Congress has determined that *courts* should strike sensible balances, pursuant to a compelling interest test that

requires the Government to address the particular practice at issue." *UDV*, 546 U.S. at 440 (emphasis added). Thus, RFRA provides that the *courts* are required to conduct this analysis on a case-by-case basis, and not the DEA. *Id*. at 436. This same RFRA procedural mandate has been followed in other cases involving the religious use of ayahuasca-like substances. *See, e.g., Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009) (hereinafter, "CHLQ"). Interestingly, *CHLQ* also began with its plaintiffs attempting to seek a religious exemption, albeit from the Department of Justice and *not* the DEA. *Id*, at p. 1214. However, unlike in the case-at-bar, once the DOJ had turned down the *CHLQ* plaintiffs' request, the DOJ did *not* contest the District Court's jurisdiction over the *CHLQ* plaintiffs' RFRA claim. *Id*.

Despite the thrust of the Supreme Court in *UDV* and its progeny, the District Court in the case-at-bar seemingly 'passed by' the scope of this jurisprudence, issuing a decision which permits the Appellees to fully control the fact-finding process of *any* petition for a religious exemption, and then have its determination reviewed under favorable standards by an appellate court under 21 U.S.C. § 877 (requiring only that the DEA show "substantial evidence" for its decision), rather than the compelling-interest test mandated by RFRA. In *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Court examined an Immigration & Nationality Act provision that, akin to 21 U.S.C. § 877, provided only a single level of review

in the courts of appeals. The District Court explained its ruling on retained jurisdiction to hear constitutional and statutory challenges to INS procedures:

> it is unlikely that a court of appeals would be in a position to provide meaningful review of the types of claims raised in this litigation. Not only would a court of appeals most likely not have an adequate record but it also would lack the factfinding and record-developing capabilities of a federal district court. [S]tatutes that provide for only a single level of judicial review in the court of appeals "are traditionally viewed as warranted only in circumstances where district court factfinding would unnecessarily duplicate an adequate administrate record-- circumstances that are not present where district court fact-finding is essential given the inadequate administrative record."

*Id.* at 497 (citation omitted).

*McNary* is endgame to the Appellees' efforts to undermine the District Court's jurisdiction in the case-at-bar. Under RFRA, Congress provided for one exclusive method for adjudicating such claims: within the courts. In the case-at-bar, Appellants squarely assert violations made by Appellees under RFRA and directly implicating protected religious freedoms under the First Amendment. Appellants properly seek court relief in the District Court in the absence of any actual administrative regulatory scheme, and in the wholesale absence of any 'administrative record.' *See Cath. Diocese of Beaumont v. Sebelius*, 10 F.Supp.3d 725, 729, 734-35 (E.D. Tex. 2014) (citing *McNary* in case with RFRA implications and stating that "[s]ince Plaintiffs are alleging interference with important constitutional rights, the court will consider the evidence presented by Plaintiffs"; discussion of significance of Government-imposed substantial burdens).

Accordingly, Appellants submit that, even if this Court rejected the overwhelming evidence of the non-existence of any lawful authority being exercised in the instant case, and somehow adopt – in part – Appellees' arguments regarding § 877, that statute does not limit the District Court's ability to maintain jurisdiction. In so doing, the District Court misapplied RFRA, effectively neutered its clear jurisdictional mandate, and permitted the Executive Branch to usurp authority given by the Legislative Branch to the Judicial Branch. Accordingly, the District Court committed clear and reversible error.

### D.    The Major Rules Doctrine Acts as Any Further Bar Upon the Appellees' Assertion of Authority.

In the event that the Appellees continue to erroneously assert some unwritten prerogative to assert jurisdiction over RFRA decision making, there exists yet another bar: the major rules doctrine, which is based in the Constitution's non-delegation clause and restricts diffusion of legislative power away from Congress. U.S. Const. Art. I, § 1 ("*All legislative Powers* herein granted shall be *vested in a Congress* of the United States, which shall consist of a Senate and House of Representatives.")(emphasis added). Congress' exclusive reservation of Legislative authority is intended to capture decisions of heightened political salience. The major rules doctrine requires that agencies exercise power with a clear delegation of such authority on issues of such magnitude to promote democratic accountability and preserve the constitutional separation of powers. *See Indus. Union Dep't AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 685 (1990) (Rehnquist, C.J., concurring)

(ultimate function of major rules doctrine is to ensure "important choices of social policy are made by Congress").

In the case-at-bar, we are witness to a bold effort by the Appellees to usurp authority from Congress, despite RFRA clearly delegating questions pertaining to questions of religious sincerity to the courts. 42 U.S.C. § 2000bb-1. The Appellees are asserting that they 'have the power' to promulgate – in this case, *ad hoc* and unwritten legislative rules of major political significance. Yet, such rules – which are intended to be subject to the APA and its rulemaking guidelines – can only be justified solely upon clear delegation of such authority by Congress. Here, Congress delegated – but it delegated to the branch best capable of determining issues of religious sincerity: the non-politically motivated judiciary.[7]  The Appellees have thus both usurped Congress' authority, as well as the power specifically delegated to the Judiciary.

Pursuant to the major questions doctrine, the Judiciary exercises the power to *de novo* review of the statute in question. *King v. Burwell*, 576, U.S. 473, 486

---

[7] Indeed, in the case-at-bar, there is not even an instance where the appellate court can consider the issue of non-delegation per the standards established by *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (the "*Chevron* Doctrine" where the Court acknowledged deference to administrative agency interpretations of authority where congressional intent is ambiguous and where the agencies' interpretation was reasonable or permissible); *see U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (refusing *Chevron* deference where there is an indication rebutting its presumption that Congress intended to delegate authority to an agency); *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 320 (2014).

