No. 22-11072

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**SOUL QUEST CHURCH OF MOTHER EARTH, INC., AND
CHRISTOPHER YOUNG,**

APPELLANTS,

VS.

**MERRICK B. GARLAND, ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA, AND ANNE MILGRAM, ADMINISTRATOR OF THE
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,**

APPELLEES.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT,
MIDDLE DISTRICT OF FLORIDA

---

**VOLUME I OF III OF APPELLANTS' APPENDIX**

---

Derek B. Brett, Esq.
Fla. Bar No. 0090750
BURNSIDE LAW GROUP
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Lead Counsel for Appellants

A. Brian Phillips, Esq
Fla. Bar No. 0067113
A. BRIAN PHILLIPS, P.A.
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Local Counsel for Appellants

INDEX of APPENDIX

<u>Volume I of III</u>                                                    <u>Docket/Tab #</u>

District Court Docket Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

Plaintiffs' Initial Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Plaintiffs' Motion for Preliminary Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Joint Motion to Stay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Service


<u>Volume II of III</u>

Plaintiffs' Second Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

Defendants' Motion to Dismiss Second Amended Complaint . . . . . . . . . . . . . . . . 44

Certificate of Service


<u>Volume III of III</u>

Plaintiffs' Third Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Defendants' Motion to Dismiss Third Amended Complaint . . . . . . . . . . . . . . . . . 61

Order Granting Defendant's Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . .74

Certificate of Service

# TAB A
# DISTRICT COURT DOCKET SHEET

# U.S. District Court
## Middle District of Florida (Orlando)
## CIVIL DOCKET FOR CASE #: 6:20-cv-00701-WWB-DCI

| | |
|---|---|
| Soul Quest Church of Mother Earth, Inc. et al v. Attorney General, United States of America et al | Date Filed: 04/22/2020 |
| Assigned to: Judge Wendy W. Berger | Date Terminated: 03/07/2022 |
| Referred to: Magistrate Judge Daniel C. Irick | Jury Demand: None |
| Case in other court: 11th Circuit, 22-11072 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Soul Quest Church of Mother Earth, Inc.**
*a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members*

represented by **Derek B. Brett**
The Burnside Law Group
202 Brownlow Avenue
Suite 400
Dartmouth
Canada
902-468-3066
Fax: 902-468-4803
Email: dbb@burnsidelaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A. Brian Phillips**
A. Brian Phillips, PA
912 Highland Ave
Orlando, FL 32803
407-872-0777
Fax: 407-872-0704
Email: brian.phillips@phillips-law-firm.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Young**
*individually and as spiritual leader of Soul Quest Church of Mother Earth, Inc.*

represented by **Derek B. Brett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A. Brian Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Attorney General, United States of America**

represented by **Julie Straus Harris**
DOJ-Civ

Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20001
202-353-7633
Email: julie.strausharris@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
Campaign Legal Center
1101 14th St. NW
Suite 400
Washington, DC 20005
202-736-2200
Fax: 202-736-2222
Email: khancock@campaignlegalcenter.org
*TERMINATED: 07/01/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael James Gaffney**
United States Department of Justice, Civil
Division
Federal Programs Branch
1100 L St. NW
Suite 11012
Washington, DC 20005
202-514-2356
Email: Michael.J.Gaffney@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Acting Administrator, U.S. Drug**
**Enforcement Administration**
*TERMINATED: 07/12/2021*

represented by **Julie Straus Harris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
(See above for address)
*TERMINATED: 07/01/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael James Gaffney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U. S. Drug Enforcement Administration**
*TERMINATED: 05/05/2020*

represented by **Julie Straus Harris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Kevin P. Hancock
(See above for address)
*TERMINATED: 07/01/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Administrator, U.S. Drug Enforcement**     represented by  **Julie Straus Harris**
**Administration**                                          (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Michael James Gaffney**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/22/2020 | 1 | COMPLAINT *for Declaratory and Permanent Injunctive Relief* against William Barr, Uttam Dhillon, U. S. Drug Enforcement Administration (Filing fee $ 400 receipt number 113A-16731539) filed by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Affidavit In Support of Verified Complaint, # 2 Civil Cover Sheet, # 3 Proposed Summons Summons to three defendants)(Phillips, A.) (Entered: 04/22/2020) |
| 04/22/2020 | 2 | MOTION for Preliminary Injunction *and Supporting Memorandum of Law* by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Phillips, A.) (Entered: 04/22/2020) |
| 04/22/2020 | 3 | NEW CASE ASSIGNED to Judge Wendy W. Berger and Magistrate Judge Daniel C. Irick. New case number: 6:20-cv-701-Orl-78DCI. (SJB) (Entered: 04/22/2020) |
| 04/23/2020 | 4 | NOTICE of Appearance by Derek B. Brett on behalf of Soul Quest Church of Mother Earth, Inc., Christopher Young (Brett, Derek) (Entered: 04/23/2020) |
| 04/23/2020 | 5 | PROPOSED summons to be issued by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Phillips, A.) (Entered: 04/23/2020) |
| 04/24/2020 | 6 | SUMMONS issued as to Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration, and U.S. Attorney. (SPM) (Entered: 04/24/2020) |
| 04/29/2020 | 7 | **RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 2. Notice of pendency of other actions due by 5/13/2020. Signed by Deputy Clerk on 4/29/2020. (RMF)ctp** (Entered: 04/29/2020) |
| 04/29/2020 | 8 | **INTERESTED PERSONS ORDER Certificate of interested persons and corporate disclosure statement due by 5/13/2020. Signed by Judge Wendy W. Berger on 4/29/2020. (RMF)ctp** (Entered: 04/29/2020) |
| 04/29/2020 | 9 | **NOTICE TO COUNSEL AND PARTIES: Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Wendy W. Berger on 4/29/2020. (RMF)ctp** (Entered: 04/29/2020) |
| 04/30/2020 | 10 | **STANDING ORDER ON DISCOVERY MOTIONS. Signed by Magistrate Judge Daniel C. Irick on 4/30/2020. (RN)** (Entered: 04/30/2020) |

| 05/04/2020 | 11 | NOTICE of pendency of related cases re 7 Related case order and track 2 notice per Local Rule 1.04(d) by Soul Quest Church of Mother Earth, Inc., Christopher Young. Related case(s): No (Phillips, A.) Modified text on 5/5/2020 (LDJ). (Entered: 05/04/2020) |
| --- | --- | --- |
| 05/04/2020 | 12 | CERTIFICATE of interested persons and corporate disclosure statement re 8 Interested persons order by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Phillips, A.) (Entered: 05/04/2020) |
| 05/04/2020 | 13 | AMENDED COMPLAINT *for Declaratory and Permanent Injunctive Relief* against Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America filed by Soul Quest Church of Mother Earth, Inc., Christopher Young. Related document: 1 Complaint filed by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Exhibit Index of Exhibits, # 2 Exhibit Request for Exemption, # 3 Exhibit Ltr of Aug 1, 2016, # 4 Exhibit Ayahuasca Manifesto Part 1, # 5 Exhibit Ayahuasca Manifesto Part 2, # 6 Exhibit Code of Ethics, # 7 Exhibit US Atty Memo, # 8 Exhibit US Atty Memo)(Phillips, A.) Modified text on 5/5/2020 (LDJ). (Entered: 05/04/2020) |
| 05/04/2020 | 14 | PROPOSED summons to be issued by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Phillips, A.) (Entered: 05/04/2020) |
| 05/04/2020 | 15 | Amended MOTION for Preliminary Injunction *and Supporting Memorandum of Law* by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Exhibit Index of Exhibits, # 2 Exhibit Verified Amended Complaint & Affidavit, # 3 Exhibit Bylaws & Statement of Faith, # 4 Exhibit Code of Ethics, # 5 Exhibit Foundation Declaration, # 6 Exhibit Holidays, # 7 Exhibit Dieting/Fasting rules, # 8 Exhibit Doctrinal Statement, # 9 Exhibit Dieta Guide, # 10 Exhibit Sunbiz Information & IRS Exemption, # 11 Exhibit Request for religious based exemption, # 12 Exhibit DEA Guidance, # 13 Exhibit Soul Quest Church Pamphlet)(Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/04/2020) |
| 05/05/2020 | 16 | SUMMONS issued as to Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America. (LDJ) (Entered: 05/05/2020) |
| 05/14/2020 | 17 | NOTICE of Appearance by Kevin P. Hancock on behalf of Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration (Hancock, Kevin) (Entered: 05/14/2020) |
| 05/14/2020 | 18 | Joint MOTION for Extension of Time to File Response/Reply as to 15 Amended MOTION for Preliminary Injunction *and Supporting Memorandum of Law* by Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration. (Hancock, Kevin) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/14/2020) |
| 05/14/2020 | 19 | **ENDORSED ORDER granting 18 Joint Motion for Extension of Time to File Response to 15 Amended Motion for Preliminary Injunction. Response due by 6/17/2020. Signed by Magistrate Judge Daniel C. Irick on 5/14/2020. (Irick, Daniel)** (Entered: 05/14/2020) |
| 05/18/2020 | 20 | **RELATED CASE ORDER,INTERESTED PERSONS ORDER and ORDER Requiring Electronic Filing.(Defendant). Notice of pendency of other actions due by 6/1/2020, Certificate of interested persons and corporate disclosure statement due by 6/1/2020. Signed by Judge Wendy W. Berger on 5/18/2020. (RMF)ctp** (Entered: 05/18/2020) |
| 06/01/2020 | 21 | NOTICE of pendency of related cases re 20 Related case/interested persons/ECF per Local Rule 1.04(d) by Acting Administrator, U.S. Drug Enforcement Administration, Attorney |

| | | |
|---|---|---|
| | | General, United States of America, U. S. Drug Enforcement Administration. Related case(s): No. (Hancock, Kevin) (Entered: 06/01/2020) |
| 06/01/2020 | 22 | CERTIFICATE of interested persons and corporate disclosure statement re 20 Related case/interested persons/ECF by Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration. (Hancock, Kevin) (Entered: 06/01/2020) |
| 06/15/2020 | 23 | Joint MOTION to Stay *All Proceedings for 120 Days* by All Defendants. (Attachments: # 1 Exhibit A)(Hancock, Kevin) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 06/15/2020) |
| 06/26/2020 | 24 | **ORDER granting 23 Joint Motion to Stay All Proceedings for 120 Days. This case is STAYED for a period of 120 days from the date of this Order. On or before October 16, 2020, the parties shall file a joint report as to the status of this litigation. The Clerk is directed to administratively close this case. Signed by Judge Wendy W. Berger on 6/26/2020. (RMF)ctp** (Entered: 06/26/2020) |
| 06/26/2020 | | Set deadline: Status Report due by 10/16/2020. (LDJ) (Entered: 06/26/2020) |
| 10/16/2020 | 25 | Joint STATUS report by Soul Quest Church of Mother Earth, Inc. (Phillips, A.) Modified text on 10/19/2020 (LDJ). (Entered: 10/16/2020) |
| 11/02/2020 | 26 | **ORDER re 25 Joint Status Report, the parties' request is GRANTED. This case shall remain STAYED for a period of 120 days from the date of this Order. On or before February 22, 2021, the parties shall file a joint report as to the status of this litigation. No further extensions of the stay shall be granted absent an extraordinary showing of good cause. Signed by Judge Wendy W. Berger on 11/2/2020. (RMF)ctp** (Entered: 11/02/2020) |
| 11/02/2020 | | Set deadline: Status Report due by 2/22/2021. (LDJ) (Entered: 11/03/2020) |
| 02/22/2021 | 27 | STATUS report *(Joint)* by Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration. (Hancock, Kevin) (Entered: 02/22/2021) |
| 02/23/2021 | 28 | **ORDER re 27 Joint Status Report. It is ORDERED that this case shall remain STAYED pending resolution of Plaintiffs' petition by the DEA. Plaintiff shall notify this Court within fourteen days of the resolution of proceedings before the DEA. Plaintiffs' Petition for Preliminary Injunction 2 is DENIED without prejudice. Signed by Judge Wendy W. Berger on 2/23/2021. (RMF)ctp** (Entered: 02/23/2021) |
| 05/03/2021 | 29 | NOTICE of Intention to File Renewed Motion for Preliminary Injunction by Soul Quest Church of Mother Earth, Inc., Christopher Young re 28 Order pdf (Phillips, A.) Modified text on 5/3/2021 (LDJ). (Entered: 05/03/2021) |
| 05/07/2021 | 30 | MOTION to Amend *Complaint under Fed. R. Civ. P. 15* by All Plaintiffs. (Attachments: # 1 Exhibit Second Amended Verified Complaint for Declaratory and Permanent Injunctive Relief (Injunctive Relief Requested, Declaratory Relief Requested)(Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/07/2021) |
| 05/07/2021 | 31 | MOTION for Preliminary Injunction *and Supporting Memorandum of Law* by All Plaintiffs. (Attachments: # 1 Affidavit of Christopher Young, # 2 Exhibit Faith Based Principles, # 3 Exhibit Moral and Ethical Tenets, # 4 Exhibit Mission Statement, # 5 Exhibit Holiday Calendar, # 6 Exhibit Diet/Fasting Rituals, # 7 Exhibit Code of Ethics, # 8 Exhibit Dieta Guide, # 9 Exhibit Compliance Docs, # 10 Exhibit Request for Religious Based Exemption, # 11 Exhibit Guidance re: Petition, # 12 Exhibit Letter from DOJ -, # 13 Exhibit Letter from DOJ - June 4, 2021, # 14 Exhibit DEA determination - April 16, 2021, 2021, # 15 Exhibit Ayahuasca Manifesto)(Phillips, A.) (Entered: 05/07/2021) |

| 05/10/2021 | 32 | **ENDORSED ORDER directing the parties to confer in person, by telephone, or by video-teleconference concerning the 30 Motion to Amend Complaint and, by 5/12/2021, Defendants shall filed a notice stating whether they oppose the relief requested in the Motion to Amend Complaint. Further, Defendants are cautioned that they SHALL comply with the rules and order of this Court, including Local Rule 3.01(g), and they may not decline to comply with a rule or order based on their "policy." Signed by Magistrate Judge Daniel C. Irick on 5/10/2021. (Irick, Daniel)** (Entered: 05/10/2021) |
|---|---|---|
| 05/10/2021 | 33 | MOTION to File Excess Pages *Unopposed Motion for Leave to Exceed Page Limits* by Soul Quest Church of Mother Earth, Inc.. (Phillips, A.) (Entered: 05/10/2021) |
| 05/10/2021 | 34 | Unopposed MOTION to Amend *Complaint under Fed. R. Civ. P. 15* by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Exhibit A)(Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/10/2021) |
| 05/10/2021 | 35 | **ORDER re 31 : Defendants shall file a consolidated response to the Renewed Petition for Preliminary Injunction on or before May 21, 2021. On or before May 21, 2021, the parties shall file a joint notice, not to exceed ten pages, informing this Court if an evidentiary hearing is necessary in this matter. The stay of these proceedings is lifted. The Clerk is directed to lift the stay and reopen the case. Signed by Judge Wendy W. Berger on 5/10/2021. (RMF)ctp** (Entered: 05/10/2021) |
| 05/10/2021 | 36 | NOTICE of Appearance by Julie Straus Harris on behalf of Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration (Straus Harris, Julie) (Entered: 05/10/2021) |
| 05/10/2021 | 37 | **ENDORSED ORDER denying without prejudice 34 Plaintiff's Unopposed Motion for Leave to Exceed Page Limits which was filed under the docket entry heading of Plaintiff's Unopposed Motion to Amend Complaint. The entry appears to have been filed in error, as it is the identical to the motion filed at Doc. 33. Signed by Magistrate Judge Daniel C. Irick on 5/10/2021. (Irick, Daniel)** (Entered: 05/10/2021) |
| 05/10/2021 |  | Set deadline as to 31 MOTION for Preliminary Injunction *and Supporting Memorandum of Law*. Responses due by 5/21/2021 (LDJ) (Entered: 05/10/2021) |
| 05/10/2021 | 38 | Unopposed MOTION for Extension of Time to File Response/Reply as to 31 MOTION for Preliminary Injunction *and Supporting Memorandum of Law* , Unopposed MOTION for Extension of Time to File Answer by All Defendants. (Attachments: # 1 Exhibit DEA's Final Determination)(Straus Harris, Julie) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/10/2021) |
| 05/10/2021 | 39 | Unopposed MOTION to Amend *Complaint Under Fed. R.Civ.. P. 15* by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Exhibit A)(Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/10/2021) |
| 05/11/2021 | 40 | **ENDORSED ORDER granting 33 Unopposed Motion to File Excess Pages. The Court will accept the Amended Motion for Preliminary Injunction as filed, and the Defendants may file a response of 35 pages. Signed by Magistrate Judge Daniel C. Irick on 5/11/2021. (Irick, Daniel)** (Entered: 05/11/2021) |
| 05/11/2021 | 41 | **ORDER denying as moot 30 Plaintiff's Motion for Leave to Amend Complaint; granting 39 Plaintiff's Unopposed Leave to Amend Complaint such that on or before May 14, 2021 Plaintiff shall file the amended complaint attached to the motion;granting 38 Defendant's Unopposed Motion for Extension of Time to Respond to Plaintiff'sComplaint and Plaintiff's Renewed Petition for Preliminary Injunction, On or before June 1, 2021, Defendants shall file a consolidated response** |

