No. 22-11072

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————

SOUL QUEST CHURCH OF MOTHER EARTH, INC., AND
CHRISTOPHER YOUNG,

Plaintiffs-Appellants,

v.

MERRICK B. GARLAND, Attorney General of the United States of America, and
ANN MILGRAM, Administrator of the United States Drug Enforcement
Administration,

Defendants-Appellees.

———————————————

On Appeal from the United States District Court
for the Middle District of Florida

———————————————

## BRIEF FOR APPELLEES

Brian M. Boynton
 *Principal Deputy Assistant Attorney General*
Roger Handberg
 *United States Attorney*
Mark Stern
 (202) 514-5089
Lowell V. Sturgill Jr.
 (202) 514-3427
 *Attorneys, Civil Division*
 *Appellate Staff, Room 7241*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, N.W.*
 *Washington, D.C. 20530*

### *SOUL QUEST CHURCH OF MOTHER EARTH, INC. ET AL. V. ATTORNEY GENERAL OF THE UNITED STATES, ET AL.*, NO. 22-11072 (11TH CIR.)

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for respondents Attorney General of the United States and Administrator, U.S. Drug Enforcement Administration hereby certify that the following have an interest in the outcome of this appeal:

Soul Quest Church of Mother Earth, Inc. (plaintiff-appellant)

Young, Christopher (plaintiff-appellant)

U.S. Attorney General (defendant-appellee)

Administrator, U.S. Drug Enforcement Administration (defendant-appellee)

Brett, Derek Benjamin (counsel for plaintiff-appellant)

The Burnside Law Group (plaintiff's counsel's law firm)

Phillips, Andrew Brian (counsel for plaintiff-appellant)

A. Brian Phillips PA (plaintiff counsel's law firm)

Sturgill Jr., Lowell V. (counsel for defendants-appellees)

Stern, Mark B. (counsel for defendants-appellees)

Harris, Julie Strauss (counsel for defendants-appellees)

Hancock, Kevin P. (counsel for defendants-appellees)

Gaffney, Michael James (counsel for defendants-appellees)

United States Department of Justice

Submitted this 6th day of May, 2022.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.
202-514-3427
*Attorney, Civil Division*
*Appellate Staff, Room 7241*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20530*
*Counsel for Respondents*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe oral argument is unnecessary for the Court to understand the issues in this appeal and affirm the judgment below. Appellees stand ready to participate, however, if the Court decides to schedule oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement

Statement Regarding Oral Argument

Statement of Jurisdiction ....................................................................................1

Statement of the Issue ........................................................................................1

Statement of the Case .........................................................................................2

    A. Statutory and Regulatory Background .................................................2

    B. Religious-Exemption Request ...............................................................5

    C. District Court Proceedings ...................................................................6

    D. Petition for Review ...............................................................................8

Summary of Argument ........................................................................................8

Statement of the Standard of Review ................................................................9

Argument ...........................................................................................................10

    I.     The District Court Correctly Dismissed This Case for Lack of
             Jurisdiction Because 21 U.S.C. § 877 Vests Exclusive Jurisdiction
             Over Plaintiffs' Claims in the Courts of Appeals on a Timely
             Petition Review .........................................................................10

        A. 21 U.S.C. § 877 Provides the Exclusive Mechanism for
            Judicial Review of a Final DEA Decision Denying a Request
            for an Exemption from the CSA ..................................................10

        B. 21 U.S.C. § 877 Provides Exclusive Jurisdiction in the
            Appropriate Court of Appeals Concerning All the Claims in
            This Case .....................................................................................12

        C. Plaintiffs' Attempts to Demonstrate that Section 877 is
            Inapplicable Underscore the Error of their Analysis .................15

            1. Section 877 Applies to DEA Final Orders Denying
                Administrative Requests for Religious Exemptions ...........15

i

2.  Section 877 Would Preclude an APA Notice-and-Comment Claim Under the Facts and Circumstances Presented Here, Even If Plaintiffs Had Made Such a Claim Below ...................................................................................23

3.  Plaintiffs' Major Questions Doctrine Argument, Raised for the First Time on Appeal, Does Not Advance Their Position ...................................................................................24

Conclusion...................................................................................26

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases:**

*Access Now, Inc. v. Southwest Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004) .................................................................24

*Adorers of the Blood of Christ v. FERC*,
    897 F.3d 187 (3d Cir. 2018) .....................................................................18

*Baltimore Air Transport, Inc. v. Jackson*,
    419 F. App'x 932 (11th Cir. 2011) ...........................................................13

*BedRoc Ltd., LLC v. United States*,
    541 U.S. 176 (2004) .................................................................................24

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) ............................................................................19

*Bowles v. Russell*,
    551 U.S. 205 (2007) .................................................................................10

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) .................................................................................21

*Catholic Diocese of Beaumont v. Sebelius*,
    10 F. Supp. 3d 725 (E.D. Tex. 2014) .......................................................21

*Church of the Holy Light of the Queen v. Mukasey*,
    615 F. Supp. 2d 1210 (D. Or. 2009) .........................................................17

*City of Tacoma v. Taxpayers of Tacoma*,
    357 U.S. 320 (1958) .................................................................................10

*Corbett v. United States*,
    458 F. App'x 866 (11th Cir. 2012) ...........................................................13

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005) .................................................................................21

*Doe v. FAA,*
  432 F.3d 1259 (11th Cir. 2005) ....................................................................12

*Drummond Coal Co. v. Watt,*
  735 F.2d 469 (11th Cir. 1984) .....................................................................11

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012) ..................................................................................... 20, 21

*FCC v. ITT World Comm'ns, Inc.,*
  466 U.S. 463 (1984) ......................................................................................13

*Falahati v. Egan,*
  638 F. App'x 984 (11th Cir. 2016) ...............................................................12

*Federal Election Comm'n v. Reform Party of U.S.,*
  479 F.3d 1302 (11th Cir. 2007) ...................................................................11

*Gardner v. Alabama,*
  385 F.2d 804 (5th Cir. 1967) .......................................................................11

*Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal,*
  546 U.S. 418 (2006) ................................................................................ 3, 4, 17

*Gonzales v. Raich,*
  545 U.S. 1 (2005) ............................................................................................2

