APPEAL NO. 22-11072

SOUL QUEST CHURCH OF MOTHER EARTH, INC., AND
CHRISTOPHER YOUNG,

APPELLANTS,

VS.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA, AND ANNE MILGRAM, ADMINISTRATOR OF THE
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,

APPELLEES.

APPEAL FROM THE UNITED STATES DISTRICT COURT,
MIDDLE DISTRICT OF FLORIDA

REPLY BRIEF OF APPELLANTS, SOUL QUEST CHURCH
OF MOTHER EARTH, INC., AND CHRISTOPHER YOUNG

Derek B. Brett, Esq.
Fla. Bar No. 0090750
BURNSIDE LAW GROUP
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Lead Counsel for Appellants

A. Brian Phillips, Esq
Fla. Bar No. 0067113
A. BRIAN PHILLIPS, P.A.
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Local Counsel for Appellants

## APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-3, the undersigned hereby certifies that the following persons and entities have an interest in the outcome of this case:

1.     Barkley, Mary, former associate attorney at the firm of A. Brian Phillips, P.A. and former co-counsel for Appellant(s);

2.     Berger, Wendy W., United States District Court Judge;

3.     Brett, Derek B., Attorney for Appellant(s);

4.     Gaffney, Michael James, United States Attorney for Appellee(s);

5.     Hancock, Kevin P., Former Attorney for Appellee(s);

6.     Irick, Daniel C., United States Magistrate Judge;

7.     Phillips, Andrew Brian, attorney for Appellant(s);

8.     Straus-Harris, Julie, United States Attorney;

9.     Sturgill, Lowell V., United States Attorney;

10.     Young, Christopher, Appellant;

11.     Young, Verena, Officer and Member of Appellant, Soul Quest Church of Mother Earth, Inc.,

No publicly traded company or corporation has an interest in the outcome of this appeal.

*s/Derek B. Brett, Esq.*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email:dbb@burnsidelaw.net
Lead Counsel for Appellants

s/A. Brian Phillips, Esq.
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Telecopier: (407) 872-0704
Email:
Brian.Phillips@Phillips-Law-Firm.com
Local Counsel for Appellants

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................... C-1-C-2

TABLE OF CONTENTS .......................................... i

TABLE OF CITATIONS ....................................... i-iii

ARGUMENT AND CITATIONS OF AUTHORITY ..................... 1-15

    A.    Appellees' Ad Hoc Policy and Corresponding Actions are Violative of the *Accardi* Principle ..................................... 3-7

    B.    Appellees Arbitrarily and Capriciously Rendered Determinations on Appellants' Religious Sincerity. ......................... 7-10

    C.    Appellees Continuously Misstate the Scope & Legitimacy of Appellants' APA Claim. ................................ 11-12

    D.    Appellees Misrepresent O Centro Decision as an "Endorsement" of DEA Regulatory Power ............................... 13-14

CONCLUSION .............................................. 14-15

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ...... 15

CERTIFICATE OF SERVICE ..................................... 16

## Table of Citations

**Cases**                                                       **Page(s)**

*Gonzalez v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2000). ........................................ 1,6,12-14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 140 S. Ct. 2367 (2020). ........................................... 11-12

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ......................... 5-6

*Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020). .... 11

*Soul Quest Church of Mother Earth, et al, v. Garland, et al*, 6:20-cv-000701-WWB-DCI, (M.D. Fla. April 22, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3,8-9

*Touby v. U.S.*, 500 U.S. 160 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*U.S. v. Caceres*, 440 U.S. 741 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

U.S. *ex rel.* Accardi v. Shaughnessy, 347 U.S. 260 (1954) . . . . . . . . . . . . . . . . . . . 3

**Statutes, Legislative History, and Rules**

5 U.S.C. § 551. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2-3,5-7

5 U.S.C. §§ 552-559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 U.S.C. § 877. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,14

42 U.S.C § 2000bb, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2,4-7,11,13-14

11th Cir. R. 26.1-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

11th Cir. R. 26.1-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Fed.R.App.P. 26(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Fed.R.App.P. 32(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Fed.R.App.P. 32(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