(2015). In *King*, Chief Justice Roberts, writing for the Court, identified a major question involving IRS assertion of authority under the Affordable Care Act's-established health exchanges. Chief Justice Roberts asserted that:

> [w]hether those credits are available on Federal Exchanges is thus a question of deep 'economic and political significance' that is central to this statutory scheme; *had Congress wished to assign that question to an agency, it surely would have done so expressly. Util. Air Regulatory Group,* 134 S. Ct. at 2444 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000)). It is especially unlikely that Congress would have delegated this decision to the IRS, which has no expertise in crafting health insurance policy of this sort. *Gonzales v. Oregon*, 546 U.S. 243, 266-7 (2006). This is not the case with IRS.

*Id.* at 485-486. (emphasis added).

Analogously, under what potential scenario can DEA and DOJ credibly maintain that they are delegated authority under the super-charged RFRA statute where (a) Congress specifically delegated the authority to the Judiciary to interpret the statute; and (b) those agencies are incapable of any expertise – by their very nature and purpose of enforcing drug laws – to make assessments and determinations on issues of religious sincerity in that context? RFRA involves, by its very nature of overriding any other contrary statutory authority, transformative power that crosses into a realm that travels light years beyond the Appellees' core competency.

In the case-at-bar, this Court confronts a simple proposition. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination

of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). RFRA makes this easy. The clear, unadulterated language of the statute proclaims that the power being exercised by Appellees in this case – from their online 1½ page "RFRA Guidance," to its surreptitious investigation cloaked in settlement discussions, to its assertions in its Motion to Dismiss – reflect Appellees' belief that unelected drug enforcement agents lacking any specific guidance are better-situated making decisions on religious freedoms than the Branch specifically-designated by Congress: the federal courts.

The case-at-bar confronts the very scenario feared by then-Eighth Circuit Judge Gorsuch when, in commenting about *Chevron* deference, that it allowed "executive bureaucracies to swallow huge amounts of core judicial and legislative power." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (8th Cir. 2016). Yet, the current appeal is not dealing with such usurpation cloaked under the guidance of the Executive Branch seeking *Chevron* deference. Rather, this case deals with something far more brazen: the Appellees' wholesale usurpation of a Judicial authority explicitly granted by Congress. Consequently, again, the District Court's Order dismissing this matter is unsustainable under the major rules doctrine. The District Court's determination stands, on its face, in defiance of these principles while continuing to ignore the plain, simple facts underlying the Appellees' actions:

an arbitrary and capricious usurpation of Legislative power in order to pursue an *ultra vires* course geared to denial of the religious rights of the Appellants.

## CONCLUSION

A Founding Father poignantly warned us of the dangers provoked by permitting one aspect of Government from fabricating powers that do not otherwise exist and encroach upon fundamental rights and liberties. John Adams, in his 1765 "Braintree Decree, 18th. 1765. Wednesday." written as commentary on the protest to the British Stamp Act, argued that Parliament's intrusion into colonial affairs was an "enormous engine, fabricated by the British Parliament, for battering down all the Rights and Liberties of America."[8] The Appellees' litany of breaches of the law, as well as their routine infringement upon the rights of a small church, strikes deep to the heart of Americans' religious liberty. Rather than respect this cornerstone of American liberties, the Appellees have stopped at nothing to maneuver Appellants, and the District Court, into permitting a usurpation of judicial authority.

In reversing the District Court's order, this Court will effectively signal a restoration of the procedural, statutory and constitutional safeguards designed to provide regulatory certainty; to reduce conflict; and a curbing of future abuses of Executive authority.

---

[8] Adams, John, *Braintree Decr. 18th. 1765. Wednesday.,* Founders Online, National Archives, https://founders.archives.gov/documents/Adams/01-01-02-0009-0005-0001.

Respectfully submitted this 14th day of June 2022.

_s/Derek B. Brett, Esq._   _s/A. Brian Phillips, Esq._
**DEREK B. BRETT, ESQ.**  **A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0090750   Fla. Bar No. 0067113
**BURNSIDE LAW GROUP** **A. BRIAN PHILLIPS, P.A.**
Lead Counsel for Appellants  Local Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation, in accordance with Fed.R.App.P. 32(a)(7)(B), because this brief contains 7,442 words, excluding the parts of the motion exempted by Fed.R.App.P. 32(f).

_s/Derek B. Brett, Esq._   _s/A. Brian Phillips, Esq._
**DEREK B. BRETT, ESQ.**  **A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0090750   Fla. Bar No. 0067113
**BURNSIDE LAW GROUP** **A. BRIAN PHILLIPS, P.A.**
202 Brownlow Avenue, Suite 400 912 Highland Avenue
Dartmouth, NS, Canada B3B 1T5 Orlando, Florida 32803
Telephone: (902) 468-3066  Telephone: (407) 872-0777
Telecopier: (902) 468-4803  Telecopier: (407) 872-0704
Email:dbb@burnsidelaw.net  Email:
Lead Counsel for Appellants  Brian.Phillips@Phillips-Law-Firm.com
           Local Counsel for Appellants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 14, 2022, a true and correct copy of the foregoing brief was filed using CM/ECF that will automatically send a copy of this document to Assistant United States Attorney Lowell V. Sturgill.

*s/A. Brian Phillips*
A. Brian Phillips, Esq.
Local Counsel for Appellants