| | | **parties shall file a joint notice, not to exceed ten pages, informing this Court if an evidentiary hearing is necessary in this matter. On or before June 4, 2020, Defendants shall respond to the amended complaint. See Order. Signed by Magistrate Judge Daniel C. Irick on 5/11/2021. (RN)** (Entered: 05/11/2021) |
|---|---|---|
| 05/11/2021 | | Reset deadlines for Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America Answer due by 6/4/2021. Amended Complaint due by 5/14/2021 (LDJ) (Entered: 05/11/2021) |
| 05/11/2021 | | Reset deadline as to 31 MOTION for Preliminary Injunction *and Supporting Memorandum of Law*. Responses due by 6/1/2021 (LDJ) (Entered: 05/11/2021) |
| 05/11/2021 | 42 | AMENDED COMPLAINT *(Second)* against All Defendants filed by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(Phillips, A.) (Entered: 05/11/2021) |
| 06/01/2021 | 43 | Joint NOTICE of Parties by Soul Quest Church of Mother Earth, Inc., Christopher Young re 41 Order on Motion to Amend / Correct / Modify / SupplementOrder on Motion for Extension of Time to File Response / ReplyOrder on Motion for Extension of time to Answer (Phillips, A.) Modified text on 6/2/2021 (LDJ). (Entered: 06/01/2021) |
| 06/01/2021 | 44 | MOTION to Dismiss Plaintiffs' Second Amended Verified Complaint for Declaratory and Permanent Injunctive Relief , MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss for Failure to State a Claim by Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration. (Straus Harris, Julie) (Entered: 06/01/2021) |
| 06/01/2021 | 45 | MEMORANDUM in opposition re 31 Motion for Preliminary Injunction filed by Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America, U. S. Drug Enforcement Administration. (Attachments: # 1 Affidavit Declaration of Karen Moreno, # 2 Exhibit A to Moreno Declaration, # 3 Exhibit B to Moreno Declaration, # 4 Exhibit C to Moreno Declaration, # 5 Exhibit D to Moreno Declaration, # 6 Exhibit E to Moreno Declaration, # 7 Exhibit F to Moreno Declaration, # 8 Exhibit G to Moreno Declaration, # 9 Exhibit H to Moreno Declaration, # 10 Affidavit Declaration of Claude M. Redd)(Straus Harris, Julie) Modified text on 6/2/2021 (LDJ). (Entered: 06/01/2021) |
| 06/07/2021 | 46 | NOTICE of Appearance by Michael James Gaffney on behalf of Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America (Gaffney, Michael) (Entered: 06/07/2021) |
| 06/14/2021 | 47 | NOTICE by Soul Quest Church of Mother Earth, Inc. re 43 Notice (Other) *Joint Supplement to Same* (Phillips, A.) (Entered: 06/14/2021) |
| 06/15/2021 | 48 | Unopposed MOTION for Leave to File Other Document :Reply to Defendants' Response in Opposition to Plaintiffs' Renewed Petition for Preliminary Injunction by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 06/15/2021) |
| 06/15/2021 | 49 | **ENDORSED ORDER granting 48 Unopposed Motion for Leave to File Reply. A seven page reply may be filed within seven days. Signed by Magistrate Judge Daniel C. Irick on 6/15/2021. (Irick, Daniel)** (Entered: 06/15/2021) |
| 06/22/2021 | 50 | Unopposed MOTION for Extension of Time to File Response/Reply as to 44 MOTION to Dismiss Plaintiffs' Second Amended Verified Complaint for Declaratory and Permanent Injunctive Relief MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for |

(Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 06/22/2021)

| | | |
|---|---|---|
| 06/22/2021 | 51 | **ENDORSED ORDER granting 50 Unopposed Motion for Extension of Time to File Response to 44 Motion to Dismiss. Response due by 7/12/2021. Signed by Magistrate Judge Daniel C. Irick on 6/22/2021. (Irick, Daniel)** (Entered: 06/22/2021) |
| 06/22/2021 | 52 | REPLY in support of 31 MOTION for Preliminary Injunction *and Supporting Memorandum of Law* filed by Soul Quest Church of Mother Earth, Inc.. (Phillips, A.) Modified on 6/23/2021 (RDO). (Entered: 06/22/2021) |
| 06/23/2021 | | Set/reset deadlines as to 44 MOTION to Dismiss. Responses due by 7/12/2021. (RDO) (Entered: 06/23/2021) |
| 07/01/2021 | 53 | NOTICE by Acting Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America *of Withdrawal of Counsel* (Hancock, Kevin) (Entered: 07/01/2021) |
| 07/12/2021 | 54 | (STRICKEN AND REMOVED per Endorsed Order 58) THIRD AMENDED, VERIFIED COMPLAINT *for Declaratory and Injunctive Relief Pursuant to F.R.C.P. 15(a)(1)* against All Defendants filed by All Plaintiffs. (Attachments: # 1 Exhibit Certificate of Ordination, # 2 Exhibit April 16, 2021 DEA Order, # 3 Exhibit May 29, 2020 DEA Formal Response, # 4 Exhibit June 4, 2020 DEA Correspondence, # 5 Exhibit Chris Young Affidavit, # 6 Exhibit Soul Quest Timber Permit, # 7 Exhibit Ayahuasca Manifesto, # 8 Exhibit Soul Quest Code of Ethics, # 9 Exhibit Ronald W. McNutt Affidavit, # 10 Exhibit August 2017 Plaintiffs' Correspondence, # 11 Exhibit DEA Guidance re: Petition, # 12 Exhibit Memo re: Federal Law Protections for Religious Liberty)(Phillips, A.) Modified text on 7/13/2021 (LDJ). Modified text on 7/21/2021 (LDJ). (Entered: 07/12/2021) |
| 07/12/2021 | 55 | RESPONSE in Opposition re 44 MOTION to Dismiss Plaintiffs' Second Amended Verified Complaint for Declaratory and Permanent Injunctive Relief MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim filed by Soul Quest Church of Mother Earth, Inc.. (Attachments: # 1 Exhibit April 16, 2021 DEA Correspondence, # 2 Exhibit DEA Guidance re: Petitions, # 3 Exhibit Plaintiffs' Email re: Case Status Discussion, # 4 Exhibit Orange County Sheriff's Office Incident Report) (Phillips, A.) (Entered: 07/12/2021) |
| 07/15/2021 | 56 | Unopposed MOTION to Amend 54 Amended Complaint by Soul Quest Church of Mother Earth, Inc., Christopher Young. (Attachments: # 1 Exhibit Third Amended Complaint) (Phillips, A.) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 07/15/2021) |
| 07/15/2021 | 57 | Unopposed MOTION for Extension of Time to File Response/Reply *to Plaintiffs' Third Amended Complaint and Plaintiffs' Anticipated Renewed Petition for Preliminary Injunction* by Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America. (Gaffney, Michael) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 07/15/2021) |
| 07/20/2021 | 58 | **ENDORSED ORDER granting 56 Unopposed Motion to Amend; granting 57 Unopposed Motion for Extension of Time. On or before 7/23/2021, Plaintiff may file the Third Amended Complaint attached to the Motion; Defendants shall respond to that pleading by 8/26/2021. Defendants shall respond to the 31 Motion for Preliminary Injunction 21 days after the date the Court enters an order on any motion to dismiss the Third Amended Complaint; or, if no such motion to dismiss is filed, by 9/17/2021. The unauthorized 54 Third Amended Complaint is hereby STRICKEN, and the Clerk is directed to delete that document. Signed by Magistrate Judge Daniel C. Irick on 7/20/2021. (Irick, Daniel)** (Entered: 07/20/2021) |
| 07/20/2021 | | Set deadline: Amended Complaint due by 7/23/2021 (LDJ) (Entered: 07/21/2021) |

| | | |
|---|---|---|
| | | *THIRD AMENDED, VERIFIED COMPLAINT for Declaratory and Injunctive Relief Pursuant to F.R.C.P. 15(a)(1)* against All Defendants filed by All Plaintiffs. (Attachments: # 1 Exhibit Certificate of Ordination, # 2 Exhibit April 16, 2020 DEA Order, # 3 Exhibit May 29, 2020 DEA Formal Response, # 4 Exhibit June 4, 2020 DEA Correspondence, # 5 Exhibit Chris Young Affidavit, # 6 Exhibit Soul Quest Timber Permit, # 7 Exhibit Ayahuasca Manifesto, # 8 Exhibit Soul Quest Code of Ethics, # 9 Exhibit Ronald W. McNutt Affidavit, # 10 Exhibit August 2017 Plaintiffs' Correspondence, # 11 Exhibit DEA Guidance re: Petition, # 12 Exhibit Memo re: Federal Law Protections for Religious Liberty)(Phillips, A.) Modified text on 7/23/2021 (LDJ). (Entered: 07/22/2021) |
| 07/23/2021 | 60 | **ENDORSED ORDER denying as moot 44 Defendants' Motion to Dismiss. Signed by Judge Wendy W. Berger on 7/23/2021. (MDJ)** (Entered: 07/23/2021) |
| 08/26/2021 | 61 | MOTION to Dismiss Plaintiffs' Third Amended Verified Complaint for Declaratory and Injunctive Relief by Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America. (Gaffney, Michael) (Entered: 08/26/2021) |
| 09/15/2021 | 62 | RESPONSE in Opposition re 61 MOTION to Dismiss Plaintiffs' Third Amended Verified Complaint for Declaratory and Injunctive Relief filed by Soul Quest Church of Mother Earth, Inc.. (Attachments: # 1 DEA Final Determination Letter, # 2 DEA RFRA Guidance, # 3 Email Correspondence re: Exemption)(Phillips, A.) (Entered: 09/15/2021) |
| 09/21/2021 | 63 | Unopposed MOTION for Leave to File Other Document :Reply in Support of Motion to Dismiss by Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America. (Gaffney, Michael) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 09/21/2021) |
| 09/21/2021 | 64 | **ENDORSED ORDER granting 63 Unopposed Motion for Leave to File Reply. Signed by Magistrate Judge Daniel C. Irick on 9/21/2021. (Irick, Daniel)** (Entered: 09/21/2021) |
| 09/28/2021 | 65 | REPLY to Response to Motion re 61 MOTION to Dismiss Plaintiffs' Third Amended Verified Complaint for Declaratory and Injunctive Relief filed by Administrator, U.S. Drug Enforcement Administration, Attorney General, United States of America. (Gaffney, Michael) (Entered: 09/28/2021) |
| 02/04/2022 | 66 | **The parties are hereby ORDERED TO SHOW CAUSE by a written response filed no later than February 17, 2022 as to why this case should not be dismissed, pursuant to Local Rule 3.10, for lack of prosecution due to the non-filing of a Case Management Report within the time prescribed. Signed by Judge Wendy W. Berger on 2/3/2022. (ALL) ctp** (Entered: 02/04/2022) |
| 02/16/2022 | 67 | CASE MANAGEMENT REPORT. (Phillips, A.) (Entered: 02/16/2022) |
| 02/16/2022 | 68 | RESPONSE TO ORDER TO SHOW CAUSE re 66 Order to show cause filed by Soul Quest Church of Mother Earth, Inc.. (Phillips, A.) (Entered: 02/16/2022) |
| 02/25/2022 | 69 | CASE MANAGEMENT AND SCHEDULING ORDER: **Amended Pleadings due by 4/15/2022, Joinder of Parties due by 4/15/2022, Discovery due by 10/28/2022, Dispositive motions due by 11/29/2022, Joint Final Pretrial statement due by 4/3/2023, All other motions due by 3/1/2023, Plaintiff disclosure of expert report due by 8/30/2022, Defendant disclosure of expert report due by 9/29/2022. Trial Status Conference set for 4/11/2023 at 10:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger. Bench Trial set for term commencing 5/1/2023 at 09:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger. Conduct mediation hearing by 11/13/2022. Lead counsel to coordinate dates. Signed by Judge Wendy W. Berger on 2/25/2022. (ALL)** (Entered: 02/25/2022) |

| | | who is not assigned to this case, to conduct a mediation conference. Signed by Judge Wendy W. Berger on 2/25/2022. (ALD) (Entered: 02/25/2022) |
|---|---|---|
| 02/28/2022 | 71 | CASE REFERRED to Mediation with Magistrate Judge Embry J. Kidd. (KNC) (Entered: 02/28/2022) |
| 03/01/2022 | | Magistrate Judge Embry J. Kidd added to conduct mediation conference. (KNC) (Entered: 03/01/2022) |
| 03/01/2022 | 72 | **ORDER REGARDING SETTLEMENT CONFERENCE. Settlement Conference set for 10/26/2022 at 09:30 AM via Zoom. Plaintiff is directed to make a written offer to Defendant on or before October 5, 2022. Defendant is directed to make a written counteroffer to Plaintiff on or before October 12, 2022. The parties are directed to provide their confidential statements to the Court on or before October 19, 2022. Signed by Magistrate Judge Embry J. Kidd on 3/1/2022. (CB)** (Entered: 03/01/2022) |
| 03/01/2022 | 73 | NOTICE of Zoom hearing: re: 72 Order scheduling mediation conference; Settlement Conference set for 10/26/2022 at 9:30 AM in Zoom Video Conference before Magistrate Judge Embry J. Kidd.(PML) ctp (Entered: 03/01/2022) |
| 03/04/2022 | 74 | **ORDER. Defendants' Motion to Dismiss (Doc. 61) is GRANTED in part as set forth in this Order and DENIED as moot in all other respects. The Third Amended, Verified Complaint (Doc. 59) is DISMISSED without prejudice. The Clerk is directed to terminate all other pending motions and close this case. Signed by Judge Wendy W. Berger on 3/4/2022. (ALL)** ctp (Entered: 03/04/2022) |
| 04/04/2022 | 75 | **REFILED AT 76 USING CORRECT EVENT** NOTICE of Appeal by Soul Quest Church of Mother Earth, Inc. re 74 Order on Motion to Dismiss (Phillips, A.) Modified on 4/4/2022 (KNC). (Entered: 04/04/2022) |
| 04/04/2022 | 76 | NOTICE OF APPEAL as to 74 Order on Motion to Dismiss by Soul Quest Church of Mother Earth, Inc.. Filing fee $ 505, receipt number AFLMDC-19418753. (Phillips, A.) (Entered: 04/04/2022) |
| 04/04/2022 | 77 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 76 Notice of Appeal. (KNC) (Entered: 04/04/2022) |
| 04/14/2022 | | Magistrate Judge Embry J. Kidd no longer assigned to case. (KNC) (Entered: 04/14/2022) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/15/2022 09:01:37 | | |
| **PACER Login:** | aphillips67113 | **Client Code:** | SQCME DEA |
| **Description:** | Docket Report | **Search Criteria:** | 6:20-cv-00701-WWB-DCI |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |
| **Exempt flag:** | Not Exempt | **Exempt reason:** | Not Exempt |

# DKT. 1
# PLAINTIFFS' INITIAL COMPLAINT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 6:20-cv- |
| WILLIAM BARR, Attorney General of the United States of America; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF (INJUNCTIVE RELIEF SOUGHT)

The Plaintiffs, Soul Quest Church of Mother Earth, Inc., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members, and Christopher Young, individually and as the spiritual leader of Soul Quest Church of Mother Earth [hereinafter collectively "Plaintiffs"], by and through the undersigned counsel, hereby allege as follows:

## I.     INTRODUCTION

1.      Plaintiff Soul Quest Church of Mother Earth, Inc. [hereinafter "Soul Quest Church"], is a Christian syncretic religion based in Orlando, Florida, and registered as a Florida domestic non-profit corporation.

2.      Plaintiff Christopher Young is the spiritual leader of Plaintiff Soul Quest Church, who resides in the State of Florida.

3.      The Plaintiffs bring this Complaint on behalf of all members of Soul Quest Church, pursuant to 42 U.S.C. §§ 2000bb–2000bb-4. [hereinafter collectively the "Religious Freedom Restoration Act" or "RFRA"], and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges, and immunities secured to Plaintiffs by the First, Fifth, and Fourteenth Amendments to the United States Constitution.