*Green v. Brantley,*
  981 F.2d 514 (11th Cir. 1993) ................................................................... 8, 12

*Hall v. Flournoy,*
  975 F.3d 1269 (11th Cir. 2020) ...................................................................24

*Hemp Indus. Ass'n v. U.S. DEA,*
  539 F. Supp. 3d 120 (D.D.C. 2021) .............................................................22

*Hemp Indus. Ass'n v. DEA.,*
  36 F.4th 278 (D.C. Cir. 2022) ......................................................................11

*John Doe, Inc. v. DEA,*
  484 F.3d 561 (D.C. Cir. 2007) ................................................................. 11, 12

iv

*Jory v. United States*,
    562 F. App'x 926 (11th Cir. 2014)..................................................................13

*LabMD, Inc. v. Federal Trade Comm'n*,
    776 F.3d 1275 (11th Cir. 2015) ............................................... 12, 13, 14, 23

*La Voz Radio de la Communidad v. FCC*,
    223 F.3d 313 (6th Cir. 2000)............................................................... 18, 19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) .......................................................................16, 24, 26

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991).............................................................................. 20, 21

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012)....................................................................................10

*National Ass'n of Mfrs. v. Department of Defense*,
    138 S. Ct. 617 (2018)..................................................................................24

*Odei v. U.S. Dep't of Homeland Sec.*,
    937 F.3d 1092 (7th Cir. 2019) ...................................................................18

*Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004),
    *aff'd on other grounds*, *Gonzales v. Oregon*, 546 U.S. 243 (2006).......................................11

*Otwell v. Alabama Power Co.*,
    747 F.3d 1275 (11th Cir. 2014) ........................................................... 12, 13

*Pharmacy Doctors Enterprises, Inc. v. DEA*,
    789 F. App'x 724 (11th Cir. 2019)...............................................................11

*Sharma v. DEA*,
    511 F. App'x 898 (11th Cir. 2013)...............................................................11

*Sossamon v. Texas*,
    563 U.S. 277 (2011).....................................................................................18

*Soul Quest Church of Mother Earth, Inc. v. U.S. DEA*,
    No. 22-11052 (11th Cir. Apr. 4, 2022)..........................................................8

*St. John's United Church of Christ v. City of Chicago*,
    502 F.3d 616 (7th Cir. 2007)..............................................................18, 19, 20

*Statton v. Florida Fed. Judicial Nominating Comm'n*,
    959 F.3d 1061 (11th Cir. 2020) ......................................................................9

*Suntree Pharmacy v. DEA*,
    No. 20-14626, 2022 WL 444357 (11th Cir. Feb. 14, 2022) ...........................11

*Tanzin v. Tanvir*,
    141 S. Ct. 486 (2020)....................................................................................16

*Utility Air Regulatory Grp. v. EPA*,
    573 U.S. 302 (2014)......................................................................................25

*Warshauer v. Solis*,
    577 F.3d 1330 (11th Cir. 2009) ....................................................................23

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ......................................................................24, 25, 26

**U.S. Constitution:**

 Free Exercise Clause ...........................................................................15, 21

**Statutes:**

Administrative Procedure Act:

    5 U.S.C. § 551 ...............................................................................................23
    5 U.S.C. § 553 ...............................................................................................23
    5 U.S.C. § 701 *et seq* .................................................................................. 1, 12

Religious Freedom Restoration Act (RFRA):

    42 U.S.C. § 2000bb ........................................................................................4
    42 U.S.C. § 2000bb(a)(2) ..............................................................................17
    42 U.S.C. § 2000bb(a)(5) ..............................................................................17
    42 U.S.C. § 2000bb-1(a) ...............................................................................15
    42 U.S.C. § 2000bb-1(b) ...............................................................................15
    42 U.S.C. § 2000bb-1(c) ........................................................... 15, 16, 17, 18

42 U.S.C. § 2000bb-2(1) ..................................................................16
42 U.S.C. § 2000bb-3(a) .......................................................15, 16, 22

8 U.S.C. § 1160(e)(3)(B) ...................................................................20

21 U.S.C. § 801 *et seq.* ......................................................................10
21 U.S.C. § 811.....................................................................................2
21 U.S.C. § 812.....................................................................................3
21 U.S.C. § 812(a) ............................................................................ 1, 3
21 U.S.C. § 812(b)(1) ....................................................................... 1, 3
21 U.S.C. § 812(c) ............................................................................ 1, 3
21 U.S.C. § 812 sched. I(c)(6) ......................................................... 1, 3
21 U.S.C. § 821 .…………….................................................................2
21 U.S.C. §§ 822-24..............................................................................2
21 U.S.C. § 822(d)................................................................................4
21 U.S.C. § 823(a)(1) ...........................................................................3
21 U.S.C. § 831.....................................................................................2
21 U.S.C. § 841.....................................................................................2
21 U.S.C. § 871(b).................................................................................2
21 U.S.C. § 877..............................1, 2, 6, 7, 8, 10, 11, 18, 20, 21, 22, 23, 25

28 U.S.C. § 1291 ..................................................................................1
28 U.S.C. § 1331 ..................................................................................1
28 U.S.C. § 1346 ..................................................................................1
28 U.S.C. § 1361 ..................................................................................1
28 U.S.C. § 2201 ..................................................................................1
28 U.S.C. § 2202 ..................................................................................1

Comprehensive Drug Abuse Prevention and Control Act of 1970,
    Pub. L. No. 91-513, 84 Stat. 1236 ................................................2

**Regulations**:

21 C.F.R. §§ 1300-1316 ......................................................................3
21 C.F.R. § 1307.03 .............................................................................4
21 C.F.R. § 1307.31 ........................................................................ 4, 17

28 C.F.R. § 0.100 ................................................................................3

**Miscellaneous:**

*Diversion Control Division, DEA, Guidance Regarding Petitions for Religious*
    *Exemption from the Controlled Substances Act Pursuant to the Religious Freedom*
    *Restoration Act (Revised)*, https://perma.cc/VE74-SQMH
    (updated Nov. 20, 2020) ........................................................................ 4, 23