**Other Authorities**

Elizabeth Magill, *Agency Self-Regulation*, 77 Geo. Wash. L. Rev. 859 (2009). . 5-6

John F. Duffy & Michael Herz, eds., *A Guide to Judicial & Political Review of Federal Agencies*, at § 6.022, Section of Administrative Law & Regulatory Practice, American Bar Association (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rajaei Ali Reza, *Religious cognitive-emotional therapy: a new form of psychotherapy,* Iran J. Psychiatry (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Thomas W. Merrill, *The Accardi Principle*, 74 Geo. Wash. L. Rev. 569(2006)... 5

Office of the Attorney General, *Federal Protections for Religious Liberty*, (Oct. 6, 2017) https://web.archive.org/web/20220319150915https://www.justice.gov/opa/press-release/file/1001891/download. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-7

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.    INTRODUCTION

Appellees' Answer Brief concocts a number of arguments intended to persuade this Court to reject the Appellants' claims.  The Appellees' attempt to do so by – yet again – asserting some form of inherent, unwritten regulatory authority – one existing without official license; one existing without formal regulations subject to public disclosure and comment; and one existing in nothing except a page-and-a-half page "guidance" published on Appellee U.S. Drug Enforcement Administration's ("DEA") website titled "Guidance Regarding Petitions for Religious Exemption from Controlled Substances Act *Pursuant to the Religious Freedom Restoration Act.*"  *Soul Quest Church of Mother Earth, et al, v. Garland, et al*, 6:20-cv-000701-WWB-DCI, hereinafter "*Soul Quest v. Garland*") (M.D. Fla. April 22, 2020) (ECF No. 59-11)[1] (hereinafter, "DEA Guidance") (emphasis added).

_____

[1] Note, on the DEA's "guidance" it references it only as an "interim" measure – one which the Appellees' predicate upon the Supreme Court's hallmark decision in *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2000) (*"O Centro"*).  Sixteen (16) years later, this "interim," undefined "guideline" continues, without any effort by the Appellees to formulate any purported, permanent regulations – regulations which, Appellants would assert, would also likewise violate the plain language of the RFRA (granting exclusive jurisdiction to the District Courts, and *not* executive agencies, including the ones herein, vested with authority on the enforcement of controlled substance laws).

The Appellees' authority is non-existent. The case law it cites in support of its arguments are either non-analogous to the case-at-bar or are misstatements of the cited cases. Instead, what the Appellees have presented is nothing more than a series of such arguments, all relying upon its fatally-flawed premise of possessing such authority and, by doing so, hiding themselves behind the veil of 21 U.S.C. § 877 authority. Yet, in its efforts to unlawfully wield such *ad hoc* and opaque authority, the Appellees' fundamentally undercut the very purpose and intent of both the Religious Freedom Restoration Act, 42 U.S.C § 2000bb, *et seq.* ("RFRA"), the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ("APA"), and even its own internal, department guidance. DEA Guidance, ECF No. 59-11.

Moreover, the Appellees attempt to place a certain glow over the pernicious, fallacious notion that it was engaging in such non-existent authority during a period where it was presenting to both the District Court and – most certainly – the Appellants, that they were engaging in negotiations designed to settle the case, below.[2] These continuous 'sleights of hand' by the Appellees should lead to this Court's reversal of the District Court's decision on dismissal.

---

[2] The Appellees deny any form of bad-faith, without referencing – at all – the Record on Appeal demonstrating that while Appellants negotiated a settlement resolution while the matter was before the District Court, and during an agreed-stay of proceedings, the Appellees were surreptitiously planning on issuing its suspect 'ruling' on a religious exemption – one to which it had no lawful authority to issue. *See Soul Quest v. Garland,* (M.D. Fla. April 22, 2020) (ECF No. 31-13).

## II.  <u>LEGAL ARGUMENT ON REPLY</u>

### A.  Appellees' *Ad Hoc* Policy and Corresponding Actions are Violative of the *Accardi* Principle.

In *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), the Supreme Court articulated that an executive agency must follow its own rules and regulations. This rule also extends to agency guidelines. *Id.* at 264.