4.      Specifically, Plaintiffs seek a declaration that the Defendants' threats to arrest and prosecute members of Soul Quest Church who seek to practice their religious rituals, which involve     the sacramental consumption of trace amounts of a Schedule 1 chemical (21 U.S.C. § 812), at Soul Quest Church's religious ceremonies, is unconstitutional, unlawful, and violates the RFRA, in that these threats burden the central practice of Plaintiffs' religion, i.e. the imbibing of the sacramental tea.

5.      Plaintiffs also seek a permanent injunction enjoining the Defendants from preventing the importation or use of Soul Quest Church's sacramental tea in religious ceremonies, and from threatening to arrest or prosecute members of Soul Quest Church who seek to exercise their religion.

## II.    JURISDICTION AND VENUE

6.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(3)-(4), because the case arises under the Constitution, laws, and treaties of the United States, and seeks to redress the deprivation of rights, privileges, and immunities secured to Plaintiff by the First, Fourth, and Fifth amendments to the Constitution of the United States, and the Religious Freedom Restoration Act, as well as to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

7.    Pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706, this Court has the authority to grant declaratory relief, and to issue preliminary and permanent injunctions.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because this is a civil action in which the Defendants are officers and/or employees of the United States, an agency thereof acting in their official capacity or under color of legal authority, and an agency of the United States, and the Middle District of Florida, Orlando Division, is where a substantial part of the events or omissions giving rise to the claims occurred and where the plaintiff reside, where no real property is involved.

## III.    PARTIES

### A.    Plaintiffs

9.    Plaintiff Soul Quest Church is a registered domestic non-profit corporation incorporated under the laws of the State of Florida, with a principal office located in Orlando, Florida.  Thus, pursuant 28 U.S.C. § 1391(c)(2), Plaintiff Soul Quest Church resides in the Middle District of Florida, Orlando Division for venue purposes.  Soul Quest Church is adversely affected and aggrieved by the Defendants' actions, as more fully set forth below.

10.     Plaintiff Christopher Young is a natural person who is domiciled in Orlando, Florida.   Thus, pursuant 28 U.S.C. § 1391(c)(1), Plaintiff Christopher Young is deemed to reside in the Middle District of Florida, Orlando Division.   Plaintiff Christopher Young is the religious leader of Soul Quest Church.   Plaintiff Christopher Young brings this action in his own capacity as a member of Soul Quest Church, and on behalf of the members of Soul Quest Church.

### B.     Defendants

11.     Defendant William Barr is the Attorney General of the United States of America, and resides in Washington, District of Columbia.

12.     Defendant Uttam Dhillon is the acting Administrator of the United States Drug Enforcement Authority.

13.     The United States Drug Enforcement Authority (hereinafter, "DEA") is the federal agency in charge of drug enforcement within the United States. As such, it is the only agency empowered to grant religious exemptions, like the one sought by the Plaintiffs in the instant Complaint, to United States drug laws.

## IV.   PROCEDURAL HISTORY & FACTUAL BACKGROUND

### A.     Procedural History

14.     The Plaintiffs have made concerted, long-term efforts to secure a religious-based exemption to the Controlled Substances Act's prohibition against the ingestion of N,N-5,5-dimethyltryptamine ("DMT") from the Defendants.

15.     On August 21, 2017, the Plaintiffs dispatched, through legal counsel, their exemption application to the DEA (hereinafter, "DEA Exemption Application"). A true and

correct copy of the Plaintiffs' DEA Exemption Application is attached hereto, and incorporated by reference herein, as <u>Exhibit 1</u>. The DEA, in conjunction with the U.S. Department of Justice (hereinafter, "DOJ") is assigned the process of considering religious-based exemptions to enforcement of provisions of the Controlled Substances Act. As set forth below, these respective government departments/agencies are responsible for constructing the framework for consideration and review of exemption applications – including the Plaintiffs' DEA Exemption Application, which was remitted nearly three (3) years ago by the Plaintiffs. This framework was anticipated to be in conformity with the provisions of the RFRA, as well as the Supreme Court's decision in <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418 (2006) (hereinafter, "<u>O Centro</u>").

16.     The Plaintiffs anticipated that the guidelines which should have been developed but, based upon information and belief, were never so developed, would be narrowly tailored to not clash with the First Amendment's Free Exercise Clause. The Plaintiffs also anticipated that such guidelines would have been constructed with various safeguards including, but not limited to, expressed time limitations for review and ruling, as well as specific standards designed to allow for the uniform application of such guidelines. A copy of these DEA's guidelines regarding petitions for religious exemptions to the Controlled Substances Act are attached hereto, and incorporated by reference herein, as <u>Exhibit 2</u>.[1]

---

[1] Indeed, despite diligent research, the Plaintiffs have been unable to locate any historical copy of what should be publicly-available "guidelines," in force in August 2017 – with the only document stemming from February 2018 – when the Plaintiffs submitted their application for a religious exemption. The lack of a historic database for these documents is a problem in and of itself given the Defendants' propensity for delay. However, the Plaintiffs' religious exemption application met the requirements of the Defendants' "guidelines" in force at the

17.    This has not occurred.  Indeed, to the best of the Plaintiffs' knowledge, the Plaintiffs' DEA Exemption Application continues to sit at the assigned office, located in Springfield, Virginia, with no timetable for completion and with no stated standards upon which to guide the Defendants' scrutinizing and ruling on such applications.  In fact, through information and belief, since the 2006 decision in O Centro, supra, it is believed that – despite dozens of submitted religious exemption applications submitted to the Defendants by a variety of religious-based groups – the Defendants have only granted two (2) applications.  Of these two (2) granted applications, one was to the group prosecuting the successful RFRA challenge in O Centro, while the other application for a religious exemption also resulted from judicial action by groups affiliated to that organization.  Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210 (D.C. Oregon 2009) [hereinafter, "CHLQ"].

18.    In the case-at-bar, there was no acknowledgment of receipt of the DEA Exemption Application directly by the Defendants.    Notwithstanding this, it was independently confirmed – in approximately October 2018 – that Defendants had received the Plaintiffs' DEA Exemption Application.  At that time, a Freedom of Information Act [hereinafter "FOIA"] request was forwarded to Plaintiffs' counsel, pertaining to a request to disclose the DEA Exemption Application pursuant to FOIA.  Later discussions between Plaintiffs' counsel and the Defendants' FOIA office affirmed the receipt of the DEA Exemption Application shortly following its August 21, 2017 transmission to Defendants.

19.    Furthermore, from March through May 2019, Plaintiffs' counsel made regular telephone calls and left regular voicemail messages at the Defendants' office tasked with

_____

time of submission, and from that basis the Plaintiffs conclude that the "guidelines" presently in force would not materially differ from those in effect in August 2017.

assessing religious exemption applications including, but not limited to, multiple voicemails with this office's supervisor, Lorne Miller. The Plaintiffs received no return calls from Mr. Miller or anyone else with the authority to address the status of the Plaintiffs' DEA Exemption Application.

20.     Since May 2019, the Defendants have failed to make any contact with the Plaintiffs' legal counsel regarding the DEA Exemption Application – or any other matter.

## B.     Factual & Legal Background

### 1.     Plaintiff Soul Quest Church

#### *a.     Overview*

21.     Plaintiff Soul Quest Church rests its religious principles and sacred beliefs upon a foundation of ancient teachings, writings, records, and common cultural and religious practices and traditions of indigenous peoples from across the globe.

22.     These same foundations constitute the source for Plaintiff Soul Quest Church's traditional, natural healing practices.

23.     Plaintiff Soul Quest Church believes that it honors and fulfills these ancient traditions and practices through its rituals from its church in Orlando, Florida, and that such rituals help to spread its teachings through the Earth and cosmos.

24.     Pursuant to its core teachings and beliefs, Plaintiff Soul Quest Church passes its message to others through its operation of a healing ministry, counseling and natural medicine school.   Further, it provides street-level ministry outreach, spiritual activities, and spiritual/faith-based education.

25.     Plaintiff Soul Quest Church holds spiritual classes and services in a style akin to various Native American religious practices – based upon the seasons. Religious services

involve music and song, and the sharing of personal professions of faith and faith in-action, as well as the enactment of plays.

>    b.    *Soul Quest Church's Faith-Based Principles*

26.    Plaintiff Soul Quest Church and its members embrace and espouse the following faith-based principles as fundamental to its religion:

>    a.    The Creator, the Great Spirit, and that the Great Spirit created all beings to exist as free and equal.
>
>    b.    The Creator granted to all beings eternal, inherent, ancestral, and sovereign rights, and to all humans a conscience upon which to govern human activities throughout the planet.
>
>    c.    All humans derive from, and are intended to exist akin to, traditional, indigenous communities. Further, through the descendants of these indigenous communities, there exist the need and priority to form and maintain organizations and practices premised upon indigenous teachings, wisdom and customs.
>
>    d.    Spiritually-based, natural health care and related sacred expression – arising from the sacred texts of traditional, indigenous religions and their ritualistic practices – are sacrosanct and must be practiced as sacraments to the faith.
>
>    e.    The fundamental mission of the faith is the restoration of divine wisdom, and knowledge of the benefits to health and life provided by the Great Spirit through Mother Earth.
>
>    f.    The restoration of divine wisdom can only occur through traditional ceremonies, rituals, sacraments, scriptural and a spiritually-valid moral science. Such is based upon the teachings and practices reflecting the guidance of the Great Spirit as bequeathed to all people as children of Mother Earth.
>
>    g.    The traditions and teachings espoused within the faith's sacred texts and scriptures provide insight for

the restoration of spiritual, physical and mental health of all beings. These traditions and teachings require the assessment, improvement and restoration of physical, mental and spiritual health.

h.   The belief that, as children of the Great Spirit, there is entitlement to, as part of natural law, the various fundamental freedoms including, but not limited, to freedom of thought and expression; the free exercise of sacred rights of worship and methods of healing; freedom of personal security; and freedom of self-determination.

i.   All men and women are endowed with sufficient intelligence for self-governance to ensure the guarantees of those freedoms; to establish just and morally righteous methods of interacting with one another; and to the provide for maintenance of a tranquil and secure domestic life infused by the blessings of the faith.

c.   *Fundamental Moral & Ethical Tenets*

27.   Plaintiff Soul Quest Church adheres to seven (7) fundamental moral and ethical tenets, revealed to it and its members by and through the actions of the Great Spirit, *to wit*:

a.   Mother Earth, is the embodiment of an indivisible, living community of interrelated and interdependent beings with a common destiny; and that Mother Earth is the source of life, nourishment and learning, and providing everything needed to live a fulfilled existence; Mother Earth is part of a greater creation, composing all existence throughout the cosmos, as originated by the Great Spirit.

b.   All forms of depredation, exploitation, abuse and contamination – in whatever form and including, but not limited to certain economic systems – have endangered Mother Earth by causing massive destruction, degradation and disruption of natural systems. Amoral and

immoral practices and systems must be discarded and replaced with the faith's moral tenets – guided by the Great Spirit – and premised upon the embracing of practices designed to protect and sanctify Mother Earth.

c.      As a part of a globally interdependent living community, and consistent with the teachings of the Great Spirit, all beings are imbued with natural rights requiring equal respect. Human beings are just one component of Mother Earth and a homocentric approach creates imbalance within Mother Earth.

d.      In order to fulfill the design of the Great Spirit to equal dignity and rights among humans, it is concurrently necessary to recognize and defend the rights of Mother Earth and all its beings.

e.      Consistent with the teachings of the Great Spirit, collective action must be taken to transform structures and systems destructive to Mother Earth including, but not limited to, the catastrophic consequences of modern climate change.

f.      Indigenous plant life is sacred and embodied by the Great Spirit. All materials stemming from plant life must be accorded dignity, protected from threat or violation, and defended as a holy sacrament. The ritual use of ayahuasca and its natural healing treatments is embraced as a fulfillment of this holy sacrament.

g.      An obligation to embody and promote the principles of the Universal Declaration of the Rights of Mother Earth, via fundamental respect for the sacred nature of the planet and its occupants, as one with the Great Spirit.

28.     These fundamental tenets of Plaintiff Soul Quest Church's faith were described in greater detail in the DEA Exemption Request that the Plaintiffs submitted to the Defendants. See Exhibit 1.

            d.      *Scriptural & Liturgical Foundations; Mission*

29.     Plaintiff Soul Quest Church's origins, and its teacher-prophet, the Spirit of Ayahuasca, are comprised within two sacred plants "Banisteriopsis Caapi" and "Psychotria Viridis."

30.     The beliefs, purposes and guidelines are further defined within the sacred writings titled the "Ayahuasca Manifesto." A copy of the Ayahuasca Manifesto is attached hereto, and incorporated by reference herein, as Exhibit 3.

31.     The Ayahuasca Manifesto is very much akin, and serves a similar purpose, to other faiths' sacred writings, explaining the tenets of the faith, such as the Jewish Talmudic writings and the Mishnah.

32.     The sacred nature of the Spirit of Ayahuasca is proclaimed within the Ayahuasca Manifesto as follows:

> I am the spirit of Ayahuasca. For the first time, I reveal myself through the "Word" to make an emergency call to all the Human Beings on the Planet, especially to the Light Seekers, as I must expand beyond the Amazon River Basin. With my physical expansion, I intend to facilitate the spiritual transformation currently stirring the human species. . . .
>
> I am a spirit of spirits. I operate from a vibration superior to the spirits who compose me. I am of a hierarchy superior to that of the spirit of Ayahuasca and of Chacruna. I am the medicine resulting from the mixture of Ayahuasca and Chacruna. Although they give me the name of one of them, my sacred magic does not come from either one of them. My magic resides in the synergy created by the sacred mixture.

See Exhibit 3 at 5-6.

33.   Plaintiff Soul Quest Church's beliefs, purposes and guidelines are provided through channeled material documented in Ayahuasca Manifesto.  The Manifesto provides knowledge and direction, inclusive of details about Plaintiff Soul Quest Church's mission, as well as instructions on the following topics:

a.   Role in the Expansion of the Human Consciousness;
b.   Purpose with Human Beings;
c.   Respect and the Sacred Nature of Ayahuasca;
d.   Benefits of Use;
e.   Guide for Conducting Ayahuasca Ceremonies; and
f.   Planetary Mission.

See Exhibit 3.

34.   Other fundamental religious ethical requirements of Plaintiff Soul Quest Church are included in its Code of Ethics.  The Code of Ethics contains key principles, edicts and other educational statements regarding Soul Quest and its sacraments – inclusive of the use of ayahuasca.  A copy of the Code of Ethics is attached hereto, and incorporated by reference herein, as Exhibit 4.

35.   Plaintiff Soul Quest Church's mission is achieved through its advocacy and educational initiatives by: producing disciples who will celebrate the teachings and wisdom of the Great Spirit in cooperative worship; are devoted to the four (4) boundless and unequaled states of mind – Love, Compassion, Joy and Equanimity; are possessed with love for everyone and every living being; and are permeated and bound by the spheres of influence and dynamic teachings of our elders.

36.    On a liturgical level, Plaintiff Soul Quest Church's requires staff to observe proper liturgical dress during religious retreats and ceremonies.  This entails the wearing of white vestments.

37.    The color *white* is critical to the practice of Plaintiff Soul Quest Church's religious ceremonies and retreats, and performance of sacraments of the faith, for the following reasons:

    a.    It represents the color of eternal light and is an emblem of the divine.

    b.    It projects purity, cleanliness and neutrality.

    c.    It aids in mental clarity, encourages staff and participants to clear mental and spiritual clutter and obstacles, evokes purification of thoughts and actions and enables fresh beginnings.

    d.    It accentuates free movement, all while maintaining maximum respect to the Great Spirit, and all others participating in such functions.

    *e.    Holidays*

38.    Plaintiff Soul Quest Church's and its members celebrate the following holidays:

    a.  December 23 - Winter Solstice;
    b.  March 21 - Vernal Equinox'
    c.  April 22 - Earth Day;
    d.  June 21 - Summer Solstice; and
    e.  September 21 - Autumnal Equinox.

39.    Plaintiff Soul Quest Church's holidays, akin to many diverse cultural and religious traditions, are premised upon the ancient tradition of celebrating the change of seasons and complementary astronomical events.

*f.*      *Dietary & Fasting Rituals*

40.      Plaintiff Soul Quest Church's and its members adhere to the traditional diet of the Medicine People.  The diet not only requires abstention from consumption of certain foods; rather, it also requires discipline, sacrifice and commitment, akin to those of various Judeo-Christian and Eastern religious sects.

41.      The constraints imposed by Plaintiff Soul Quest Church's dietary laws are designed to cleanse the body and, by doing so, cleanse the spirit and permit for the effective, efficient use of plant medicine.  These constraints are described, in greater detail in the Plaintiff's DEA Exemption Application.  See Exhibit 1.