## Statement of Jurisdiction

Plaintiffs invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331, 1346, 1361, 2201, 2202, and 5 U.S.C. § 701. *See* Doc. 59, pp. 10-11. On March 4, 2022, the district court dismissed this case for lack of subject-matter jurisdiction pursuant to 21 U.S.C. § 877. *See* Doc. 74, p. 7. That order is a final order for purposes of appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issue

Plaintiffs Soul Quest Church of Mother Earth, Inc. (Soul Quest) and its spiritual leader, Christopher Young, engage in what they allege to be religious use of ayahuasca, a tea that contains a controlled substance (DMT). *See* 21 U.S.C. §§ 812(a), (b)(1), (c), sched. I(c)(6). In 2017, plaintiffs requested the Drug Enforcement Administration (DEA) to allow Soul Quest members to import, possess, and distribute plants containing DMT to make ayahuasca for religious purposes. DEA denied that request in 2021, advising plaintiffs by letter that the decision constituted a final determination of plaintiffs' exemption request under 21 U.S.C. § 877. Under Section 877, judicial review of final action by DEA lies exclusively in the appropriate court of appeals, via a petition for review filed within 30 days of the order challenged. Plaintiffs elected not to file a timely petition for review challenging DEA's denial of their exemption request. Instead, they chose to challenge the denial in district court by adding the challenge to a suit they had previously filed against DEA and other defendants seeking a ruling that they are entitled to a religious exemption.

1

The question presented is whether the district court correctly dismissed this case under 21 U.S.C. § 877 because plaintiffs' claims are all inescapably intertwined with DEA's denial of plaintiffs' request for an exemption from the Controlled Substances Act.

## Statement of the Case

### A.    Statutory and Regulatory Background

**1.**    The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, creates a comprehensive federal scheme regulating the handling of controlled substances. *See Gonzales v. Raich*, 545 U.S. 1, 10, 12-13 (2005). Title II of that Act contains statutory provisions known as the Controlled Substances Act (CSA), which establish a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id.* at 12-13.

Subchapter I of the CSA provides the Attorney General regulatory and enforcement authority over controlled substances and their handling, including authority to determine who may manufacture, distribute, dispense, or possess any controlled substance and in what manner. *See, e.g.*, 21 U.S.C. §§ 811, 822-24, 831, 841. The CSA also grants the Attorney General authority to "promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances." *Id.* § 821; *see also id.* § 871(b) (providing that "[t]he Attorney General may promulgate and enforce any rules, regulations, and

2

procedures which he may deem necessary and appropriate for the efficient execution of his functions under this subchapter"). The Attorney General has delegated this authority to DEA, *see* 28 C.F.R. § 0.100, and DEA has promulgated regulations related to controlled substances, *see* 21 C.F.R. §§ 1300-1316.

The CSA establishes five schedules of controlled substances. *See* 21 U.S.C. § 812. Schedule I regulates substances with "a high potential for abuse" and "no currently accepted medical use in treatment in the United States," and concerning which "[t]here is a lack of accepted safety for use . . . under medical supervision." *Id.* § 812(b)(1). The controlled substance at issue here—DMT (short for Dimethyltryptamine)—falls under Schedule I of the CSA. *See id.* § 812(a), (b)(1), (c), sched. I(c)(6). That section applies to "any material, compound, mixture, or preparation[] which contains any quantity" of those substances. *Id.* Ayahuasca—the drug plaintiffs seek permission to import, possess, and distribute—contains the Schedule I controlled substance DMT, which is "exceptionally dangerous." *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 432 (2006); *see also* Doc. 59, p. 2 (noting that ayahuasca contains DMT).

**2.**     The CSA authorizes the Attorney General to register an applicant to manufacture or distribute a Schedule I controlled substance where, among other requirements, the registrant maintains effective controls against diversion of that substance into other than legitimate medical, scientific, research, or industrial channels. *See* 21 U.S.C. § 823(a)(1). The CSA also authorizes the Attorney General to waive, by regulation, the registration requirement for certain manufacturers, distributors, or

dispensers if he finds that consistent with the public interest. *See id.* § 822(d). And pursuant to 21 C.F.R. § 1307.03, any person also may apply for an exception to particular CSA regulations (as opposed to the CSA as a whole). *See* Doc. 59-11, p. 2 (*Office of Diversion Control, DEA, Guidance Regarding Petitions for Religious Exemption from the CSA Pursuant to the Religious Freedom Restoration Act (2009)* (hereinafter *DEA Guidance*)). Prior to the Supreme Court's decision in *O Centro*, however, no process existed by which an individual who wished to use ayahuasca (or any controlled substance other than peyote, *see* 21 C.F.R. § 1307.31) for religious purposes could obtain permission to do so under the CSA. At that time, DEA considered such individual-use exceptions on the basis of religion categorically barred by the CSA and inappropriate. *See O Centro*, 546 U.S. at 423.

In *O Centro*, the Supreme Court held that the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, requires DEA to provide individualized consideration to requests for religious exemptions to the CSA. *See* 546 U.S. at 437. In compliance with the Supreme Court's holding, DEA created a petition process for seeking RFRA exemptions. *See* Doc. 59-11, p. 1 (*DEA Guidance*). That process, which remains in place today, is open to anyone who wishes to manufacture, distribute, import, export, use, or possess ayahuasca or any other controlled substance for religious purposes. *See Diversion Control Division, DEA, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)*, https://perma.cc/VE74-SQMH (updated Nov. 20, 2020).

4

### B.    Religious-Exemption Request

In 2016, DEA became aware that Soul Quest was "involved in offering 'retreats' through [its] website, www.soulquest-retreat.com." Doc. 13-3, p. 2 (Aug. 1, 2016, Letter). During those retreats, "ayahuasca, as well as [other] Schedule I controlled substances ibogaine and mescaline, are provided to 'clientele.'" *Id.* DEA invited Soul Quest to petition DEA to consider granting an exemption pertaining to that activity, *see id.*, and Soul Quest did so in 2017, seeking an exemption to the CSA with respect to "the ritual use by Soul Quest of ayahuasca for its sacramental activities," Doc. 59-10, pg. 2 (Ex. 10).