Strangely, though, in the instant case, the DEA Guidelines state simply that "this document does **not** carry the force and effect of law and is **not** meant to bind the public in any way.  This document is intended **only** to provide clarity to the public regarding existing requirements under the law or Department policies." *Soul Quest Church of Mother Earth, et al, v. Garland, et al*, 6:20-cv-000701-WWB-DCI, (hereinafter "*Soul Quest v. Garland*") (M.D. Fla. April 22, 2020) (ECF No. 59) (emphasis added).

If so, then how can the Appellees now purport to rely upon the DEA Guidelines, however undefined and contrary to law?  Further, if the DEA Guidelines do not carry any force and effect of law, how can they be deemed to carry some effect with regard to the APA?  Last, if those DEA Guidelines – as the Appellants have continuously argued – carry no force and effect of law, then the only other Department policy that has been brought forward – by the Appellants and throughout this litigation – is the Memorandum issued in 2017 by then Attorney General Jeff Sessions, which carried the specific directive/admonishment to the Department of

3

Justice and its corresponding agencies – such as Appellee DEA – that:

> [The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition. Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is *not competent* to assess the reasonableness of such lines drawn, *nor would it be appropriate for government to do so.*

*Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4. (emphasis added) (hereinafter, "Sessions Memorandum"); *see* Executive Order No. 13798, May 4, 2017, 82 F.R. 21675, requiring the Attorney General to "issue guidance interpreting religious liberty protections in Federal law." As continuously asserted – both at the District Court and now, before the Court of Appeals – Appellees run completely afoul *of their own guidelines* establishing the handling of RFRA matters. Remarkably, while the Appellees attempt to espouse some form of mysterious authority, their own filings continue to ignore any reference to (or even acknowledgment) of the binding directive issued by the Sessions Memorandum and its accompanying Executive Order, *supra.*

The Defendants' filings thus far do nothing but arbitrarily deny the sincere religious beliefs of the Plaintiffs and the other members of Soul Quest Church, despite the written, binding directive in the above Memorandum that they are ineligible to do so. The Appellees do so in dangerous fashion, with an unwritten set of prerogatives lacking any definition or public notice or legislative oversight. Rather, the prerogatives being asserted by the Appellees are *ad hoc* and *ultra vires*

4

in nature, defiant of legislative, judicial and – yes – executive prescriptions to the contrary.

The *Accardi* Principle requires Appellees' adherence to its internal guidelines. Thomas W. Merrill, *The Accardi Principle,* 74 Geo. Wash. L. Rev. 569, 569 (2006). Administrative agencies – like the DEA and DoJ – may attempt to self-regulate. Elizabeth Magill, *Agency Self-Regulation*, 77 Geo. Wash. L. Rev. 859, 860 (2009); however, the options to do so are extremely limited when there is no source of authority for them to do so. Further, typically, such self-regulation will *constraints* on discretion, and not to unleashing unbridled discretion. *Id.*

A good example of a limit on agency discretion is – consistent with RFRA's plain language and intent – the Sessions Memorandum, alongside the accompanying Executive Order, *supra.* The Sessions Memorandum reflects the adoption of a guideline designed to substantively limit DoJ and DEA's options in attempting to encroach on religious liberties including, but not limited to, those agencies' abilities to assess and judge the sincerity of one's religious beliefs. *Sessions Memorandum*, at 5.

Likewise, agency self-regulation involves the self-imposition of more procedure than would otherwise be required under the APA. *See* Administrative Procedure Act, 5 U.S.C. §§ 551-559; *see Matthews v. Eldridge*, 424 U.S. 319, 332-333 (1976) (recognizing that minimum procedures require that there first be

authority imposed under a specific statutory scheme); *U.S. v. Caceres*, 440 U.S. 741, 753-54 (1979) (identifying the APA has a law of potential relevance to the *Accardi* doctrine).