42.      These constraints directly impact Plaintiff Soul Quest Church's ayahuasca sacrament ceremony.  Prior to any ayahuasca ceremony, Plaintiff Soul Quest Church members and adherents are to comply with the following dietary and sexual edicts, designed to purify body and soul:

> a.      Seven days prior to involvement in any ayahuasca ceremony, refraining from:
>
>> i.      Drug use, including prescription drugs (medical interaction forms, including in the supplement to this religious exemption application provide further instruction), and any and all recreational drugs.
>> ii.      Alcoholic beverages
>> iii.      Sexual activity (whether with a partner or from self-stimulation).
>
> b.      Three days prior to involvement in any ayahuasca ceremony, refrain a wide variety of foods and beverages.  See Exhibit 1.

    c.      All Plaintiff Soul Quest Church's facilitators are expected to fast for the period spanning the day prior to any ayahuasca ceremony, through to completion of any ceremony. In doing so, those individuals also demonstrate a commitment to the Great Spirit as embodied within the plant medicine, and prepare for acting as a surrogate for the Great Spirit during the ayahuasca ceremony. See Exhibit 1.

*g.*     *Church Governance*

43.    Ultimate authority lies in the Creator/Great Spirit of Ayahuasca as the head of the church and in the sacred beliefs, and doctrines expressed as the basis for Plaintiff Soul Quest Church's faith and practice.

44.    The government of Plaintiff Soul Quest Church is vested in its membership and administered by its officers. In function, final authority shall reside in the membership.

45.    Plaintiff Soul Quest Church members approve and/or affirm Plaintiff Soul Quest Church's qualified leadership, to carry out the purposes of the spirit of Ayahuasca.

46.    Plaintiff Soul Quest Church's leadership holds leadership meetings to talk, brainstorm and agree on any discipline or change that may be required.

47.    Akin to other religious institutions, Plaintiff Soul Quest Church maintains multiple instruments for governance of its affairs. Presently, this includes the following lay and religious officials/bodies:

    a.      Chief Executive Officer, Chief Medicine Man, Pastor, Chief Elder and Counselor: Plaintiff Christopher Young;

    b.      President, Elder and Counselor: Verena Young;

    c.      Senior Minister: Scott Irwin;

    d.      Senior Medicine Man/Shaman: Don Gaspar;

    e.      Medicine Man/Ayahuascaro: Anthony Chetta;

    f.      Medicine Woman: Tersa Shiki;

      g.      Council of Elders: Constituted of selected senior members of Plaintiff Soul Quest Church, and occupying various areas of specialization, as necessary for the maintenance and welfare of the Church.

48.     Further, other officers such as church administrator, secretary, visiting ministers and teachers/elders will be assigned with Board permission. Presently, pending future growth of the Plaintiff Soul Quest Church, the Senior Pastor fills such duties.

*h.     Membership*

49.     Plaintiff Soul Quest Church receives all individuals as members who accept the spiritual and religious principles of the Church, as well as recognize the fruits of the Great Spirit in their lives, and who agree to abide by Plaintiff Soul Quest Church's doctrine. The only requirement for membership is a singular request: the individual must express a belief in the foundation principles of the Plaintiff Soul Quest Church.

*i.     Soul Quest Church's Federal & State Religious-Based, Non-Profit Entity Recognition*

50.     Plaintiff Soul Quest Church holds the following federal and state tax treatments as a religious-based, non-profit entity:

      a.      Soul Quest Church of Mother Earth Inc. (SQCME) – Non-Profit Corporation Federal Identification No.: 841402813, and Florida State Non-Profit Corporation, founded by Medicine Man, Pastor, Chief Elder and Counselor, Chris Young; and its Elder and Counselor, Verena Young.

      b.      Soul Quest Ayahuasca Church of Mother Earth Retreat and Wellness Center (SQACME), as an independent branch or Free Church of SQCME; Florida State Non-Profit Corporation 501 IRS-compliant Non-Profit was first incorporated July 15, 2016, with its Charter Declaration also entered on July 15, 2016, recognizing its founders, Medicine Man,

Pastor, Chief Elder and Counselor Chris Young; and
Elder and Counselor Verena Young.

2.      Plaintiff Soul Quest Church's Ayahuasca Sacrament

51.     The ayahuasca sacrament is performed three (3) times per month, with approximately 60-80 individuals in attendance, alongside approximately twenty, skilled (20) facilitators (spiritual counselors) also present throughout the sacramental ceremony.  These facilitators work alongside a team – at the ceremony – which includes a licensed physician as medical director, a licensed paramedic, a licensed emergency medical technician [hereinafter "EMT"], a psychologist, and a research scientist.

52.     The ayahuasca sacrament involves the consumption of tea using the received wisdom and learning of Plaintiff Soul Quest Church to elevate its petitioners above the mundane world, and so bring them closer to the divine realm.

53.     Plaintiff Soul Quest Church limits attendance (and enhances the ratio of ceremonial facilitators) in order to maximize safety and security to all involved throughout the ritual.

54.     Plaintiff Soul Quest Church has designed and implemented safety and security protocols, intended to maximize the protection of those participants in Ayahuasca ceremonies.

55.     Those individuals designated to conduct and facilitate Plaintiff Soul Quest Church ceremonies must first prove that they have attained the requisite knowledge and expertise in the following areas:

        a.      The Pharmacology of Ayahuasca;
        b.      The Risks & Contra-Indications of Ayahuasca;
        c.      The Legal Implications Surrounding the Dispensing of
                Ayahuasca;
        d.      First Aid;

e.    The Theory of Non-Ordinary States of Consciousness, and Therapeutic Approaches;

f.    Possession of Extensive, Prior Personal Experience with Ayahuasca;

g.    The Ability to Work as a Team Member; and

h.    Understanding of Soul Quest's Religious Principles, Therapeutic Purposes of Consuming Ayahuasca, and the Fundamental Moral & Ethical Tenets.

56.    Additional measures are imposed to prepare Plaintiff Soul Quest Church members for participation in Ayahuasca ceremonies:

a.    Prior to any ceremony, the Church transmits, via electronic mail, educational material on Ayahuasca to all members anticipating participation in the Ayahuasca ceremony. It is critical to ensure that members are well-informed regarding the ceremony, and the requirements for properly conducting themselves before, during and after the ceremony. The following information is conveyed to these Soul Quest members:

    i.    The properties of Ayahuasca, its composition, its effects and the potential risk.

    ii.    The implications of drinking Ayahuasca.

    iii.    The dietary restrictions before and after the session.

    iv.    The responsibilities of the staff and the participants.

    v.    The procedure and operation of the session.

    vi.    The process, in its entirety.

b.    All Plaintiff Soul Quest Church members intending participation in the sacramental ceremonies involving ayahuasca are required to complete and return a medical form prior to participation, to ascertain whether or not there are potential medical limitations to such participation.

c.    Plaintiff Soul Quest Church conducts individualized interviews with the member intending to participate in the ayahuasca ceremony. The purpose for these interviews is to:

    i.    Establish a rapport with the individual; ascertain their basis and willingness to

participate in the sacred Ayahuasca ritual; and to qualitatively assess current psychological and physical status; and

ii.   (Re)assess an individual who has previously participated in the ayahuasca ceremony.

d.   Plaintiff Soul Quest Church presents and explains the mandatory consent form.

e.   Plaintiff Soul Quest Church uses the information gathered through its described written and oral questions/interviews to determine whether or not to permit any given individual to participate in the Church's sacred ayahuasca ceremony. The acceptance of an individual's participation in the ceremony is premised upon:

i.   Members demonstrating their understanding of the personal, religious process entailed by their participation.

ii.   Accepting only members whose personal participation is unlikely to require greater assistance (in time or resources) than is available in the current context of the ayahuasca ceremony.

iii.   Determining whether members perhaps require additional therapy prior to consuming the sacramental ayahuasca tea. Such additional therapy might potentially involve advising the member to seek appropriate, external professional assistance.

f.   In cases where any member's participation in the sacred ayahuasca ceremony is declined by the Church, Plaintiff Soul Quest Church provides that member with an explanation for its decision, and suggests alternative methods for achieving suitable religious and therapeutic fulfillment. If Plaintiff Soul Quest Church determines there to be doubts about any member's suitability, then participation in the ayahuasca ceremony is not permitted.

57.     Further details of the pre-ceremonial, ceremonial and post-ceremonial procedures involving the sacred ayahuasca ceremony are articulated within the Plaintiffs' DEA Exemption Application. See Exhibit 1.

58.     Despite the efforts made to maximize safety throughout the ayahuasca sacrament, the Plaintiffs have fallen victim to actions by the Defendants to hold such ceremonies, thus abridging fundamental freedoms and statutory rights.

### 3.     Federal Prohibitions on Ayahuasca

59.     The Controlled Substances Act [hereinafter "CSA"] was enacted by Congress to erect prohibitions upon the use of a large variety of identified, controlled substances. 21 U.S.C. § 801, et seq.

60.     To be classified as a controlled substance, a substance must, among others, have a "high potential for abuse." 21 U.S.C. § 812(b)(1)(A).

61.     One of the substances classified as a controlled substance is dimethyltryptamine [hereinafter "DMT"]. 21 U.S.C. § 812(c)(c)(6).

62.     DMT is a naturally-occurring substance found in many plants native to the Western Hemisphere, including North America.

63.     None of these plants containing DMT are listed as controlled substances, because the scientific evidence establishes that the DMT contained within these plants is not in a form with a "high potential for abuse." See 21 U.S.C. § 812(c)(a), et seq.

64.     Psychotropia viridis is a small plant, not listed within the CSA, containing trace amounts of DMT. This plant is part of the Plaintiffs' sacramental tea.

65.     Upon information and belief, DMT is only considered a "substance with a high potential for abuse" when its synthetic form is either taken intravenously or inhaled.

66.     By contrast, the Plaintiffs' sacramental tea is a natural, organic, and non-synthetic sacrament. In addition, the natural processes of digesting this organic sacrament further reinforce and ensure that the DMT entering the body through the Plaintiffs' sacramental tea cannot become a substance with a "high potential for abuse."

4.     Defendants' Actions to Undermine the Plaintiffs' Rights

67.     Consistent with the United States Supreme Court's decision in *O Centro supra*, the Plaintiffs – in August 2017 – submitted the aforementioned DEA Exemption Application to the Defendants.   Since that time, despite Plaintiffs' repeated efforts to gauge the status of their DEA Exemption Application, the Defendants have failed to act upon the application. Instead, the Defendants have locked up the DEA Exemption Application in a state of limbo.

68.     The Plaintiffs' DEA Exemption Application describes, in painstaking fashion, Plaintiff Soul Quest Church's eligibility for the faith-based exemption to the proscriptions imposed under the Drug Enforcement Act.  See Exhibit 1.

69.     The Defendants appear to have not even put into place any real procedure for processing the application, much less one narrowly tailored to minimize the impact upon the ability of citizens to freely exercise religious-based practices.

70.     The Plaintiffs assert that the failure of the Defendants to abide by the O Centro decision, and its jurisprudential progeny; the strictures of the RFRA; and even to established DOJ policies pertaining to the free exercise of religious practices have resulted in a direct abridgement of their rights, as articulated, herein.  See O Centro, supra; 42 U.S.C. §

2000bb. et seq. A copy of the established, internal DOJ policies that the Defendants' conduct violated is attached hereto, and incorporated by reference herein, as Exhibit 5 and Exhibit 6, respectively.

**COUNT ONE**

**VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS
TO FREEDOM OF RELIGION
(42 U.S.C. § 1983)**

71.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-70, as if fully set forth herein.

72.     The Plaintiffs, as individual and corporate citizens of the United States of America, have an inalienable right to practice their religion freely.

73.     The Defendants, as the sole entities with the ability to grant religious exemptions to churches and faiths similarly-situated to the Plaintiffs, carry the burden of interpreting and enforcing the laws of the United States so as not to infringe upon valid exercises of the First Amendment right to freedom of religion.

74.     The Defendants' absolute silence upon Plaintiffs' DEA Exemption Application, a silence that has now extended for years without follow-up from the Defendants, constitutes an effective denial through silence of the Plaintiffs' application.

75.     For the reasons set forth in this Complaint and the attached Exhibits, the Plaintiffs' religious requirement to use ayahuasca is part of a legitimate religious ritual, and one with deep significance to the members of the Plaintiff Soul Quest Church.

76.     Therefore, the Defendants' denial through silence of Plaintiffs' valid application constitutes an infringement of the Plaintiffs' rights arising under the Freedom of Religion clause of the First Amendment to the United States Constitution.

## COUNT TWO

## <u>VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT</u>
### (42 U.S.C. §§ 2000bb–2000bb-4)

77.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-76 as if fully set forth herein.

78.     The Defendants have, through silence, burdened the Plaintiffs' legitimate exercise of their religion.

79.     The Religious Freedom Restoration Act obligates the Defendants to refrain from burdening the Plaintiffs' lawful exercise of their faith unless the Defendants can show that such a burden both furthers a compelling government interest, and is the least-restrictive means of furthering that compelling interest.  <u>See</u> 42 U.S.C. § 2000bb-1(b).

80.     Despite years of time in which to act, the Defendants have not been able to provide any evidence of a compelling governmental interest they are preserving, or any indicia to suggest that the Defendants' silence is the least-restrictive means of preserving that interest.

81.     Therefore, the Defendants have violated Plaintiffs' rights under the Religious Freedom Restoration Act.

## COUNT THREE

## <u>VIOLATION OF THE PLAINTIFFS' RIGHTS TO</u>
## <u>PROCEDURAL DUE PROCESS</u>
### (42 U.S.C. § 1983)

82.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-81, as if fully set forth herein.

83.     The Defendants have, as part of the judicial mandate to allow exemptions pursuant to RFRA to individuals like the Plaintiffs, promulgated a set of "guidelines" to the public, which purport to govern filings for this type of exemption.  See Exhibit 2.

84.     Upon information and belief, the Defendants continue to abide by these guidelines to the present day.

85.     Part of these guidelines obligate the Defendants to, if they accept an application for filing, to provide a "notice of acceptance" to the applicant.  See Exhibit 2.

86.     If the Defendants should deny an application, these guidelines obligate the Defendants to return the application to the applicant "with a statement of the reason for not accepting the petition for filing."  See Exhibit 2.

87.     However, as discussed, supra, the Defendants have taken neither step with regards to the Plaintiffs' application, and, instead, the Defendants have remained silent upon the Plaintiffs' application for several years, effectively denying it without granting the Plaintiffs access to a fair and timely consideration of their application.

88.     Therefore, the Defendants have violated the Plaintiffs' right to procedural due process, arising under the Fourteenth Amendment to the United States Constitution.

### COUNT FOUR

### VIOLATION OF THE PLAINTIFFS' RIGHT TO SUBSTANTIVE DUE PROCESS
### (42 U.S.C. § 1983)

89.     Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-88 as if fully set forth herein.

90.     The guidelines promulgated by the Defendants obligate the Defendants to provide reasons to the applicant for an exemption, both in case of a denial at the application stage, and in case of a final denial of the application.

91.     However, at no point in Defendants' guidelines do the Defendants ever explain what they will be searching for in an application, or what reasons may compel the Defendants to refuse to accept an application for filing, or what may lead to a denial of an application.

92.     The Defendants can, therefore, deny any application for any reason.

93.     The Defendants' ongoing silence concerning the Plaintiffs' DEA Exemption Application constitutes a denial of the Plaintiffs' application through this silence.

94.     As stated, supra, the Defendants have never provided any reasons for this denial to the Plaintiffs, nor is it clear from the Defendants' guidelines what any such "reason" would be or consist of.

95.     Therefore, the Defendants' guidelines empower them to arbitrarily approve or deny an application for a religious exemption, like the Plaintiffs'.

96.     In addition, nowhere in the Defendants' guidelines does it state how long the Plaintiffs, or another similarly-situated applicant, will be expected to wait for their application to be processed.

97.     Thereby, even if Plaintiffs' application were accepted for filing, the Defendants could simply continue to remain silent for an indeterminate period of time.

98.     Therefore, the Defendants' guidelines leave Plaintiffs with no idea of how their application will be judged, or how long it may take the Defendants to do so.

99. Therefore, the processing of the Defendants' application under the Defendants' guidelines should be deemed an arbitrary one, in terms of both content evaluation and the time in which the Defendants have to respond to the Plaintiffs' application.

100. Therefore, the Defendants' processing of the Plaintiffs' DEA Exemption Application under these guidelines constitutes an arbitrary government act, in violation of the Plaintiffs' right to substantive due process under the Fourteenth Amendment to the United States Constitution.

### COUNT FIVE

### <u>VIOLATION OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH</u>
(42 U.S.C. § 1983)

101. Plaintiffs re-allege, and incorporate by reference herein, the allegations of paragraphs 1-100, as if fully set forth herein.