After an investigation, DEA denied Soul Quest's exemption request by letter dated April 16, 2021. Doc. 59-2, pg. 1 (Ex. 2). DEA determined that Soul Quest "has not satisfied its burden under RFRA of demonstrating that its use of ayahuasca is pursuant to a religious exercise and based on a sincerely held religious belief." *Id.*, pg. 4. It concluded that Soul Quest "promotes ayahuasca to the public for self-help and therapeutic reasons, rather than solely to fellow believers for . . . religious ritual purposes . . .." *Id.*, pg. 3 (noting, *e.g.*, that Soul Quest's website shows that Soul Quest "advertises the use and distribution of ayahuasca to the public as fundamentally medicinal").

DEA also concluded that denial of Soul Quest's exemption request is the least restrictive means of furthering two compelling interests: "the need to protect public health and safety from potentially dangerous substances, and the need to prevent diversion of controlled substances into the illicit market." Doc. 59-2, pg. 6. For

example, while Soul Quest "described detailed screening procedures for participants" in its ayahuasca retreats and "monitoring of ayahuasca consumption by trained health care professionals," DEA's investigation revealed "troubling allegations that Soul Quest has failed to follow its own procedures." *Id.*, pg. 8. DEA noted allegations in a wrongful-death action filed against Soul Quest regarding an individual who died after ingesting ayahuasca and another substance (kambo, the secretion of a South American frog) at a Soul Quest retreat. *Id.* The agency also noted assertions by another individual that Soul Quest staff members delayed calling 911 when she experienced adverse effects from an unknown substance administered to her during a Soul Quest ceremony. *See id.*

DEA also emphasized that Soul Quest "currently lacks adequate measures to safeguard either the imported plants in its custody or the tea, once manufactured." Doc. 59-2, pg. 8. In addition, during DEA's preregistration investigation, Soul Quest "made no commitment to lawfully import or acquire the plant material containing DMT within the comprehensive regulatory system established under the CSA," *id.*, which is necessary to allow the DEA to "track these shipments to ensure that none are diverted into illicit channels," *id.*, pg. 6.

### C.    District Court Proceedings

DEA's April 2021 letter stated that its denial of Soul Quest's request for a religious exemption from the CSA "is a final determination under 21 U.S.C. § 877." Doc. 59-2, pg. 9. Despite that notification, Soul Quest elected not to file a petition for review of DEA's final determination in the appropriate court of appeals within the 30

days prescribed by section 877. Instead, plaintiffs decided to challenge the denial in district court, by adding the challenge to a suit they had previously filed a year earlier. *See* Doc. 42, pgs. 13, 33-34, 36. Asserting claims under the Constitution and RFRA, plaintiffs' original complaint sought an injunction barring defendants from enforcing the CSA against plaintiffs' alleged sacramental use of ayahuasca, along with an order requiring defendants to present a plan to effectuate the importation, distribution, and sacramental use of ayahuasca by plaintiffs. *See* Doc. 1, pg. 27.

DEA moved to dismiss plaintiffs' amended complaint, *see* Doc. 44[1]—which plaintiffs had filed within 30 days of DEA's April 2021 final letter—and subsequently moved to dismiss a third amended complaint that also challenged that letter, *see* Doc. 59, pgs. 2, 8-10, for lack of jurisdiction under 21 U.S.C. § 877, *see* Doc. 61. The district court granted the motion, explaining that DEA's letter constituted final agency action reviewable exclusively in the court of appeals under section 877 and that plaintiffs' claims are all inescapably intertwined with the issues presented and relief requested in their administrative-exemption request. *See* Doc. 74, pg. 6.

---

[1]  The parties jointly obtained a stay of proceedings while DEA conducted the investigation necessary to issue a determination regarding plaintiffs' administrative petition for a religious exemption from the CSA. *See* Docs. 23, 24, 25-28. Plaintiffs' brief asserts that DEA "lull[ed] [a]ppellants with a false offer of settlement" during that period, Br. 22, while "surreptitiously" engaging in a "different process" that culminated in the denial of plaintiffs' administrative religious-exemption request. Br. 10. The record supports neither contention, and neither contention is true.

### D.    Petition for Review

On April 4, 2022, plaintiffs filed a Petition for Review in this Court seeking an order vacating, reversing, and enjoining DEA's "final agency decision" of April 16, 2021. *See* Petition at 10, *Soul Quest Church of Mother Earth, Inc. v. U.S. DEA*, No. 22-11052 (11th Cir. Apr. 4, 2022). The Petition also requests an order directing respondents to grant petitioners' request for an exemption from the CSA permitting petitioners to import, possess, and distribute plants containing DMT in order to make ayahuasca. *See id.* at 10-11.

On May 5, 2022, DEA moved to dismiss the petition for review as untimely because it was filed more than 30 days after DEA's April 16, 2021, final decision. Plaintiffs opposed the motion, and this Court has allowed DEA until August 22, 2022, to file a reply.

### Summary of Argument

The district court correctly dismissed this case for lack of subject-matter jurisdiction under 21 U.S.C. § 877. That statute vests exclusive jurisdiction over final action by DEA in the appropriate court of appeals on a timely filed petition for review. Section 877 governs claims directly challenging DEA final agency action as well as claims that are inescapably intertwined with the procedures or merits surrounding DEA final action. *See Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993). Section 877 applies here because the amended complaint directly challenges DEA's final determination denying plaintiffs' request for a religious exemption from the CSA and because

8

plaintiffs' other claims are inextricably intertwined with the procedures or merits surrounding DEA's final denial of their administrative religious-exemption request.

Plaintiffs contend section 877 is inapplicable on the theory that DEA lacked statutory authority to consider their request for a religious exemption from the CSA. Plaintiffs argue that RFRA authorizes courts, but not agencies, to consider the availability of religious exemptions, but that is incorrect: RFRA's text plainly authorizes agencies to grant RFRA exemptions, and the Supreme Court expressly so held in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020). Moreover, nothing in RFRA specifies in which court a RFRA claimant may seek judicial review of a RFRA claim. Accordingly, pursuant to 21 U.S.C. § 877, when a religious-exemption request is presented to and finally denied by DEA, judicial review of RFRA's application in that context is available only in the appropriate court of appeals, on a timely petition for review. Plaintiffs' reliance on the major questions doctrine, raised for the first time on appeal, also is unavailing. That doctrine is inapplicable to RFRA, which is a limitation on, rather than a transformative expansion of, federal power, and in any event, RFRA clearly authorizes agencies to consider religious-exemption requests.