Yet, in the case-at-bar, the Appellees have turned this fundamental notion upon its head: not only have the Appellees undermined their own established guidelines under the Sessions Memorandum; they also lack *any form of statutory authority, whatsoever*, in which to proceed to regulate under the RFRA 'super-statute,' while also completely ignoring the requirements of the APA and the proscriptions articulated by the Supreme Court in *O Centro*. The effect, of course, is that the Appellees are acting without any proper lawful authority – within the confines of their own executive agencies. As explained elsewhere:

> The problem of a government agent promising adherence
> to a policy in the future is that the government agent (or
> her successor), absent some effective enforcement
> mechanism can ignore the promise. Government can say
> today that it will respect contract rights, but tomorrow it
> can exercise its coercive powers in ways that ignore them.

Elizabeth Magill, *Agency Self-Regulation*, 77 Geo. Wash. L. Rev. 859, 874 (2009) (internal citations omitted). This is what the *Accardi* doctrine is predicated upon: the adherence by the executive agency to existing rules limiting the agency's discretion. In the case-at-bar, the Appellees are limited by a slew of other authorities including, particularly, the binding nature of Sessions Memorandum and Executive Order No. 13798, consistent with the statutory authority under RFRA.

If so, then the Appellees possessed no lawful ability to make determinations of Appellants' sincere religious beliefs; further, the Appellees' possessed no vested lawful authority to undertake consideration of diversion-control of a religious institution without promulgating written regulations subject to legislative oversight and within the parameters of the APA. Appellees do not bother to explain its departure from such severe limitations; accordingly, its actions should be deemed arbitrary and capricious. *U.S. v. Caceres*, 440 U.S. 741, at 753-54 (if agency violates own procedural regulation, such action is "without observance of procedure required by law"); *see* John F. Duffy & Michael Herz, eds., *A Guide to Judicial & Political Review of Federal Agencies*, at § 6.022, Section of Administrative Law & Regulatory Practice, American Bar Association (2005).

**B. Appellees Arbitrarily and Capriciously Rendered Determinations on Appellants' Religious Sincerity.**

The upholding of the Appellees' *ad hoc* and *ultra vires* assertions of authority is just plain dangerous. In the case-at-bar, the interests being impacted are not simply limited to statutory interests; rather, the interests implicated are fundamental in nature, are protected under both the Free Exercise Clause and RFRA and are rights to be vigilantly safeguarded against official encroachment.

An analysis of three examples of Appellees' *ad hoc*, unwritten, unauthorized efforts to label the nature of the sincerity of religious beliefs exposes the Appellees' canard.

1.  DEA's Arbitrary Determination that Soul Quest Church's Religious Text was Not as Central as DEA Thought Appropriate.

The *Ayahuasca Manifesto* is the central religious text of the Soul Quest faith. As previously asserted – and never rebutted – agents for the DEA mentioned this text once during their interviews with Soul Quest personnel. *See Soul Quest v. Garland*, Third Amended Verified Complaint, (M.D. Fla. April 22, 2020), (ECF No. 59, at ¶¶ 29, 31). The DEA asked only about diversion-control issues and provided suggestions to improve the control of Ayahuasca at the Church. *Soul Quest v. Garland*, Third Amended Verified Complaint, (M.D. Fla. April 22, 2020), (ECF No. 59)[3]. Yet, the DEA made this arbitrary assessment, assuming that Soul Quest Church personnel and members should simply, endlessly espouse these matters directly without any inquiry.

---

[3]Soul Quest Church adopted all such suggestions, including the placement of a DEA-recommended security system on Church property, reasonably believing that this was tantamount to achieving a settlement resolution of the litigation.

It does not appear that DEA made any assessment, whatsoever, nor that its personnel possessed any understanding of theology and spirituality. Rather, the two (2) DEA agents involved were drug enforcement agents with *zero* understanding of religious sincerity – either on a theological or constitutional level.

2. DEA's Arbitrary Determination that Soul Quest Church was Insufficiently Inclusive

DEA took issue with Soul Quest not requiring church members to profess belief in the *Ayahuasca Manifesto* or have continuing involvement with the Church. DEA arbitrarily assumed – without basis – that there was thus no sincere religious belief. Yet, most religious groups do not require that its members profess complete adherence to all aspects of the religion's beliefs. Indeed, there is considerable nuance between members of any faith. There are often members of a faith-based group who embrace certain aspects – or interpret aspects of the faith differently. Certainly, this is evident in larger faiths, such as the Catholic Church, where members of the clergy and its lay population possess different interpretations on the meaning and significance of aspects of its canon. Yet, in the case-at-bar the Appellees apparently wish to have the Government serve an unprecedented gatekeeping function – one which is entirely subject to the agency and its agents' whims – on Soul Quest Church and its members.