102. As is fitting for a religion based around ayahuasca, the Plaintiffs' ongoing proselytization and promotional efforts around the United States feature ayahuasca heavily.

103. As discussed, <u>supra</u>, the Defendants' denial through silence and inaction of the Plaintiffs' application for a religious exemption effectively functions as a prior restraint upon the Plaintiffs' speech.

104. The Defendants' denial through silence and inaction of the Plaintiffs' application for a religious exemption therefore severely burdens the Plaintiffs' rights to freedom of speech, in violation of the First Amendment to the United States Constitution.

# **PRAYER FOR RELIEF**

WHEREFORE, for all the foregoing reasons, the Plaintiffs respectfully request that this Court grant the following relief:

a. declare that the Defendants' actions in denying the Plaintiffs' application through silence are in violation of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, and the Religious Freedom Restoration Act;

b. declare that the Defendants' promulgated guidelines to the public are an arbitrary government action, in violation of the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution;

c. enter an Order that, within 30 days of the aforementioned declaratory relief, the Parties present to the Court a plan to effectuate the importation, distribution, and accounting for the Plaintiffs' sacramental tea consistent with the rights of the Plaintiff to use their sacramental tea in their religious services;

d. enter an Order permanently enjoining the Defendants from enforcing the prohibitions of the Controlled Substances Act against the Plaintiffs for the Plaintiffs' sacramental use of ayahuasca;

e. enter an Order awarding the Plaintiffs attorneys' fees, costs, and expenses, pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, and the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

f. award such other and further relief as this Court deems proper.

## VERIFICATION OF FACTUAL ALLEGATIONS IN COMPLAINT

With respect to the factual allegations in the instant Complaint, I, Christopher Young, Plaintiff herein, declare (certify, verify, or state) under penalty of perjury that the foregoing factual allegations are true and correct, as provided in 28 U.S.C. § 1746.

Executed on this _18th_ day of April, 2020.

**CHRISTOPHER YOUNG**

**Dated this _15_ day of April 2020.**

Respectfully submitted,

By: _s/Derek B. Brett_
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:      (902) 468-3066
Facsimile:      (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs

_s/A. Brian Phillips_
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:      (407) 872-0777
Telecopier:      (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as Spiritual Leader of Soul Quest Church of Mother Earth, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BARR, Attorney General of the United States of America; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. DRUG ENFORCEMENT ADMINISTRATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 6:20-cv- |

**AFFIDAVIT OF CHRISTOPHER YOUNG IN SUPPORT OF
PLAINTIFF'S VERIFIED COMPLAINT FOR
DECLARATORY AND EMERGENCY INJUNCTIVE RELIEF AND DAMAGES**

Pursuant to 28 U.S.C. § 1746, I, Christopher Young, state as follows:

1.      I am over the age of twenty-one (21) years and have personal knowledge of the facts listed in this affidavit.

2.      I am the current spiritual leader of Soul Quest Church of Mother Earth, Inc. [hereinafter "Soul Quest Church"].

3.      Soul Quest Church is a Christian syncretic religion based in Orlando, Florida.

4.      Soul Quest Church is a registered domestic non-profit corporation incorporated under the laws of the State of Florida, with a principal office located in Orlando, Florida.

5.      I have been the spiritual leader of Soul Quest Church since its founding in 2015.

6.      I am a natural person who is domiciled in Orlando, Florida.

7.      I am the person primarily responsible for receiving and preparing Soul Quest Church's sacramental tea.

8.      This sacramental tea is an indispensable component of Soul Quest Church and my own personal, religious beliefs.  Drinking this tea is a sincere religious practice.

9.      I first came to Soul Quest Church and the Church of Ayahuasca by and through my studies of conventional medicine. I began my career in 1996 by obtaining a certificate in phlebotomy and medical assistance.

10.     In 1997, I obtained a certificate in emergency medicine, and would begin working as a technician in emergency rooms.

11.     I worked in the field of emergency medicine for four (4) years.  However, over time, I began to see how people were being harmed – both physiologically and spiritually – by prescription drugs and its potential abuse.

12.     These experiences and observations brought me to commence a study of alternative medicine and spirituality.

13.     I studied alternative medicine and spirituality in the United States for five (5) years.  Thereafter, in 2012, I continued my studies in Germany.

14.     I first heard the call of the Spirit of Ayahuasca during my time in Spain, Where I was invited to the first Ayahuasca conference where I attended many ayahuasca retreats.

15.     Following study and understanding of the Ayahuasca Manifesto, I recognized the physical and spiritual healing possibilities to be realized through the Spirit of Ayahuasca. At that point, I felt a spiritual calling to return to the United States with these teachings and healings.  I felt the calling to spread the word of the Spirit of Ayahuasca to other potential adherents.

16.     In furtherance of this spiritual calling, I formed Soul Quest Church in approximately October 2014, and began offering services in March 2015.

17.     Soul Quest Church is a recognized non-profit, religious entity that exists to spread the faith of the Spirit of Ayahuasca and the revealed teachings of the Ayahuasca Manifesto to the world.

18.     A key aspect of the Soul Quest Church's faith and religious practice is our consumption of our sacramental tea. We believe that consumption of this tea brings us closer to the Divine.

19.     As explained by my attorneys in the Verified Complaint, to which this Affidavit is attached, the Defendants have denied Soul Quest Church and me the ability to import, receive and prepare our sacramental tea.

20.     The denial of access to our sacramental tea has had, and continues to have, a chilling effect upon our sincere, genuine religious practice.

21.     On approximately August 1, 2016, I received a letter from the Defendants, inviting me to file for a religious exemption application to the Controlled Substances Act.

22.     In an effort to ensure that we could continue to practice our religion, I retained counsel and sought to file a religious exemption application with the Defendants.

23.     In August 2017, this religious exemption application was filed in accordance with what little information was available from the Defendants.  Effectively, there was little guidance provided on how to file such an exemption application; likewise, despite a diligent search through legal counsel, there did not appear to be any standards promulgated by the Defendants regarding its review and consideration of the exemption application.

24.     From that day through the present, I have heard nothing about the status of Soul Quest Church's religious exemption application.  The Defendants have neither ruled upon the religious exemption application – or even bothered to advise my legal counsel about its status.

25.     After months without any response or other communication from the Defendants, I requested my attorney call the Defendants for a status update and to see if we needed to do anything else.

26.     Despite numerous telephone calls by my attorney, and the considerable passage of time, the Defendants have failed to process Soul Quest Church's exemption application.

27.     In fact, the Defendants never even confirmed the receipt of Soul Quest Church's religious exemption application.  It was only through an independent Freedom of Information Act request that I became aware that the Defendants had received Soul Quest Church's religious exemption application.

28.     Likewise, due to the failure of the Defendants to issue specific policies and procedures regarding the methodology behind its consideration of religious exemption

applications, I fear that the Defendants will never issue a determination or – in the event one is eventually issued at some point in the indeterminate future – will arbitrarily deny the application based upon its lack of specific standards, allowing its decisionmakers wide (or, even, unlimited) discretion.

29.   Without a religious exemption, Soul Quest Church and its members cannot practice our sincere religious beliefs without fear of arrest and prosecution.

30.   Each day that passes without an exemption, we are denied access to our religious community and the truths of our religious experience.

31.   The Defendants' arbitrary and capricious actions, taken with unfettered discretion, have denied me my rights to due process under the Fifth Amendment of the United States Constitution.

32.   The Defendants' ongoing refusal to process, or even comment upon, Soul Quest Church's religious exemption application also denies Soul Quest Church its right to freedom of speech, as Soul Quest Church has had to stop proselytization efforts in order to avoid prosecution and arrest.

FURTHER AFFIANT SAYETH NAUGHT

As provided in 28 U.S.C. § 1746, I declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on this _15_ day of April, 2020.

CHRISTOPHER YOUNG

JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Soul Quest Church of Mother Earth, Inc.
Young, Christopher

### DEFENDANTS
Barr, William, U.S. Attorney of the U.S.A.
Dhillon, Uttam, acting Adm'r of the U.S. Drug Enforcement Admin.
U.S. Drug Enforcement Admin.

**(b)** County of Residence of First Listed Plaintiff   Orange County, Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
**(See Attachment)**

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**                **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane      ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product        Product Liability |  | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability      ☐ 367 Health Care/ |  |  | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &        Pharmaceutical |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander         Personal Injury |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'       Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability      ☐ 368 Asbestos Personal |  | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine         Injury Product |  | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product         Liability |  | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability      **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal         Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury      ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ |
|  | ☐ 362 Personal Injury -        Product Liability | ☐ 751 Family and Medical |  | Exchange |
|  | Medical Malpractice | Leave Act |  | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting      ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate |  | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/         Sentence |  | 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations    ☐ 530 General |  |  | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** |  | Act/Review or Appeal of |
|  | Employment     **Other:** | ☐ 462 Naturalization Application |  | Agency Decision |
|  | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration |  | ☐ 950 Constitutionality of |
|  | Other      ☐ 550 Civil Rights | Actions |  | State Statutes |
|  | ☐ 448 Education     ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - |  |  |  |
|  | Conditions of |  |  |  |
|  | Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 2000bb  Religious Freedom Restoration Act
Brief description of cause:
Prelim. Injunction/Dec. Jud./Permanent Inj. against U.S. Gov't for constitutionally protected free exercise of religion

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #             AMOUNT                 APPLYING IFP                 JUDGE                 MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
   United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
   Original Proceedings.  (1) Cases which originate in the United States district courts.
   Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
   Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
   Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
   Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

## ATTACHMENT TO CIVIL COVER SHEET

Attorneys for Plaintiffs:

Derek B. Brett, Esq.
BURNSIDE LAW GROUP
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:  (902) 468-3066
Lead Counsel for Plaintiffs

A. Brian Phillips, Esq.
A. BRIAN PHILLIPS, ESQ.
912 Highland Avenue
Orlando, Florida 32803
Telephone:  (407) 872-0777
Local Counsel for Plaintiffs

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida ▾

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC.,<br>CHRISTOPHER YOUNG,<br><br>*Plaintiff(s)*<br><br>v.<br><br>WILLIAM BARR, Attorney General of United States;<br>UTTAM DHILLON, acting administrator of the U.S.<br>Drug Enforcement Administration; and the U.S. Drug<br>Enforcement Administration<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 6:20-cv-

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  U. S. Drug Enforcement Administration

U. S. Attorney's Office
400 West Washington Street
Suite 3100
Orlando, Florida 32801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   A. Brian Phillips, Esq.
A. Brian Phillips, P.A.
912 Highland Avenue
Orlando, Florida 32803

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 6:20-cv-

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida ▼

|  |  |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., CHRISTOPHER YOUNG, | ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 6:20-cv- |
| WILLIAM BARR, Attorney General of United States; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. Drug Enforcement Administration | ) ) ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  William Barr
Attorney General of the United States of America

U.S. Attorney's Office
400 W. Washington Street
Suite 3100
Orlando, Florida 32801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   A. Brian Phillips, Esq.
A. Brian Phillips, P.A.
912 Highland Avenue
Orlando, Florida 32803

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 6:20-cv-

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                    *Server's signature*

                                            _____
                                                    *Printed name and title*

                                            _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida  ▼

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., CHRISTOPHER YOUNG, | )<br>)<br>)<br>)<br>) |
| *Plaintiff(s)* | ) |
| v. | ) |
| WILLIAM BARR, Attorney General of United States; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. Drug Enforcement Administration | )<br>)<br>)<br>)<br>) |
| *Defendant(s)* | ) |

Civil Action No. 20-cv-

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Uttam Dhillon, Acting Administrator of the U.S. Drug Enforcement Administration

U.S. Attorney's Office
400 W. Washington Street
Suite 3100
Orlando, Florida 32801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   A. Brian Phillips, Esq.
A. Brian Phillips, P.A.
912 Highland Avenue
Orlando, Florida 32803

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                                             *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 20-cv-

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# Dkt. 2
# Plaintiffs' Motion
# for Preliminary Injunction

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members; and CHRISTOPHER YOUNG, individually and as spiritual leader of Soul Quest Church of Mother Earth, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 6:20-cv- |
| WILLIAM BARR, Attorney General of the United States of America; UTTAM DHILLON, acting administrator of the U.S. Drug Enforcement Administration; and the U.S. DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' PETITION FOR**
**PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

COME NOW, the Plaintiffs, Soul Quest Church of Mother Earth, Inc., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members, and Christopher Young, individually and as the spiritual leader of Soul Quest Church of Mother Earth (hereinafter, collectively, "Plaintiffs"), by and through the undersigned counsel, respectfully move, pursuant to Fed. R. Civ. P. 65 and M. D. Fla. Local Rules 4.05 and 4.06, for this Court to enjoin the Defendants from prosecuting and arresting the Plaintiffs, and the members of Plaintiff Soul Quest Church. As required by M. D. Fla. Local Rule 4.05, this

Petition is supported by a Verified Complaint, filed contemporaneously with this Motion, and by the Declaration of Plaintiff Christopher Young, attached hereto as <u>Exhibit 1</u>.  In support thereof, Plaintiffs state as follows:

## I.    **INTRODUCTION**

1.    Determined to exercise its authority without regard for judicial mandates or the Plaintiffs' valid, expressed religious needs, the Defendants have unlawfully impeded and, indeed, entirely barred Plaintiffs from practicing their religious faith.  The Defendants' conduct at issue here, as fully set forth in the Plaintiffs' Verified Complaint, show the lengths to which the Defendants have gone to persecute Plaintiffs' minority religion, and deny Plaintiffs their Constitutional right to practice their faith.

2.    The Defendants have violated, and continue to violate, the Plaintiffs' rights under the First Amendment to the United States Constitution to practice their religion and to free speech, and the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment. The continuing threat of arrest and prosecution against the Plaintiffs, and the members of Plaintiff Soul Quest Church, Inc. (hereinafter, "Soul Quest Church"), and the continuing failure to process the Plaintiffs' request for a religious exemption, have placed the Plaintiffs into a position where they are unable to freely practice their sacred religious practices; likewise, there remains an ongoing, imminent threat of harm stemming from the prospect of arrest and prosecution.

3.    As set forth below, the Plaintiffs establish all four elements for entry of a preliminary injunction. "Because Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy." <u>The Complete Angler,</u>

LLC v. the City of Clearwater, 607 F. Supp. 2d. 1326, 1335 (M. D. Fla. 2009) (citing to KH

Outdoor, LLC v. City of Trussville, 458 So. 2d 1261, 1271-71 (11th Cir. 2006)).

4.      First, the Plaintiffs are likely to succeed on the merits, as the Defendants'

conduct is unconstitutional both on its face and as-applied, as they have impermissibly

punished, and continue to seek to punish, the Plaintiffs for practicing their religion, in addition

to actively denying the Plaintiffs the right to seek redress of their grievances, and by insisting

that the Plaintiffs so petition through a byzantine and unclear system. Second, each day that

the Plaintiffs are prohibited from practicing their religion through these threats and denied

rights to fairly petition for redress of same, constitutes an irreparable injury that cannot be

redressed except through injunctive relief. Third, the Defendants' conduct does nothing to

protect the public interest. Finally, no bond should be required, as none is appropriate where

the Plaintiffs, as here, allege the infringement of a fundamental Constitutional right.

## FACTS

5.      Plaintiff Soul Quest Church is a registered domestic non-profit corporation

incorporated under the laws of the State of Florida, with a principal office located in Orlando,

Florida.

6.      A copy of Plaintiff Soul Quest Church's faith-based principles is attached

hereto, and incorporated by reference herein as Exhibit 2.

7.      A copy of Plaintiff Soul Quest Church's fundamental moral and ethical tenets

is attached hereto, and incorporated by reference herein as Exhibit 3.

8.      A copy of Soul Quest Church's scriptural and liturgical foundations, and Soul

Quest Church's mission statement, is attached hereto, and incorporated by reference herein

as Exhibit 4.

9.      A copy of Soul Quest Church's religious holiday calendar is attached hereto, and incorporated by reference herein as Exhibit 5.

10.      A copy of Soul Quest Church's dietary and fasting rituals is attached hereto, and incorporated by reference herein as Exhibit 6.

11.      A copy of Soul Quest Church's documents setting out its governance is attached hereto, and incorporated by reference herein as Exhibit 7.

12.      A copy of Soul Quest Church's documents setting out the roles and responsibilities of its members is attached hereto, and incorporated by reference herein as Exhibit 8.

13.      A copy of Soul Quest Church's federal and state incorporation documents, demonstrating its purpose as a religious non-profit institution, is attached hereto, and incorporated by reference herein as Exhibit 9.

14.      Sacramental use of ayahuasca plays a central role in Soul Quest Church's theology and religious practice, and the Spirit of Ayahuasca is the head of Soul Quest Church. See Exhibits 2-9.