### Statement of the Standard of Review

This Court reviews a district court's dismissal of a complaint for lack of subject-matter jurisdiction de novo. *See Statton v. Florida Fed. Judicial Nominating Comm'n*, 959 F.3d 1061, 1062 (11th Cir. 2020).

## Argument

I.   **The District Court Correctly Dismissed This Case for Lack of Jurisdiction Because 21 U.S.C. § 877 Vests Exclusive Jurisdiction Over Plaintiffs' Claims in the Courts of Appeals on a Timely Petition for Review.**

A.   **21 U.S.C. § 877 Provides the Exclusive Mechanism for Judicial Review of a Final DEA Decision Denying a Request for an Exemption from the CSA.**

Congress has the power to "prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had," *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 335-36 (1958). That includes the power to provide for judicial review of an agency's action exclusively in a federal court of appeals. *See id.*; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378-79 (2012); *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007).

The judicial review statute at issue here, 21 U.S.C. § 877, provides that

> [a]ll final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision.

The term "this subchapter" in Section 877 refers, among other things, to the CSA, which as noted is codified at various provisions within 21 U.S.C. § 801 *et seq.*, *see supra* at 2.

As this Court and all the other courts to have addressed this issue have recognized, 21 U.S.C. § 877 vests judicial review of DEA decisions applying the CSA exclusively in the appropriate court of appeals via a timely filed petition for review. *See, e.g., Sharma v. DEA*, 511 F. App'x 898, 903 (11th Cir. 2013); *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007); *Oregon v. Ashcroft*, 368 F.3d 1118, 1120 & n.1 (9th Cir. 2004), *aff'd on other grounds, Gonzales v. Oregon*, 546 U.S. 243 (2006). As the D.C. Circuit observed in *John Doe, Inc.*, section 877 "vests exclusive jurisdiction in the courts of appeals over '[a]ll final determinations, findings, and conclusions' of the DEA applying the CSA." 484 F.3d at 568 (alteration in original) (quoting 21 U.S.C. § 877). "Thus, claims falling within the ambit of section 877—those challenging a final decision of the DEA under the CSA—are considered by the courts of appeals, not the district courts." *Hemp Indus. Ass'n v. DEA.*, 36 F.4th 278, 286 (D.C. Cir. 2022). As this Court observed in *Drummond Coal Co. v. Watt*, 735 F.2d 469 (11th Cir. 1984), "[i]t is well settled that if Congress . . . specifically designates a forum for judicial review of administrative action, that forum is exclusive." *Id.* at 475 (quoting *Gardner v. Alabama*, 385 F.2d 804, 810 (5th Cir. 1967)). And that is so even where, as here, the statute does not expressly include the term "exclusive." *Federal Election Comm'n v. Reform Party of U.S.*, 479 F.3d 1302, 1309 (11th Cir. 2007).[2]

---

[2] This Court has exercised jurisdiction under section 877 in numerous other cases on direct review of DEA decisions applying the CSA. *See, e.g., Suntree Pharmacy v. DEA*, No. 20-14626, 2022 WL 444357 (11th Cir. Feb. 14, 2022); *Pharmacy Doctors Enterprises, Inc. v. DEA*, 789 F. App'x 724 (11th Cir. 2019).

### B.    21 U.S.C. § 877 Provides Exclusive Jurisdiction in the Appropriate Court of Appeals Concerning All the Claims in This Case.

Where, as here, "Congress has provided in the courts of appeals an exclusive forum for the correction of procedural and substantive administrative errors, a plaintiff may not bypass that forum" by raising those errors in district court. *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993). That rule bars district court review of claims that are "inescapably intertwined with a review of the procedures and merits surrounding" a final agency order that is reviewable exclusively in the courts of appeals. *Id.*; *accord Doe v. FAA*, 432 F.3d 1259, 1263 (11th Cir. 2005).

This rule is aimed at barring collateral challenges to agency orders that are by statute reviewable only in the courts of appeals, *see, e.g.*, *Green*, 981 F.2d at 521; *Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1282 (11th Cir. 2014), and encompasses constitutional and statutory claims, including claims under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; *see, e.g.*, *Falahati v. Egan*, 638 F. App'x 984, 985 (11th Cir. 2016); *LabMD, Inc. v. Federal Trade Comm'n*, 776 F.3d 1275, 1279-80 (11th Cir. 2015); *Green*, 981 F.2d at 518. Allowing a plaintiff to bring in district court—either on an alternative theory or by artful pleading—what is unavoidably in substance a challenge to final agency action would "encourage[] forum shopping" and lead to duplicative review and accompanying delays. *John Doe, Inc.*, 484 F.3d at 570.

12

A claim is "inescapably intertwined" with final agency action where the claim "attempt[s] to obtain the same results and to place the same constraints on [the agency] rejected by the agency," *Otwell*, 747 F.3d at 1282, or where "the facts supporting" a plaintiff's district court claims "are indistinguishable from those relating to the procedures and merits" of any such final agency action, *LabMD, Inc.*, 776 F.3d at 1280. *See also FCC v. ITT World Comm'ns, Inc.*, 466 U.S. 463, 468 (1984) (noting that "[l]itigants may not evade [exclusive-review] provisions by requesting the District Court to enjoin action that is the outcome of the agency's order").[3]

As the district court correctly held, all the claims in this case are inescapably intertwined with DEA's denial of plaintiffs' request for an exemption to the CSA that would allow them to import, possess, distribute, and use ayahuasca for asserted religious purposes. *See* Doc. 74, pg. 6.

First, plaintiffs amended their complaint to add a claim directly challenging DEA's denial of their administrative-exemption request. *See supra* at 7. Section 877 plainly applies to that claim, which raises the same legal issues presented by plaintiffs' request for an administrative CSA exemption, *see* Doc. 59, pgs. 3-5, 32-33, and requests the court to "declare unlawful and set aside DEA's Order," *id.*, pg. 4; *see also id.*, pg. 38.