<u>DEA's Arbitrary Determination that Soul Quest Church was Not Sufficiently Sincere in Religious Beliefs Because It Required Members to Sign Waivers, and Because It Referenced Therapeutic Benefits.</u>

DEA took issue with the fact that members were required to sign medical and liability waiver forms before attending an ayahuasca ceremony. It is difficult to perceive how this requirement – so basic across society, and frequently used by religious faiths at any event involving any potential risk. *See https://www.jotform.com/form-templates/church-liability-release-waiver* (reflecting that such waivers are so basic as to be featured on template-driven websites). Certainly, this type of government-based shotgun approach to such a hallowed, protected right under U.S. law should be deterred.

The same is true of DEA's arbitrary determination that Soul Quest Church's provision of medical services, or the Church's claim of Ayahuasca possessing medical/therapeutic benefits, somehow is a disqualifying factor on the issue of religious sincerity. Yet, in many faiths, the therapeutic benefits of various religious practices – even prayer, itself – is often touted. *See, e.g.,* Rajaei Ali Reza*, Religious cognitive-emotional therapy: a new form of psychotherapy,* Iran J. Psychiatry (2010) (as referenced by the National Institute of Health).[4] It is apparent that DEA's aim in the case-at-bar was simply to conjure up pretexts to say "no."

---

[4]https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3430504/#:~:text=In%20summary%2C%20the%20therapist%20uses,and%20the%20meaning%20of%20life.

## C. Appellees Continuously Misstate the Scope & Legitimacy of Appellants' APA Claim.

The Appellees posturing regarding the Appellants' APA claim continues to rest almost entirely upon its misstatement of *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 140 S. Ct. 2367 (2020), as well as the erroneous notion that Appellees somehow possess some form of formal administrative authority under RFRA. Indeed, on the latter, it is this fundamentally-flawed premise driving the entirety of its arguments under 21 U.S.C. § 877. That section requires a actual, lawful administrative process; yet, here, no such process exists.

*Little Sisters* is about administrative authority to make and enact rules – something that has <u>never</u> occurred in the case-at-bar. The Appellees' 'sleight of hand,' miscasts this decision, in a rather transparent attempt to muddle the case's meaning and scope. The most significant quote from the case appears to undermine the ability of the Appellees to make determinations under RFRA. *Id.* at 2380 (mandating the acceptance of sincerely-held beliefs of religious entities); *see also Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) ("[s]tate interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion").

*Little Sisters* discusses how federal agencies come within the purview of the APA through an invocation of the 'good-cause exception' in order to "dispense with notice and comment and promulgate an [interim final rule] that carries the force of law. *Little Sisters,* 140 S. Ct. at 2374 (citing 5 U.S.C. § 553 (b)(3)(B)). Yet, in the case-at-bar, the Appellees have not asserted any 'good-cause exception.' The same issues exist in the other cases being erroneously promoted by Appellees as supportive of their position.

Indeed, how can they even attempt to do so: it has been sixteen (16) years since the Supreme Court's issuance of its *O Centro* decision? During that period, the Appellees have utterly failed to promulgate any rules or regulations pertaining to any ability to assess religious exemptions to the Controlled Substances Act. Instead, the Appellees fall cryptically upon a non-existent, non-binding ("*not carrying the force and effect of law*") 'process' as captured in 1½ page "Guidelines" contained on the DEA website. This is nothing more than the continuation of an abject subterfuge.

**D.  Appellees Misrepresent *O Centro* Decision as an "Endorsement" of DEA Regulatory Power.**

In the Appellees' Brief, at 17, they misrepresent that the *O Centro* Court endorsed the DEA's regulatory powers under RFRA, and apart from a court order. This is not the case.  *See O Centro,* 546 U.S. 418, at 433-34.