15.      Ayahuasca is a sacramental beverage prepared from the Banisteriopsis caapi vine, and the Psychotropia viridis vine.

16.      Psychotropia viridis contains trace amounts of the substance N,N-5,5-dimethyltryptamine ("DMT").

17.      DMT is listed as a Schedule I controlled substance in the Controlled Substances Act ("CSA"). 21 U.S.C. § 812(c)(c)(6).

18.      Therefore, the Plaintiffs are not able to import substances containing DMT, including the Plaintiffs' sacramental ayahuasca.

19.     In light of ayahuasca's importance to the Plaintiffs' sincere religious beliefs, and the Controlled Substances Act's prohibition upon DMT, the Plaintiffs filed a religious exemption application with the Defendants on or about August 21, 2017.  A copy of the Plaintiffs' application for a religious exemption is attached hereto, and incorporated by reference herein as Exhibit 10.

20.     In drafting this application, the Plaintiffs made use of a "guide" to the filing of religious exemptions, proffered to the public by the Defendants as a purported aid to follow during the process. A copy of this "guide" is attached hereto, and incorporated by reference herein as Exhibit 11.

21.     While Plaintiffs' application for a religious exemption is pending, the Plaintiffs are prohibited by the Defendants from importing their sacramental ayahuasca. See Exhibit 11 at § 7.

22.     From the day the Plaintiffs filed their application to the present, the Plaintiffs have routinely made inquiries to the Defendants as to the status of their application.

23.     Despite the Plaintiffs' diligent efforts in preparing and submitting an application, the Plaintiffs have never received any sort of notification that their application has ever been "accepted for filing." See Exhibit 11 at § 4.

24.     The passage of time does not appear to have led to progress upon the Plaintiffs' religious exemption application, as routine efforts by the Plaintiffs to inquire about the status of their religious exemption application have never received a firm response as to its status.

25.     After years spent pursuing an exemption application, apparently in vain, while their rights are being denied them, futilely waiting for the Defendants to take action, the Plaintiffs have turned to this Court, seeking relief.

## PLAINTIFFS MEET ALL REQUIREMENTS FOR A PRELIMINARY INJUNCTION

### A.     Plaintiffs are Likely to Succeed on the Merits.

As discussed, supra, ayahuasca plays a central role within the Plaintiffs' religion. See Exhibits 2-9. The Plaintiffs believe that, through careful and measured consumption of ayahuasca within a religious ritual, they become closer to the divine. Id. Therefore, the Defendants' conduct prohibiting the Plaintiffs from practicing their religion without interference violates the Plaintiffs' rights under both the First Amendment of the United States Constitution, and the Religious Freedom Restoration Act.

In addition, the Defendants' conduct also infringes upon the Plaintiffs' rights to procedural and substantive due process, due to unrestrained arbitrariness within the Defendants' "guide" to those filing religious exemption applications, and the Defendants' failure to provide Plaintiffs notice and a chance to be heard before effectively denying their religious exemption application through inaction.

Finally, the Defendants' conduct infringes upon the Plaintiffs' rights to freedom of speech by creating an unlawful prior restraint, without a compelling interest. In addition, the actions taken by the Defendants to restrict the Plaintiffs' rights are far from the least restrictive means.

1.   <u>The Defendants' Conduct Violates Plaintiffs' Rights to Freedom of
     Religion, Under the First Amendment and the Religious Freedom
     Restoration Act.</u>

Jurisprudence surrounding the Free Exercise Clause of the First Amendment to the

United States Constitution was upended in 1990, when the Supreme Court decided the case

of <u>Employment Div., Dept. of Human Resources of Oregon v. Smith</u>, 494 U.S. 874 (1990).

This case "largely repudiated the method of analyzing free-exercise claims that had been used

in cases like <u>Sherbert v. Verner</u> and <u>Wisconsin v. Yoder</u>." <u>Burwell v. Hobby Lobby Stores,

Inc.</u>, 573 U.S. 682, 691 (2014) (internal citations omitted). In response to <u>Employment Div.,

Dept. of Human Resources of Oregon v. Smith</u>, the United States Congress passed the

Religious Freedom Restoration Act (hereinafter, "RFRA") three years later. 42 U.S.C.

§ 2000bb(a)(4).

RFRA operates to explicitly restore the "compelling-interest test as set forth in

<u>Sherbert v. Verner</u>, and <u>Wisconsin v. Yoder</u>." 42 U.S. Code § 2000bb(b)(1). To succeed upon

a free-exercise claim under this test, the Plaintiff[s] must show the existence of three separate

elements:

(1)   That the Plaintiff[s]' religious practice has been substantially burdened
      by a governmental act;

(2)   Once the Plaintiff[s] have demonstrated that their religious practice has
      been substantially burdened by governmental acts, the Defendants
      must demonstrate that its actions serve a compelling governmental
      interest; and

(3)   The Defendants must also show that the governmental acts performed
      in furtherance of this compelling interest are the least restrictive means
      available to further that governmental interest.

<u>Hobby Lobby Stores</u>, 584 U.S. at 692.

As will be demonstrated, the Defendants undoubtedly <u>have</u> substantially burdened the Plaintiffs' religious practice by refusing to grant the Plaintiffs a religious exemption to the Controlled Substances Act. In addition, the government will be unable to demonstrate that its actions serve a compelling governmental interest. Finally, the government will be unable to show that the means it has chosen to employ against the Plaintiffs are the least restrictive means.

As discussed, <u>supra</u>, ayahuasca plays a major role in the Plaintiffs' religious beliefs and traditions. <u>See Exhibits 1, 2, & 10</u>. Not only do Plaintiffs believe that consumption of sacramental ayahuasca elevates them closer to the divine, a significant portion of the Plaintiffs' liturgy stems from the revelations that the Plaintiffs have received from the spirit of ayahuasca. <u>Id.</u> The Plaintiffs sincerely believe that they are divinely commanded to consume ayahuasca to become closer to the divine, and to spread the truths of the Spirit of Ayahuasca to the world. <u>Id.</u> The Defendants' actions therefore substantially burden the Plaintiffs' religious practices in at least two ways: (1) the Plaintiffs are denied the ability to speak the truth of a significant aspect of their religious beliefs to others; and, (2) the Plaintiffs are prevented from consuming their religious sacraments. <u>Id.</u> Therefore, the Defendants' actions undoubtedly place a substantial burden upon the Plaintiffs' religious practices.

In a case very similar to the present case, the Defendants claimed that their application of the Controlled Substances Act furthered three compelling governmental interests: "protecting the health and safety of UDV members, preventing the diversion of [ayahuasca] from the church to recreational users, and complying with the 1971 United Nations Convention on Psychotropic Substances, a treaty signed by the United States and implemented by the Act." <u>Gonzales v. O Centro Espírita Beneficente União do Vegetal</u>, 546 US 418, 426

(2006). However, the Supreme Court rejected such a categorical recitation of compelling interests, instead requiring the Defendants to "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' —the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 430-431. As will be demonstrated, the Defendants cannot make such a showing.

In O Centro Espirita, the Supreme Court observed that the mere fact that Congress had "determined [the psychotropic component of ayahuasca] should be listed [as a Schedule I controlled substance]" of the Controlled Substances Act was an insufficient showing to relieve the Defendants of their burden under RFRA. O Centro Espirita, 546 U.S. at 432. Similar logic should control in the instant case, and operate to deny any and all efforts by the Defendants to justify their actions under the Controlled Substances Act, because the Plaintiffs' religious use of sacramental ayahuasca is not only carefully controlled and managed by the Plaintiffs, but also because religious exemptions to Schedule I drugs are expressly contemplated by RFRA. Id. at 433 (discussing the long-standing religious exemption for the religious use of peyote, another drug regulated by the Controlled Substances Act).

In the past, the Defendants have also raised the compelling governmental interest of preventing diversion of ayahuasca from religious use. Id. at 426. In the present case, the Plaintiffs have made a verified showing of their policies and procedures designed to both ensure that none of the Plaintiffs' religious sacraments are diverted to any other use, and that medical health facilities are readily available in case of emergency. See Exhibit 10. Even if the Defendants should be able to muster evidence to the contrary, the Supreme Court has held that equality in evidence is not sufficient for the Defendants to have demonstrated a compelling governmental interest. O Centro Espirita, 546 U.S. at 426-427. To date, the

Defendants have provided the Plaintiffs with no evidence whatsoever that would make diversion a compelling government interest in the present case.

The Supreme Court has also observed that the claim of a compelling governmental interest, and reliance, upon the 1971 United Nations Convention on Psychotropic Substances (hereinafter, the "Convention"), even if ayahuasca is included therein, is a tenuous claim at best because the Controlled Substances Act implements the Convention in American law. Id. at 438. Therefore, to properly advance a compelling government interest arising from the need to enforce American obligations under the Convention, the Defendants would need to introduce "evidence addressing the international consequences of granting a[] [religious] exemption for the Plaintiff[s]." Id. To date, the Defendants have provided the Plaintiffs with no evidence whatsoever that would make international consequences a compelling government interest in the present case.

Nor can it be said that the Plaintiffs' sacramental tea poses any significant health risks. The Plaintiffs' sacramental ayahuasca is chemically akin to the Daime tea consumed by members of the Santo Daime faith, in that both are prepared from the Banisteros caapi vine and the leaves of the Psychotropia viridis plant using the same methodology. Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d. 1210, 1215 (D. Oregon 2009) (hereinafter, "CHLQ"). This method of preparation has been observed to make the DMT in Daime tea, and the Plaintiffs' sacramental ayahuasca, "far less potent" than synthetic injection or inhalation of DMT in its pure form. Id. at 1215. At this level of potency, consumption of Daime tea and similar beverages has actually been observed to have the following positive effects:

1)   Assistance in overcoming alcohol dependency and abuse; and,

2)  Loss of interest in 'habitual use of alcohol, cocaine, and other addictive substances'; and,

3)  Amelioration of anxiety and panic symptoms.

Id. at 1215-1218; see also United States v. Hoffman, 4:19-cr-00693, at pp. 6-14 (D. Ariz., 2020) (holding that the provision of aid could be a religious activity entitled to RFRA protection).

In addition, there was no evidence adduced to suggest that the consumption of Daime tea, or the chemically similar sacramental ayahuasca that the Plaintiffs employ, could contribute to any form of a psychotic episode. CHLQ, 615 F. Supp. 2d, at 1216. Therefore, the Defendants cannot reasonably claim that the consumption of the Plaintiffs' sacramental ayahuasca is likely to cause any form of adverse health effects.

Even if the Defendants could demonstrate that they had a compelling government interest, the Defendants must also justify the means they have chosen to further that compelling interest as being the least restrictive means available. See, e.g., Hobby Lobby Stores, 573 U.S. at 720; Sherbert v. Verner, 374 U.S. 398, 406 (1963). The Defendants are unlikely to be able to do this, because the Plaintiffs – entirely on their own initiative, and out of respect for their belief in the sacred nature of ayahuasca and the health of the members of their church – have already implemented considerable policies and procedures to both prevent against diversion, and to ensure the health of its members. Exhibit 10, at pp. 14-17.

Therefore, the Plaintiffs have a strong likelihood of success at trial on the merits of their claims arising under the First Amendment to the United States Constitution and the Religious Freedom Restoration Act, and thereby meet this element of the test for issuance of a preliminary injunction with regards to these claims.

2.      The Defendants' Conduct Violates the Plaintiffs' Rights to
        Procedural Due Process.

The Fifth Amendment to the United States Constitution clearly states that no individual's liberty or property is to be taken from them without "due process of law." U.S. Const. Amend. V. Procedural due process, an aspect of the overall right to due process of law, "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth. . . Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). In determining whether or not a plaintiff's right to procedural due process has been violated, courts answer the following three questions:

(1)     Have the Plaintiffs suffered an identifiable loss of liberty or deprivation of property?

(2)     If so, is the liberty lost or property taken within the contemplation of the Due Process Clause?

(3)     Once it has been determined that due process applies, what procedure is due?

Morrissey v. Brewer, 408 U.S. 471, 481 (1973).

Here, the Plaintiffs have undeniably suffered a recognizable loss of liberty. As discussed, supra, the Defendants' unexplainable delay in processing the Plaintiffs' application for a religious exemption, or communicating with them upon its merits, operates as a functional denial – thereby leaving the Controlled Substances Act's prohibition of ayahuasca in effect, and the Plaintiffs unable to fully practice their sincere religious beliefs. See Exhibit 10, at § 7.

Through this arbitrary and unexplainable silence upon even the status, much less the essentials, of the Plaintiffs' religious exemption application – a silence that has now lasted over

two and a half years – the Defendants have completely denied the Plaintiffs their right to notice and to be heard before a final decision is made. <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80 (1972) (citing to <u>Baldwin v. Hale</u>, 1 Wall. 223, 233 (1863); <u>Windsor v. McVeigh</u>, 93 U.S. 274 (1876); <u>Hovey v. Elliott</u>, 167 U.S. 409 (1897); and <u>Grannis v. Ordean</u>, 234 U. S. 385 (1914)). Consequently, the Plaintiffs have suffered, and continue to suffer, an identifiable loss of liberty. The Defendants have denied the Plaintiffs their right to notice and be heard.

Unquestionably, the right to notice and to be heard is within the contemplation of the Due Process Clause. The United States Supreme Court held that the right to notice and to be heard is a "fundamental requirement of due process." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965). Additionally, the lack of proper notice and/or an opportunity to be heard has, standing alone, been deemed a sufficient reason to merit full reversal upon due process grounds. <u>Armstrong</u>, 380 U.S. at 552. Therefore, the Constitutional right to notice and be heard in a reasonable time and manner is within the contemplation of the Due Process Clause.

In determining what procedures are due, the Plaintiffs respectfully request this Court observe that the Defendants' own proffered "guide" does <u>attempt</u> to set out several procedures, of which notice and the right to be heard are a part. <u>See</u> Exhibit 11. However, as discussed, <u>infra</u>, the Defendants' "guide" does not contain any requirement whatsoever that these notices and opportunities to be heard be granted at <u>any</u> time, much less a reasonable or meaningful one. <u>See</u> Exhibit 11 at §§ 4 (Petitioners <u>should</u> receive notice of any acceptance or incompleteness in their religious exemption applications, but no timeframe for this is provided), 8 (Petitioners <u>should</u> receive notice of the final determination of their application, <u>including a statement of the reasons</u> relied upon by the Defendants in making their final decision, but no timeframe for this is provided). Therefore, the Plaintiffs therefore request

this Court issue a judgment declaring that the Defendants must grant applicants for religious exemptions their Constitutional rights to notice and an opportunity to be heard within a reasonable time and in a meaningful manner.

Therefore, the Plaintiffs are likely to succeed at trial upon their procedural due process claim, due to the Defendants' actions denying the Plaintiffs their Constitutional right to notice and to be heard without due process of law.

> 3.    The Defendants' Conduct Violates the Plaintiffs' Rights to Substantive Due Process.

The Due Process Clause of the Fifth Amendment reads as follows: "No State shall . . . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The right to "worship God according to the dictates of [an individual's] own conscience" has long been held to be one of these fundamental liberties protected by the Due Process Clause. Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923).

Yet, this is precisely what the Plaintiffs seek to do in the instant case, and are being barred from doing by the Defendants' constitutionally unjustifiable actions that directly hamper the Plaintiffs' sincere religious beliefs. See, e.g., Wisconsin v. Yoder, 406 U.S. 205, 235-236 (1972). In order to ensure that Americans receive due process of law, courts have recognized that the guarantee of due process extends beyond the procedural aspect of law, to encompass the underlying, substantive elements of these procedures. County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998).

The constitutional right to substantive due process of law requires that government acts which deprive an individual of life, liberty, or property be done in a fair and just manner, and be governed by appropriate standards, to remove arbitrariness and unfettered discretion

by government officials. See, e.g., Santosky v. Kramer, 455 U.S. 745, 762 (1982) (deeming unconstitutional those procedures which were "unusually open to the subjective values of the" factfinder. Meyer, 262 U.S. at 403  (deeming unconstitutional laws which were "arbitrary and without reasonable relation to any end"); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (observing that the "touchstone of due process is protection of the individual against the arbitrary actions of government"). In the present case, there can be no doubt that the Plaintiffs have a right to practice their religion as they see fit, and that the Defendants are acting to deny Plaintiffs this right via the arbitrary and unreasonable guidelines by which the Defendants evaluate religious exemption applications, like the one filed by the Plaintiffs in the instant case. Exhibit 11.

As the Defendants' "guide" to the public seeks to tell the tale, the process of filing a religious application is a straightforward one.  Individuals must:

1) Develop a petition containing an argument discussing why the Plaintiffs are entitled to this religious exemption;

2) Sign this petition under penalty of perjury;

3) Have their petition be accepted for filing by the DEA;

4) Supply any and all additional information the DEA requests; and

5) Refrain from "engag[ing] in any activity prohibited under the Controlled Substances Act" until receiving the DEA's final determination.