---

[3] *See also Jory v. United States*, 562 F. App'x 926, 928 (11th Cir. 2014); *Corbett v. United States*, 458 F. App'x 866, 870 (11th Cir. 2012); *Baltimore Air Transport, Inc. v. Jackson*, 419 F. App'x 932, 935-36 (11th Cir. 2011).

Plaintiffs' other claims request the same or similar relief as their administrative claim—including to "[e]njoin [d]efendants from taking any action prohibiting [p]laintiffs from importing, possessing, manufacturing, and distributing ayahuasca," Doc. 59, pg. 38—and require evaluating the "procedures and merits" involved in DEA's denial of their administrative claim, *LabMD, Inc.*, 776 F.3d at 1280. For example, plaintiffs' claim that DEA's alleged "prohibition on [p]laintiffs' religious exercise with ayahuasca" violates RFRA, Doc. 59, pg. 32, raises the same issues as their administrative request for a religious exemption to the CSA. *Compare id.* at 32-33 (alleging that defendants' actions "substantially burden [p]laintiffs' religious beliefs," "further[] no compelling governmental interest," and are "not the least restrictive means of furthering [d]efendants' stated interests") *with* Doc. 59-2, pgs. 5, 9 (concluding that Soul Quest has not demonstrated that its use of ayahuasca is "pursuant to a religious exercise and based on a sincerely held religious belief," and that denying Soul Quest's request for a religious exemption "is the least restrictive means of protecting the public health and safety and preventing diversion of DMT into illicit channels").

Plaintiffs' claim that defendants "unlawfully adjudicated [p]laintiffs' religious sincerity in excess of statutory jurisdiction, authority, or limitation," Doc. 59, pgs. 34, 37, also directly attacks DEA's denial of their administrative claim. And the same is true of plaintiffs' claims that DEA wrongly failed to provide a hearing in accordance with Administrative Procedure Act (APA) procedures, *see id.* at 36, and that DEA violated

14

the Free Exercise Clause by adopting an administrative-exemption process that is allegedly not "neutral and generally applicable," *id.* at 37.

**C.    Plaintiffs' Attempts to Demonstrate that Section 877 is Inapplicable Underscore the Error of their Analysis.**

**1. Section 877 Applies to DEA Final Orders Denying Administrative Requests for Religious Exemptions.**

**a.**    Plaintiffs contend (Br. 16-18, 22-25) that section 877 is inapplicable here because DEA assertedly lacked statutory authority to grant their administrative request for a religious exemption from the CSA. Plaintiffs' current view apparently was not their understanding at the time they sought a religious exemption from DEA.  In any event, RFRA's plain language and Supreme Court precedent establish that RFRA authorizes, and sometimes requires, agencies to grant religious exemptions. Plaintiffs contend (Br. 23-25) that RFRA authorizes courts, but not agencies, to eliminate substantial burdens on the free exercise of religion, citing 42 U.S.C. § 2000bb-1(c), but that is incorrect. RFRA provides that "[g]overnment shall not substantially burden a person's exercise of religion" unless the "application of the burden to the person" "is in furtherance of a compelling government interest" and is "the least restrictive means of furthering that compelling government[] interest." 42 U.S.C.  2000bb-1(a), (b). The statute places that obligation on government agencies, not only on the courts. Section 2000bb-3(a) states that RFRA "applies to all [f]ederal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." *Id.* § 2000bb-3(a). That language necessarily includes action by

federal agencies, since RFRA defines the term "government" to include "a branch, department, agency, instrumentality, and official" of the United States, *id.* § 2000bb-2(1), and since agencies plainly "implement[]" federal law.

Plaintiffs note (Br. 23-25) that 42 U.S.C. § 2000bb-1(c) provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* That provision, however, does not require federal agencies to wait for an adverse court order before eliminating substantial burdens on the free exercise of religion. Concluding otherwise would ignore RFRA's plain text, as explained above; create unnecessary litigation; preclude the development of RFRA issues in and through agency proceedings; and potentially require federal agency officials to subject themselves to personal liability for damages for violating RFRA, *see Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).

Accordingly, in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), the Supreme Court held that it was appropriate for the federal agency defendants there to consider RFRA in issuing regulations implementing the contraceptive-coverage mandate, in light of the fact that "the regulations implementing the contraceptive mandate qualify as '[f]ederal law' or 'the implementation of [federal] law.'" *Id.* at 2383 (second alteration in original) (quoting 42 U.S.C. § 2000bb-3(a)).

The Supreme Court's statement in *O Centro* that Congress formulated RFRA's compelling interest test "as the means for the courts to 'strike sensible balances between religious liberty and competing prior governmental interests,'" 546 U.S. at 439 (alteration omitted) (quoting 42 U.S.C. § 2000bb(a)(2), (5)), likewise does not limit implementation of RFRA's requirements to the courts. *O Centro* nowhere suggested that agencies may not *also* strike those kinds of "sensible balances," and the sentence plaintiffs quote (at Br. 23) specifically mentioned "courts" because the Supreme Court was responding to an argument that RFRA did not authorize *courts* to recognize exceptions to the CSA. *See O Centro*, 546 U.S. at 434. *O Centro*'s endorsement of DEA's regulatory exemption allowing religious use of peyote, *see id.* at 433 (citing 21 C.F.R. § 1307.31), further confirms that RFRA provides agencies with statutory authority to make religious exceptions, even apart from any court order.

Plaintiffs' suggestion (Br. 24) that DEA took a different view of this issue in *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009), is mistaken. The plaintiffs in that case did not invoke DEA's administrative process for seeking a religious exemption to the CSA, as that process did not yet exist at the time the complaint was filed in that case. *See Church of the Holy Light*, No. CV-08-3095 (D. Or.) Docs. 7, 9.[4]

---

[4] Citing 42 U.S.C. § 2000bb-1(c), plaintiffs (Br. 23) also argue that "standing is governed by Article III, not DEA's preferred statute, § 877." Article III standing, however, raises different issues than whether a statute such as section 877 vests exclusive jurisdiction over a matter in one court or another.