Rather, *O Centro* stood for two (2) propositions:

1.  Under RFRA's more focused inquiry, the Government's mere invocation of the general characteristics of Schedule I substances, including those containing DMT.  The Court, citing to its decision in *Touby v. U.S.*, 500 U.S. 160, 162 (1991), there is no indication Congress considered the harms posed by religious uses.  Indeed, the Court acknowledged that it could not ignore congressional classification and findings; in doing so, it recognized that the Government could not be relieved of its obligations to shoulder its focused, RFRA burden.  *O Centro,* 546 U.S. 418, at 420; and

2.  CSA authorizations to the Attorney General pertaining to waiver of requirements, consistent with public health and safety, does not carry determinative weight for RFRA purposes.  Peyote was specifically exempted by Congress under the CSA, and in consideration for the hundreds of thousands of Native Americans engaged in its ritual use.  However, as the *O Centro* Court made clear, such findings *do not preclude* consideration of a similar exception to the handful of members of the UDV Church.  *O Centro,*

546 U.S. 418, at 420 (citing to *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 547). Rather – just like in the case-at-bar – the Government's assertion of the existence of a *congressional* exemption for peyote <u>is not</u> indicative that the CSA preempts the <u>judicially-crafted</u> exceptions plainly-contemplated under RFRA. *O Centro,* 546 U.S. 418, at 421.

In other words, the Appellees somehow stretched the authority recognized by the Supreme Court as being limited to the judiciary, as being somehow now also applicable to the Executive Branch. This is not simply a stretch – it is a blatant misstatement of law. Yet, the Appellees continue to use such a device in arguing that it could use the process – however unlawfully – to avoid RFRA's plain delegation of authority to the judiciary, to somehow capture access to appellate court jurisdiction under 21 U.S.C. § 877. Respectfully, the Court of Appeals, herein, must defeat the Appellees' wearisome attempts in jurisprudential gymnastics.

## CONCLUSION

The matter before this Court involves two extraordinary issues. The first, is executive agencies' departure from well-established norms consistent with the constitutional separation of powers. Indeed, it appears plain that the Appellees have trounced over both Legislative and Judicial authority in this matter, and even violated Executive Branch mandates, all in an effort to achieve the end of depriving Appellants of their rights under RFRA. The second issue focuses entirely upon the

extraordinary aim and purpose of RFRA – namely, to safeguard the interests of individuals and institutions being permitted to express their sincere religious beliefs without the encroachment of governmental authorities. Yet, this is precisely what has arisen in this case. Accordingly, the Appellants reaffirm their request for relief.

### CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation, in accordance with Fed.R.App.P. 32(a)(7)(B), because this brief contains 3,198 words, excluding the parts of the motion exempted by Fed.R.App.P. 32(f).

Respectfully submitted this 12th of September 2022.

| | |
|---|---|
| */s/Derek B. Brett, Esq.* | */s/A. Brian Phillips, Esq.* |
| **DEREK B. BRETT, ESQ.** | **A. BRIAN PHILLIPS, ESQ.** |
| Fla. Bar No. 0090750 | Fla. Bar No. 0067113 |
| **BURNSIDE LAW GROUP** | **A. BRIAN PHILLIPS, P.A.** |
| 202 Brownlow Avenue, Suite 400 | 912 Highland Avenue |
| Dartmouth, NS, Canada B3B 1T5 | Orlando, Florida 32803 |
| Telephone: (902) 468-3066 | Telephone: (407) 872-0777 |
| Telecopier: (902) 468-4803 | Telecopier: (407) 872-0704 |
| Email:dbb@burnsidelaw.net | Email: |
| Lead Counsel for Appellants | Brian.Phillips@Phillips-Law-Firm.com |
| | Local Counsel for Appellants |

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, a true and correct copy of the foregoing brief was filed using CM/ECF that will automatically send a copy of this document to Assistant United States Attorney Lowell V. Sturgill.

*s/A. Brian Phillips*_____
A. Brian Phillips, Esq.
Local Counsel for Appellants