See Exhibit 11.

However, upon closer review, the subjectivity and arbitrariness of the Defendants' religious exemption "guide" becomes apparent.

The subjective and arbitrary nature of the Defendants' religious exemption application process is made apparent very early on, when an applicant has submitted their application and

is waiting to hear if it has been accepted for filing. In their "guidance," the Defendants have stated that only a "complete" application will be accepted for filing, while an incomplete application will be rejected. Exhibit 11, at § 4. However, the Defendants never state what an applicant must provide for an application to be complete, instead merely stating what an applicant "may" provide - and then moot even that very low bar, by stating that a petitioner is "not limited to the topics" the Defendants' "guide" suggests. Exhibit 10, at § 2. Even at this most basic level, of simply determining whether or not an application is "complete" enough to be accepted for filing - much less any form of actual review - the Defendants' version of this process is "unusually open to the subjective values" of whomever is examining such an application for completeness due to the lack of standards defining a "completed" application, and is therefore a violation of the Plaintiffs' right to substantive due process under the United States Constitution. Santosky, 455 U.S. at 762 (1982).

Even upon a cursory review, the lack of standards governing how the Defendants purport to evaluate the voluminous information they request be part of a religious exemption application is apparent. Exhibit No. 11, at § 2. The Defendants suggest that applicants submit information upon a wide variety of complex topics, ranging from historical data to canonical law and its interpretations, even to physical security measures and import/export policies. Id. Consolidating such widely disparate subjects and technical subjects into one opinion, without established guidelines, undoubtedly crosses the line into prohibited arbitrariness by granting an unknown, unqualified decisionmaker unfettered authority to employ their own, subjective, judgment.[1]

_____

[1] The Defendants' "guide" permits an applicant to supply "any and all information [they] believe relevant to the DEA's determination." Exhibit 11, at § 2. Given this unlimited scope

Another significant omission from the Defendants' "guide" is the lack of mention of time constraints or estimations. See, e.g., Exhibit No. *11*, at § 4 (requiring Defendants to give notice, but not stating a timeframe for the issuance of this notice), Id. at § 8 (never stating when an applicant can expect a final determination). This carries particular weight in context of the Defendants' expressed desire that applicants not practice their religion until a final determination has arrived. Exhibit 11, at § 7. Without mention of a time constraint, even in the most general language,[2] the Defendants have granted themselves the ability to infringe upon an applicant's First Amendment rights for an indeterminate and arbitrary period of time, simply by remaining silent upon an application or claiming that it is "being processed" or "still under review." See Exhibit 11.

Effectively, what has resulted from the Defendants' lack of any substantive guidelines over the consideration of and standards for religious exemption applications have left such a process as hopelessly, constitutionally defective.   It is well-settled that the government cannot give public officials unbridled discretion to determine whether a would-be speaker has good cause to speak, or – in the case-at-bar, whether a particular religion can be impacted from the free exercise of its fundamental religious practices.  This is because "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in

---

of incoming information, an official's reversion to their own subjective judgment appears inevitable under the standards of the Defendants' "guide." It may also be observed that an infinite scope of response, as the Defendants' "guide" contemplates, would require an infinite amount of policies or procedures to properly account for these infinite possibilities.

[2] The Administrative Procedures Act obligates the Defendants to "conclude a matter presented to it," like a request for a religious exemption, in a "reasonable time." 5 U.S.C. § 555(b). This language is not present in the Defendants' guide, and - given the delay of years in the present case - the Defendants have clearly not processed the Plaintiffs' application in a reasonable timeframe.

censorship." <u>Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 757 (1988); <u>see</u> <u>also</u> <u>Saia v. New York</u>, 334 U.S. 558 (1948); <u>Niemotko v. Maryland</u>, 340 U.S. 268 (1951); <u>Kunz v. New York</u>, 340 U.S. 290 (1951); <u>Staub v. City of Baxley</u>, 355 U.S. 313 (1958); <u>Freedman v. Maryland</u>, 380 U.S. 51 (1965); <u>Cox v. Louisiana</u>, 379 U.S. 536 (1965); <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147 (1969); <u>Secretary of State of Maryland v. Joseph H. Munson Co.</u>, 467 U.S. 947 (1984); <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215 (1990); <u>Forsyth County. v. Nationalist Movement</u>, 505 U.S. 123 (1992).

The Supreme Court acknowledged over sixty (60) years ago that

> it is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

<u>Staub</u>, 355 U.S. at 322. Yet, here, in the case-at-bar, this is exactly what is occurring; the Defendants' religious exemption application process – directly in defiance of the Supreme Court's edicts in <u>O Centro Espirita</u> and even its own departmental directives – permits for unfettered discretion of its officials to deny or 'virtually' pocket veto any religious group's legitimate request for religious exemption.

The hallmark of this unconstitutional state of affairs is borne out by the Defendants' failure to define even the most basic elements of a religious exemption application, having established no standards for the evaluation of religious exemption applications like the Plaintiffs', and having a completely arbitrary amount of time to do so. Consequently, Plaintiffs submit that this constitutes a clear violation of their rights to Due Process under the Fifth Amendment.

4.    The Defendants' Conduct Clearly Violates the Plaintiffs' Rights to
Freedom of Speech by Facially Establishing an Impermissible Prior
Restraint Upon the Plaintiffs' Speech.

It is axiomatic, and long-standing, law that the "danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use." Southwestern Promotions, Ltd. v. Conrad, 420 US 546, 553 (1975). As discussed, supra, and in Plaintiffs' Verified Complaint, Plaintiff Soul Quest Church actively engages in street-level ministry and proselytization by and through, among other activities, the distribution of flyers discussing the key scriptural and liturgical foundations of the Plaintiffs' religion. A copy of this flyer is attached hereto, and made a part of this motion as Exhibit 12. City streets have long been recognized as public forums, and as such prior restraints upon speech occurring on the street are unlawful. Kunz, 340 U.S. at 293.

In Kunz, the appellant's permit allowing him to perform street-level ministry and proselytization was revoked, due to evidence that the appellant had spoken out against other faiths. Kunz, 340 U.S. at 292. Feeling compelled by faith to proselytize even despite a permit, the Kunz appellant would later be convicted for failure to possess a permit. Id. at 293. In reviewing the record, the Supreme Court observed that there were no applicable standards by which a reviewing official could deny permits "on the basis of his interpretation." Id. The Supreme Court described the New York ordinance before it as one which "gives an… official discretionary power to control in advance the right of citizens to speak on religious matters on the streets." Id. The Supreme Court held the granting of this arbitrary, discretionary, power to constitute an unlawful prior restraint on speech. Id.

Kunz and the present case share many factual similarities, and as such the same logic should control. Like the appellant in Kunz, the Plaintiffs are actively engaged in street-level

ministry and proselytization by and through the dissemination of information about the Plaintiffs' religious beliefs. Exhibits 4-12. Like the officials in Kunz, the Defendants have, under color of authority, effectively barred the Plaintiffs from speaking the truth of their religion, and their viewpoint on the sacred and beneficial aspects of ayahuasca, in a public forum, by subjecting the Plaintiffs to the continued threat of arrest via the provisions of the Controlled Substances Act.

Based upon these similarities, this Court - like the Supreme Court in Kunz - should hold that the Defendants' actions constitute a prior restraint upon the Plaintiffs' speech, and are therefore unconstitutional, for no government can "vest restraining control over the right to speak on religious subjects in an administrative official where there are no appropriate standards to guide his action." Kunz, 340 U.S. at 295.

**B.     The Balance of Equities Tips in the Plaintiffs' Favor, and a Preliminary Injunction is the Appropriate Remedy.**

Because the Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1271-1272 (11th Cir. 2006). There is not, and cannot be, an adequate remedy at law, for "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Id.; Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion).

A similar balancing of the equities in consideration of the Plaintiffs' claims arising under the Due Process Clause and the Freedom of Speech clause, in light of the most serious

possible injury for each party,[3] similarly favors the Plaintiffs. If the Court should grant Plaintiffs' request for a preliminary injunction, the most serious injury the Defendants can suffer is a judicial mandate to do something that the Defendants are already under judicial, and statutory, mandate to do - come to the bargaining table, and discuss the Plaintiffs' application for a religious exemption. O Centro Espirita, 546 U.S. at 434 (obligating the Defendants to consider and issue requests for religious exemptions). By contrast, the Plaintiffs' most serious injury is already ongoing – as discussed, supra, the Plaintiffs have suffered, and continue to suffer, ongoing irreparable injuries from the deprivation of their Constitutional and statutory rights.

Therefore, the Plaintiffs meet the second prong necessary for issuance of a preliminary injunction, as the balance of equities favors this Court's prevention of further infringement of the Plaintiffs' Constitutional and statutory rights.

### C.     A Preliminary Injunction is in the Public Interest.

The Eleventh Circuit has issued rulings supportive of the principle that an unconstitutional application of laws cannot be said to be in the public interest. See, e.g., The Complete Angler, LLC v. City of Clearwater, Fla., 607 F. Supp. 2d 1326, 1335 (M. D. Fla. 2009). The Defendants' actions, as discussed, supra, violate the Plaintiffs' rights under the First Amendment to the United States Constitution, as well as the Due Process Clause of the Fifth Amendment. See supra. Each of these amendments was enacted and applied to the Constitution in order to prevent precisely the conduct the Defendants are herein engaged in -

---

[3] The Supreme Court of the United States has permitted such a method of balancing the equities in considering whether to grant preliminary injunctions. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 378 (2008).

the unlawful infringement upon the rights of American citizens. See, e.g., Griswold v. Connecticut, 381 U.S. 479, 493 (1965) (stating that the reason for the enactment of the Bill of Rights was to protect against governmental intrusion into "fundamental personal liberties").

The Plaintiffs therefore meet the third, and final, prong of the test needed for preliminary injunction.

**D.   No Bond Should Be Required.**

Pursuant to Fed. R. Civ. P. 65(c), courts "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the mandatory nature of this language, 'federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security.'" The Complete Angler, 607 F. Supp. 2d at 1335 (quoting Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 463 (S.D. Fla. 1998).

"Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." 607 F. Supp. 2d at 1335-36 (citing All States Humane Game Fowl Org. v. City of Jacksonville, Fla., No. 3:08-CV-312-J-33MCR, 2008 WL 2949442, at *13 (M. D. Fla. July 29, 2008); Johnston v. Tampa Sports Authority, No. 8:05-CV-2191-T-27MAP, 2006 WL 2970431, at *1 (M. D. Fla. Oct. 16, 2006).

Accordingly, Plaintiffs respectfully request that this Court exercise its discretion to waive the bond requirement.

## **CONCLUSION**

For the reasons set forth above, a preliminary and permanent injunction should issue to enjoin the Defendants as follows:

(a)      from arresting, prosecuting, or threatening Plaintiffs and members of Plaintiff Soul Quest Church with arrest, prosecution, and/or imprisonment for importing, distributing and ingesting the sacramental tea solely at Plaintiff Soul Quest Church services;

(b)      ordering that within 30 days after the date of issuance of declaratory relief, the parties present the Court with a plan to effectuate the importation, distribution, and accounting for the sacramental tea consistent with the rights of the Soul Quest Church members to use the sacramental tea in ceremonies;

(c)      awarding the Plaintiffs' attorneys' fees, costs and expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and The Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988; and

**THIS SPACE LEFT INTENTIONALLY BLANK**

(d)      granting such other and further relief as the Court may deem just and proper.


**Respectfully submitted this** *22nd* **day of April 2020.**


By: *s/Derek B. Brett*

**DEREK B. BRETT, ESQ.**

Fla. Bar No. 0090750

**BURNSIDE LAW GROUP**

109 Ilsley Avenue, Suite 9

Halifax, Nova Scotia B3B 1S8

Telephone:      (902) 468-3066

Facsimile:      (902) 468-4803

Email: dbb@burnsidelaw.net

Lead Counsel for Plaintiffs



s/A. Brian Phillips

**A. BRIAN PHILLIPS, ESQ.**

Fla. Bar No. 0067113

**A. BRIAN PHILLIPS, P.A.**

912 Highland Avenue

Orlando, Florida 32803

Telephone:      (407) 872-0777

Telecopier:      (407) 872-0704

Email: brian.phillips@phillips-law-firm.com

Local Counsel for Plaintiffs

# Dkt. 23
# Joint Motion to Stay

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC. and CHRISTOPHER YOUNG, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )   No.  6:20-cv-701-WBB-DCI<br>) |
| ATTORNEY GENERAL, UNITED STATES OF AMERICA and ACTNG ADMINISTRATOR, U.S. DRUG ENFORCEMENT ADMINISTRATION, | )<br>)<br>)   **JOINT MOTION TO STAY ALL**<br>)   **PROCEEDINGS FOR 120 DAYS**<br>) |
| Defendants. | )<br>) |

<u>**JOINT MOTION TO STAY ALL PROCEEDINGS FOR 120 DAYS**</u>

The Parties hereby jointly move for a 120-stay of all proceedings in this case to allow time for Defendant the U.S. Drug Enforcement Administration ("DEA") to conduct the fact-finding that is necessary for it to adjudicate Plaintiffs' pending petition for a religious exemption from the Controlled Substances Act ("CSA"), which is at issue in this litigation.  A 120-day stay would also allow time for the parties to negotiate the details of the DEA's fact-finding process and to negotiate a timeline upon which the DEA would issue a final determination on Plaintiffs' Petition, potentially resolving this case without need for further litigation in this Court.  The parties submit that good cause exists for the requested stay for the following reasons:

1.     On May 4, 2020, Plaintiffs filed an Amended Complaint for Declaratory and Permanent Injunctive Relief, ECF No. 13 ("Complaint"), and an Amended Petition for Preliminary Injunction, ECF No. 15.

2.     Plaintiff Soul Quest Church of Mother Earth, Inc. ("Soul Quest") alleges that it is a Christian syncretic religion based in Orlando, Florida, whose members "seek to practice their religious rituals, which involve the sacramental consumption of trace amounts of a Schedule 1 chemical" called dimethyltryptamine, which is regulated by the CSA.  Compl. ¶¶ 1, 3, 60.  Plaintiff Christopher Young is a member of Soul Quest.  *Id.* ¶ 2.

3.     The Defendants are the Attorney General of the United States and the Acting Administrator of the DEA.  Compl. ¶¶ 11-12.  The DEA considers applications for religious-based exemptions from the CSA pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, on a case-by-case basis.  *See* Ex. 11 to Am. Pet. for Prelim. Inj. (May 4, 2020), ECF No. 15-12.

4.     At issue in this litigation is a petition Plaintiffs have filed with the DEA for a religious exemption from the CSA pursuant to RFRA ("Petition").  *See* Compl. ¶ 14.  The Complaint alleges that the current absence of a final determination on the Petition constitutes an "effective denial" of that Petition that violates RFRA and the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.  *See, e.g.*, Compl. ¶¶ 3, 73.

5.     On May 14, 2020, the Parties filed a Joint Motion to Extend Defendants' Time to Respond to Plaintiffs' Amended Motion for Preliminary Injunction.  ECF No. 18.  The Parties explained that good cause existed for the requested extension, in part, because it would allow them "time to explore whether resolution is possible."  ECF No. 18 ¶ 3.

6.     On May 14, 2020, the Court entered an Endorsed Order granting the Parties'

requested extension.  ECF No. 19.  Defendants' response to Plaintiffs' Amended Petition for

Preliminary Injunction is currently due by June 17, 2020.

7.     On May 29, 2020, DEA issued an initial letter responding to Plaintiffs' Petition.

The agency asserts it requires certain additional information in order to evaluate the Petition.

(*See* Ex. A.)

8.     Since the Court granted the parties' requested extension, the Parties have

continued to engage in good-faith negotiations regarding Plaintiffs' Petition and the course of

this litigation.

9.     The power to stay proceedings is "incidental to the power inherent in every

court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

Courts generally examine three factors when determining whether to grant a stay: "(1) whether

a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a

stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the

burden of litigation on the parties and on the court."  *Scoma Chiropractic, P.A. v. Dental

Equities, LLC*, 2:16-CV-41-FTM-99MRM, 2018 WL 2455301, at *2 (M.D. Fla. June 1, 2018);

*see, e.g.*, *Technocable Wiring Specialist, Inc. v. Genesis Networks Telecom Servs., LLC*, No.

8:16-CV-2590-T-35MAP, 2017 WL 7311851, at *1 (M.D. Fla. June 15, 2017) (granting a joint

motion to stay because it would "promote efficiency, conserve both judicial and the Parties'

resources, and potentially resolve the matter altogether").