**b.**    Citing RFRA section 2000bb-1(c)—which (as noted) authorizes a person to assert a RFRA violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government—plaintiffs also suggest that RFRA is a "jurisdictional mandate" that overrides 21 U.S.C. § 877. Appellants' Br. 26. As courts have recognized, however, section 2000bb-1(c) merely creates a cause of action. *See, e.g., Odei v. U.S. Dep't of Homeland Sec.,* 937 F.3d 1092, 1095 (7th Cir. 2019); *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 194 (3d Cir. 2018); *La Voz Radio de la Communidad v. FCC*, 223 F.3d 313, 319 (6th Cir. 2000); *see also Sossamon v. Texas*, 563 U.S. 277, 282 (2011) (noting that the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, "includes an express . . . cause of action that is taken from RFRA").

As those courts correctly observe, RFRA contains no language purporting to create jurisdiction in any court, and "[t]he mere existence of a private right of action under a federal statute does not eliminate jurisdictional obstacles." *Odei*, 937 F.3d at 1095. Accordingly, as the courts to have addressed the issue have all correctly held, RFRA does not authorize district courts to exercise jurisdiction where other statutes— such as 21 U.S.C. § 877—channel judicial review exclusively to the federal courts of appeals on direct review of agency action. *See Adorers of the Blood of Christ*, 897 F.3d at 194; *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 628-29 (7th Cir. 2007); *La Voz Radio*, 223 F.3d at 319; *cf. Odei*, 937 F.3d at 1095.

Plaintiffs' reference (Br. 22) to the fact that RFRA "operates as a kind of super-statute, displacing the normal operation of other federal laws," *Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020), does not support a different conclusion. RFRA does not specify in which court judicial review of a RFRA claim is appropriately sought. Accordingly, RFRA in no way requires ignoring section 877's vesting of exclusive jurisdiction over the claims plaintiffs raise here in the appropriate court of appeals on a timely filed petition for direct review of DEA's final determination denying plaintiffs' administrative-exemption request. *See St. John's United Church of Christ*, 502 F.3d at 629; *La Voz Radio*, 223 F.3d at 319.

Plaintiffs also wrongly suggest (Br. 24-25) that section 877 is inapplicable here because a petition for review of DEA's denial of an administrative claim in the appropriate court of appeals would involve inadequate fact finding. As an initial matter, DEA conducted a "thorough review of the entire record" pertaining to Soul Quest's administrative-exemption request, Doc. 59-2, pg. 9; conducted "extensive interviews of Soul Quest leadership and other relevant persons," *id.*, pg. 3; and "review[ed] Soul Quest's online videos[] and . . . website," *id*. DEA also posed specific questions to Soul Quest in writing concerning various areas of concern, including questions regarding "the religious beliefs and mission of Soul Quest," Doc. 59-3, pg. 4, and "Soul Quest's Procurement, Storage, Distribution, and Disposal of Ayahuasca," *id*. In addition, DEA's guidance document for the public regarding how to file and support a petition for a

religious exemption to the CSA encourages all religious-exemption requesters to provide "any and all" information they deem relevant. *DEA Guidance*, *supra*, at 2.

As the Seventh Circuit noted in *St. John's United Church of Christ*, "[n]othing in RFRA purported to repeal the authority of federal administrative agencies to find facts, subject to review by the courts of appeals." 502 F.3d at 629; *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 19 (2012) (noting that there is "nothing extraordinary in a statutory scheme that vests . . . factfinding authority in a non-Article III entity" where judicial review is available on direct review in the federal courts of appeals). Moreover, if a court of appeals were to find the record inadequate on direct review of a final decision of the DEA, it could remand to the agency for additional fact-finding. *See St. John's United Church of Christ*, 502 F.3d at 629 (noting that "any plaintiff can make an argument . . . that there were problems with the creation of the record before the administrative agency and thus in the record on appeal").

*McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 (1991), upon which plaintiffs rely, is distinguishable on that ground. *McNary* addressed a statutory review scheme that "restricted judicial review to the administrative record *created in the first instance*." *Elgin*, 567 U.S. at 21 n.11 (emphasis added); *see McNary*, 498 U.S. at 493 (noting that the preclusion statute at issue there provided that judicial review "shall be based solely upon the administrative record *established at the time of the review by the appellate authority*") (emphasis added) (quoting 8 U.S.C.§ 1160(e)(3)(B)). 21 U.S.C. § 877 contains no such limitation.

*McNary* also is inapposite because DEA's process for seeking a religious exemption to the CSA allows claimants to make a sufficient record in the first instance regarding all aspects of a DEA exemption-denial, whether substantive or procedural, including regarding whether a claimant can prove a substantial burden on a sincerely held religious belief. *See supra* at 19-20; *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (noting, in discussing the Religious Land Use and Institutionalized Persons Act, which applies RFRA's substantive standard to prisoner claims, that agency officials "may appropriately question whether a prisoner's religiosity . . . is authentic"); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014) (noting that a "pretextual assertion of a religious belief in order to obtain a [RFRA] exemption . . . would fail"). For reasons not applicable here, *McNary* held that the statute at issue there did not allow claimants to make a sufficient record in the first instance. *See* 498 U.S. at 497; *see also Elgin*, 567 U.S. at 21 (distinguishing *McNary* on this additional ground).

*Catholic Diocese of Beaumont v. Sebelius*, 10 F. Supp. 3d 725 (E.D. Tex. 2014), cited by plaintiffs (Br. 25), is also inapposite. In *Catholic Diocese*, plaintiffs sought an exemption from the ACA's contraceptive mandate under RFRA and the Free Exercise Clause in district court. The district court declined to limit its review of the facts to the administrative record, *see id.* at 729, but that ruling has no bearing on whether 21 U.S.C. § 877 vests judicial review over DEA final decisions pertaining to RFRA and the Free Exercise Clause exclusively in the appropriate court appeals. As noted, the Supreme

Court has held that Congress may do exactly that under conditions resembling those presented by 21 U.S.C. § 877. *See supra* at 10.

Plaintiffs also wrongly assert (Br. 24) that a petition for review challenging DEA's final decision denying their administrative-exemption request would not be governed by RFRA's compelling-interest test. Because RFRA applies to "all [f]ederal law[] and the implementation of that law," 42 U.S.C. § 2000bb-3(a), RFRA's compelling-interest test governs judicial review of final agency action allegedly violating RFRA, including in the court of appeals on a petition for review.