10.     The Parties submit that the requested 120-stay could potentially simplify the issues in the case and reduce the burden of litigation on the parties and the Court, while not causing prejudice to either Party.  The requested stay would accomplish these goals by providing additional time for the Parties to further negotiate and for the DEA to conduct the necessary fact-finding process in an expeditious manner with the ultimate goal of issuing a final determination on Plaintiffs' Petition.

11.     If granted, the Parties resolve to take the following steps during the 120-day stay: (a) Plaintiffs will respond to DEA's May 29, 2020 request for additional information; (b) the Parties will continue to negotiate the process by which DEA will conduct the fact-finding necessary to evaluate Plaintiffs' Petition; (c) the Parties will continue to negotiate a timeline upon which DEA will agree to issue a final determination on Plaintiffs' Petition once DEA's fact-finding is completed; and (d) DEA will conduct and complete the fact-finding that is necessary for it to subsequently evaluate and issue a final determination on Plaintiffs' Petition.

12.     The Parties agree that if the stay is granted they will cooperate with each other in good faith and make all reasonable efforts within their control to ensure that the five steps described in Paragraph 11 are completed within the requested 120-day stay.  The Parties further propose that they submit a joint status report to this Court one week prior to the expiration of the stay to advise the Court of their progress, including whether DEA was able to complete its fact-finding with Plaintiffs' cooperation during the 120-day stay and whether additional time will be needed for DEA to issue a final determination on Plaintiffs' Petition in light of the facts collected.

13.     If the Parties' requested stay is denied, Defendants respectfully request in the alternative that the Court grant a 14-day extension of Defendants' deadline to respond to Plaintiffs' Amended Petition for Preliminary Injunction, ECF No. 15, from June 17, 2020 to July 1, 2020.  Counsel for Defendants conferred with counsel for Plaintiffs regarding this alternative request and counsel for Plaintiffs advised that Plaintiffs do not oppose Defendants' alternative request.

### Certificate of Compliance with Local Rule 3.01(g)

On June 12, 2020, the parties' undersigned counsel conferred in good faith regarding the relief requested by this joint motion.  During that conference, undersigned counsel for both parties agreed to join this joint motion for a 120-day of all proceedings on the terms described above.

For the foregoing reasons, the parties respectfully request that the Court enter a 120-day stay of all proceedings in this case.

Dated: June 15, 2020

*/s/ Derek B. Brett*
DEREK B. BRETT, ESQ.
Fla. Bar No. 0090750
BURNSIDE LAW GROUP
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:    (902) 468-3066
Facsimile:    (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs

*/s/ A. Brian Phillips*
A. BRIAN PHILLIPS, ESQ.
912 Highland Avenue

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director

*/s/ Kevin P. Hancock*
KEVIN P. HANCOCK
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel.:    (202) 514-3183

Orlando, Florida 32803                          Fax:    (202) 616-8470
Telephone:    (407) 872-0777                    Email: kevin.p.hancock@usdoj.gov
Telecopier:    (407) 872-0704
Email: brian.phillips@phillips-law-firm.com     *Counsel for Defendants*
Local Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2020, I electronically filed a copy of the foregoing

Joint Motion to Stay All Proceedings for 120 Days.  Notice of the filing will be sent by email

to all parties by operation of the Court's electronic filing system.  Parties may access this filing

through the Court's CM/ECF system.

/s/ *Kevin P. Hancock*
KEVIN P. HANCOCK

# EXHIBIT A

**U.S. Department of Justice**

Drug Enforcement Administration

8701 Morrissette Drive

Springfield, Virginia 22152

---

*www.dea.gov*

Derek B. Brett, Esq.
Burnside Law Group
Park Central, Unit 9
109 Ilsley Avenue
Dartmouth, NS
Canada B3B 1S8

Dear Mr. Brett:

   This letter concerns the petition for religious exemption which you presented to the United States Department of Justice, Drug Enforcement Administration (DEA), on behalf of your client, Soul Quest Ayahuasca Church of Mother Earth, Inc. (Soul Quest), d/b/a the Soul Quest Ayahuasca Retreat and Wellness Center ("Wellness Center"), as well as the First Amended Complaint (FAC) (ECF No. 13) and motion for preliminary injunction (Motion) (ECF No. 15) which you recently filed in *Soul Quest v. Barr*, Case No. 6:20-cv-00701 (M.D. Fla.). Thank you for these materials, which have contributed to our review of the petition. We look forward to opening a dialogue with you and your client to clarify the religious nature of Soul Quest's practices under the Religious Freedom Restoration Act (RFRA) and to explore accommodation of those practices within the comprehensive regulatory scheme established by the Controlled Substances Act (CSA), as amended.

   Through the CSA, Congress established a comprehensive scheme to regulate the importation, manufacture, and distribution of substances which have legitimate medical uses, but potential for diversion from authorized channels. Title 21, United States Code §§ 801 (U.S.C. §§ 801) *et seq*. Under the CSA, all individuals and entities which import, manufacture, and distribute controlled substances must be registered by DEA. DEA implements the CSA through comprehensive regulations governing registration, labeling and packaging, quotas, recordkeeping and reporting, security and storage, and periodic inspections, among other things. *See* Title 21, Code of Federal Regulations §§ 1300-1316 (CFR §§ 1300-1316). The regulations implementing the CSA impose consistent requirements upon all handlers of controlled substances which govern controlled substances, addressing import, export, manufacture, distribution, diversion, public safety, storage, administration, recordkeeping, and disposal. To minimize the risk of diversion, registrants must, for example, maintain records and make those records available for inspection and audit; they must also identify the locations at which controlled substances are stored and manufactured. DEA routinely inspects and assesses the security practices in effect at such locations.

   Under RFRA, Congress provided that the "Government shall not substantially burden a person's exercise of religion" unless the Government can demonstrate "that application of the burden to the person . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-l. These

competing mandates require the DEA to consider the "application of the [CSA] to the person—the particular claimant whose sincere exercise of religion is being substantially burdened" and engage in a "case-by-case consideration of religious exemptions to generally applicable rules" so that it may "strike sensible balances" of interests based on "the particular practice at issue." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31, 436, 439 (2006) (internal quotation marks omitted).

In compliance with *Gonzalez, supra*, DEA promulgated interim guidelines to facilitate the process by which parties can seek exemption from particular regulations implementing the CSA that would substantially burden their religious exercise. Under this process, DEA can grant appropriate registrant status to religious applicants, thus bringing the religious use of the controlled substance within the CSA's comprehensive regulatory scheme. DEA can also waive application to the religious organization of particular regulatory requirements, such as registration fees. Recognizing that DEA's regulatory requirements for security were developed for commercial environments, DEA will work with the religious registrant to revise security requirements to meet the specific situation of the non-profit applicant. DEA will also work with the applicant to tailor specific provisions of the regulatory scheme to minimize diversion and safety risks presented by the "particular practice at issue." *Gonzales*, 546 U.S. at 439. DEA therefore routinely requests detailed information on petitions for exemptions from the CSA, as outlined in the guidelines. After careful consideration of the materials already provided, DEA asks that Soul Quest answer the following questions and provide the information requested below.

<u>The Organization and Belief System of Soul Quest</u>

Soul Quest's organization and religious belief system appear to have evolved in some respects between 2017 and the present. We welcome this opportunity to obtain the most up-to-date information. The undated and unsigned "By Laws" attached to Soul Quest's Motion (ECF No. 15-3) provide, for example, that "[t]he name of this organization, shall be the Oklevueha Native American Church of Soul Quest (ONACSSQ)" and state: "we will educate others in our town in Georgia, the USA and in various locations anywhere in the world…." How does the ONACSSQ relate to Soul Quest? Does Soul Quest currently conduct any ceremonies with or provide ayahuasca and/or ayahuasca components to or receive ayahuasca and/or ayahuasca components from any individuals or organizations in Georgia, or any locations in the United States other than Orlando, Florida? If so, please identify the name and location of each such organization and explain the organizational relationship of each to Soul Quest.

The "Foundation Document" provided with the Motion (ECF No. 15-5) contains the following statement: "…we have para-church ministries and Indigenous Native American religion based auxiliaries," while the Doctrinal Statement (ECF No. 15-8) is described as applicable to "any Authorized Branch." Please provide the name and location of all "ministries," "auxiliaries," and "Authorized Branches" and explain their organizational relationship to Soul Quest.

In paragraph one of the FAC, Soul Quest is described as "a Christian syncretic religion based in Orlando, Florida." Other documents, however, contain no reference to Christianity, but profess belief in "Mother Earth," "Father Sky," and/or the "Great Spirit." (*See, e.g.*, ECF Nos. 15 ⁋⁋ 25, 15-3.) The flyer attached to the Motion, ECF No. 15-13, describes Soul Quest as believing in "the rights of Mother Earth and in protecting the practice of Mother Earth based South American

spiritual traditions, ceremonies, and sacred indigenous natural medicines." Please clarify Soul Quest's relationship, as applicable, with Christianity, Mother Earth, Father Sky, and/or the Great Spirit. In the petition, the "Ayahuasca Manifesto" is described as a sacred document. Is Exhibit 3 to the FAC, ECF Nos. 13-4 and 13-5, that sacred document? If not, can you provide a copy of the sacred document?

The Doctrinal Statement states that Soul Quest and its Authorized Branches "accept all natural substances and their derivatives" for ceremonial use. Has Soul Quest or the Wellness Center used any controlled substance other than ayahuasca in their ceremonies or wellness activities since January 2017? If so, identify each such controlled substance and identify the date(s), place(s), and context(s) in which it was administered and how it relates to Soul Quest's sincere religious beliefs.

On page 13, the petition stated that there is no charge to participate in the sacrament of ayahuasca. An attachment to the petition, entitled: "Information About Our Weekend Retreats," stated: "[w]e do not charge for the medicine, but for the work of accompaniment and supervision, for meals and accommodation, and for the translation of the facilitators from the country in which you are staying." The attachment listed the cost of the ayahuasca ceremony as $175 per session for a two night minimum, or a total cost of $350, as well as additional costs for various levels of accommodations and other optional ceremonies. How much are members and authorized participants charged for ayahuasca administration during weekend retreats? Does Soul Quest or the Wellness Center currently conduct ayahuasca ceremonies at any location other than the Wellness Center? If so, please provide the pricing schedule.

The flyer attached to the Motion, ECF No. 15-13, indicates that the Wellness Center offers a wide range of therapeutic services, including ayahuasca administration, "psycho-spiritual integration," naturopathy, yoga, breathwork, reiki/energy medicine, acupuncture, smoking cessation, and kambo, which we gather is a traditional South American cleansing ritual using the poison of a frog. Are these therapeutic services offered in connection with ayahuasca ceremonies, or are they available independently of those ceremonies? Please explain the relationship of these services to the religious beliefs and mission of Soul Quest. We also note that a letter attached to Soul Quest's petition indicates that the Orange County Board of Zoning limited sound devices or amplification of music at the Wellness Center and limited it to no more than four special outdoor events, "which shall not include religious or spiritual retreats." This implies that non-religious outdoor events may be held at the Wellness Center. Please explain.

In the FAC and several supporting documents, Soul Quest is described as d/b/a (doing business as) the Wellness Center. On page 9 of the Foundation Declaration (ECF No. 15-5), however, the Wellness Center is described as an "independent branch or Free Church" of Soul Quest. Please clarify the organizational and financial relationship between the two entities. Does Plaintiff Lewis draw any financial compensation from the Wellness Center? If so, please state the total compensation he received each year from 2017 through 2019.

<u>Soul Quest's Procurement, Storage, Distribution, and Disposal of Ayahuasca</u>

Does Soul Quest import ayahuasca in tea form, or does it import the plants used in making the tea? In either case, identify the source of the imported materials, the quantity imported each year since January 2017, the location(s) where the materials are stored, and all individuals who have had

Derek B. Brett                                                                                    Page 4

access to the stored materials. If the tea is prepared in the United States, please state where and by whom the tea is prepared, where and how it is stored, and state the relationship between the amount of plant material used and the number of doses of tea manufactured.

Does Soul Quest provide the tea to any other individuals or organizations outside Soul Quest's ceremonies at the Wellness Center in Orlando? If so, state when, where, and to whom the tea was distributed.

If Soul Quest has developed written policies or directives governing security, recordkeeping and storage protocols for controlled substances, please provide copies. If not, please provide a detailed description of Soul Quest's current practices. Additionally, please identify the individuals in charge of security, recordkeeping, storage, and the dispensing of the controlled substances and provide the full names of the individuals described as members of the "team" in the Wellness Center flyer (ECF No. 15-13). In order to have all of the information necessary for DEA to reach a determination on Soul Quest's petition and determine its eligibility for DEA registration to import, manufacture, and distribute a schedule I controlled substance, DEA Diversion Investigators must conduct interviews of these individuals and other leaders and managers, assess the security and recordkeeping measures in place, and recommend any upgrades needed to minimize the risk of diversion and protect safety. Site visits and inspections will follow.

If all tea that has been prepared is not used at an ayahuasca ceremony, or if a batch of tea is no longer usable, how will Soul Quest dispose of the unused or expired tea? As you will appreciate, the disposal of unused substances which contain controlled substances, such as prescription medicines, can present environmental and public safety concerns, as well as concerns of diversion into illicit markets. Has Soul Quest developed any protocols or standard practices for the proper disposal of unused or expired controlled substances, including but not limited to ayahuasca tea and plant residues? Does it maintain records documenting disposal or destruction?

The Code of Ethics attached to the Motion, ECF No. 13-6, describes the primary purpose of Soul Quest as "to administer Sacramental Ceremonies." It also states that both "members" and "Authorized Participants" can take part in the "Ayahuasca Ceremony." What is the difference between a "member" and an "Authorized Participant?" What criteria are used to "authorize" a non-member "participant" to ingest ayahuasca with Soul Quest?

In paragraph 50 of the FAC, Soul Quest alleges that it offers ayahuasca ceremonies three times per month and that 60 to 80 individuals participate in the ceremony with the support of 20 "facilitators," including a "licensed physician as medical director, a licensed paramedic, a licensed emergency medical technician, a psychologist, and a research scientist." Please identify the individuals who currently perform these functions and describe their qualifications, professional education and licensures, and confirm that Soul Quest will make these individuals available to speak with DEA Diversion Investigators at the parties' convenience.

Your petition on page 14 states that participants must complete and return a medical form, and attached thereto was a document titled: "Medical Form." Is that form still in use? If not, please provide a copy of the current medical form. Were any medical professionals consulted in the creation of this form? What scientific literature or studies, if any, provide the basis for the contents of the form? If a participant indicates that they do have a history of one or more of the listed

Derek B. Brett                                                                                   Page 5

ailments, is he or she permitted to participate?  How is private medical information protected?  Are women who are pregnant, nursing, or on birth control allowed to partake in the ayahuasca ceremony?  At what age can participants consent to participate in the ayahuasca ceremony?  How is age of the participants verified?  What protocols are put into place to ensure minors do not have access to controlled substances?

Part III "Safety & Security and Protocols for Ayahuasca Ceremonies", Section C.5 of the petition states: "Soul Quest has developed an emergency plan for various scenarios, and has educated its facilitation team to know and understand what steps to take in case of an emergency." Please provide a copy of the emergency plan and describe any training given to "facilitators" in how to respond if a medical emergency arises during or immediately after a ceremony.

Please provide a list of all emergencies or other critical situations which have arisen during or immediately after ayahuasca ceremonies since January 2017, including a brief description of the event, the Emergency Medical Service (EMS) and/or law enforcement agency contacted, and the outcome of the event.  Additionally, please describe and explain the actions Soul Quest took related to the April 1, 2018 medical emergency involving Brandon Begley.  Since that emergency, has Soul Quest modified its safety protocols and procedures?  If so, please explain how.  On page 17, the petition states that Soul Quest works with local EMS personnel and/or police if additional assistance is needed for any emergency or other critical situation.  Please provide copies of any documentation memorializing these arrangements and identify the local agencies with which Soul Quest works.

DEA looks forward to your responses to these questions, which will enable us to move forward with our case-specific analysis of Soul Quest's petition and consideration of how best to accommodate religious beliefs and practices within the CSA's comprehensive regulatory scheme.

Sincerely,


Thomas W. Prevoznik
Deputy Assistant Administrator
Diversion Control Division

CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2022, a true and correct copy of the foregoing Volume I of III of the Appellants' Appendix was filed using CM/ECF, which will automatically send a copy of this document to Assistant United States Attorney Lowell V. Sturgill.  Pursuant to Fed.R.App.P. 25(a)(2)(A)(ii) and 11th Cir. R. 30-1, the undersigned dispatched copies (2) copies of this appendix to a third-party commercial carrier for delivery to the Clerk of Court for the Eleventh Circuit, within three (3) days.

s/A. Brian Phillips
A. Brian Phillips
Counsel for Appellants