In sum, as explained above, plaintiffs had a full and fair opportunity to present DEA with evidence supporting their request for permission to use ayahuasca purportedly for religious purposes, and could have protected their right to judicial review consistent even with the (unfounded) concerns their opening brief raises. For example, they could have filed a timely petition for review and moved to stay that proceeding while they proceeded with this district court action. *See Hemp Indus. Ass'n v. U.S. DEA*, 539 F. Supp. 3d 120, 125 (D.D.C. 2021) (noting that the D.C. Circuit recently allowed another plaintiff to protect its right to judicial review in this way). Petitioners chose not to do so, and in making that decision knowingly and voluntarily forfeited their right to judicial review of all the claims brought here—which, as noted, directly challenge DEA's final determination denying their administrative-exemption request and otherwise are inescapably intertwined with that determination.

### 2. Section 877 Would Preclude an APA Notice-and-Comment Claim Under the Facts and Circumstances Presented Here, Even If Plaintiffs Had Made Such a Claim Below.

Plaintiffs' opening brief (at 19-22) argues that a guidance document DEA issued to advise the public about how to request a religious exemption from the CSA, *see supra* at 4, is invalid under the APA, *see* 5 U.S.C. § 553, because it was issued without notice and comment. Plaintiffs' complaint (Doc. 59) asserts no such claim, however, and plaintiffs otherwise failed to preserve any such claim below. This claim therefore should be considered forfeited.

But even if plaintiffs had raised this claim below, the district court would have lacked jurisdiction under 21 U.S.C. § 877 to consider it because the facts supporting that claim are "indistinguishable from those relating to the procedures and merits" of DEA's determination denying plaintiffs' administrative-exemption request. *LabMD, Inc.*, 776 F.3d at 1280 (holding that section 877 also applies to APA claims). The principal relief plaintiffs request on that claim is an order setting aside DEA's final determination denying their religious-exemption request, *see* Appellants' Br. 22, and that claim (as asserted for the first time in plaintiffs' opening brief) rests on the same nucleus of background facts as plaintiffs' other claims.[5]

---

[5] Plaintiffs also wrongly assert that the DEA guidance is a rule under 5 U.S.C. § 551. The document recites that it "does not have the force and effect of law," and that it "is intended only to provide clarity to the public regarding existing requirements under the law or Department policies." *DEA Guidance* (updated Nov. 20, 2020), *supra* p. 3 at 3. Documents of that type are considered "interpretive" rules, which do not require notice and comment. *See, e.g.*, *Warshauer v. Solis*, 577 F.3d 1330, 1337-39 (11th Cir. 2009).

### 3. Plaintiffs' Major Questions Doctrine Argument, Raised for the First Time on Appeal, Does Not Advance Their Position.

Plaintiffs' opening appeal brief also contends that DEA's Guidance Document violates the major questions doctrine. *See* Appellants' Br. 26-30. Insofar as this constitutes a free-standing argument, it is not properly considered for the first time on appeal. An issue "raised for the first time in an appeal will not be considered by this [C]ourt." *Hall v. Flournoy*, 975 F.3d 1269, 1277 n.3 (11th Cir. 2020) (quoting *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)).

This new argument is, in any event, without merit. Ordinarily, the analysis of an agency's statutory authority "begins with the statutory text," and when the text is clear, "ends there." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). Thus, courts ordinarily may not "impos[e] limits on an agency's discretion that are not supported by the text" of the relevant statute. *Little Sisters*, 140 S. Ct. at 2381.

The major questions doctrine arises in "'extraordinary cases'" where the "'history and the breadth of the authority that [the agency] has asserted,'" and the "'economic and political significance' of that assertion," "provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022) (alteration in original). In those cases, the agency "must point to "'clear congressional authorization' for the power it claims." *Id.* at 2609.

Even if the major questions doctrine were applicable here, its concerns would be satisfied because, as explained, RFRA's text clearly authorizes federal agencies to make religious exemptions to generally applicable agency rules and action, and the Supreme Court expressly so held in *Little Sisters*. Thus, Congress has provided whatever clarity could even conceivably be required here.

Although the Court thus has no need to consider the premises of plaintiffs' argument, their analysis mistakes the import of the Supreme Court's decisions. In contrast to the statute at issue in *West Virginia v. EPA*, RFRA does not represent a "'transformative expansion in [the federal government's] regulatory authority.'" 142 S. Ct. at 2610 (quoting *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014)). RFRA represents a contraction, rather than an expansion, of federal power, as it authorizes and in some cases requires the federal government to *exempt* religious claims from regulation. Plaintiffs' contention that the major questions doctrine applies here because DEA's consideration of their religious-exemption request supposedly usurped RFRA's exclusive delegation of that authority to the courts, *see* Appellants' Br. 27, rests on the same error discussed above. That RFRA authorizes agencies to consider making religious exemptions also does not usurp any power vested in courts, which retain authority to review denials of a religious-exemption request under 21 U.S.C. § 877.

In considering plaintiffs' religious-exemption request, DEA also did not claim to discover an "unheralded power" in an "ancillary provision" of a "long-extant statute." *West Virginia*, 142 S. Ct. at 2610 (citations omitted). As explained, the Supreme Court recognized agencies' authority to consider RFRA exemption requests in *Little Sisters*, and that authority is prominently set out in RFRA's plain text. Plaintiffs also wrongly contend (Br. 28) that RFRA implicates the major questions doctrine because agencies lack expertise regarding whether a religious claim is sincere. As explained, DEA has ample fact-finding capability in considering requests for religious exemptions from the CSA, and sincerity is part of a RFRA claimant's prima facie showing, whether the claimant is proceeding in court or before an agency.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.

Respectfully submitted,

Brian C. Boynton
  *Principal Deputy Assistant Attorney General*
Roger Handberg
  *United States Attorney*
Mark Stern
  (202) 514-5089
<u>s/s Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7241*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6696 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

<u>s/ Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2022, I electronically filed the foregoing Brief for Appellees with the Clerk of the Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

        /s/ Lowell V. Sturgill Jr.
        Lowell V. Sturgill Jr.