A. BRIAN PHILLIPS, P.A.

912 HIGHLAND AVENUE
ORLANDO, FLORIDA 32803
TELEPHONE: (407) 872-0777
TELECOPIER: (407) 872-0704
PHILLIPS-LAW-FIRM.COM



April 18, 2023

Via E-Filing | Original to Follow via Certified Mail: 7021 2720 0002 9744 0179 | RRR

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth Street N.W.
Atlanta, Georgia 30303

   re:  Soul Quest Church of Mother Earth, Inc., *et al.* v. US Drug Enforcement Admin., *et al,*
      Appeal No. 22-11072                  (11th Cir.)

To Whom It May Concern:

   Pursuant to Fed.R.App.P. 28(j) the undersigned counsel hereby advises the Clerk of a pertinent, recent filing by the Appellee in another matter involving an ayahuasca church's assertion of rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* (hereinafter, "RFRA"). The Appellants seek not to assert new arguments, but rather to provide "pertinent and significant legal authority" that comes to their attention "after oral argument but before decision ...." Hernandez Lara v. Barr, 962 F.3d 45, 52 (1st Cir. 2020). As used herein, supplementing the record is not limited to case jurisprudence but can simply "[inform] the court of important developments in related court proceedings (about which [the court] may take judicial notice), so long as those developments have a direct relation to the matters at issue." Loughran v. Wells Fargo Bank, N.A., 2 F.4th 640, 652 (7th Cir. 2021) (internal citations omitted).

   In Church of the Eagle & Condor, *et al.* v. Garland, *et al.,* (D. Az. 2023), Case No.: CV-22-01004-PHX-SRB, (Dk. 23, at p. 10-11) (hereinafter, "Eagle & Condor"), a case also involving an ayahuasca church's assertion of the Government's infringements on rights articulated under RFRA, the Government made assertions of law running completely contrary to its arguments in the case-at-bar. In Eagle & Condor, the Department of Justice, arguing on behalf of the Drug Enforcement Administration, asserted that ayahuasca churches *are required* to first submit to the Respondent DEA's "registration process" for a "RFRA exemption." Yet, in its arguments before this Court on January 25, 2023, the Appellee argued that there was no requirement for an ayahuasca church to submit to such a "registration process" for exemption. A copy of the Government's filing in Eagle & Condor is attached hereto as Exhibit A.

The inconsistencies underlying the Appellee's arguments in the case-at-bar, as well as the further reflection on the lack of any cohesive standards or legal authority under the Appellee's efforts to impose *ad hoc* rules upon ayahuasca churches and its members, necessitate the instant filing.

Sincerely,

Derek Brett, Esq.
Burnside Law Group
Lead Counsel

A. Brian Phillips, Esq.
A. Brian Phillips, P.A.
Local Counsel

Enclosure

cc: Lowell V. Sturgill, Jr., Lowell.Sturgill@usdoj.gov

Exhibit A

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor *et al.*, | 22-cv-01004 |
| Plaintiffs, | **MOTION TO DISMISS** |
| vs. | |
| Merrick Garland *et al.*, | |
| Defendants.* | |

---

* Christopher Magnus no longer serves as Commissioner of U.S. Customs and Border Protection and should be substituted with Troy Miller in his official capacity as Acting Commissioner of Customs and Border Protection as a Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES......................................................... 1

I.    BACKGROUND .................................................................................................... 2

    A.    Statutory and Regulatory Background ........................................................ 2

    B.    Factual Allegations...................................................................................... 4

    C.    Procedural Background ................................................................................ 5

II.   LEGAL STANDARDS .......................................................................................... 5

III.  LEGAL ARGUMENT ........................................................................................... 6

    A.    Plaintiffs' RFRA Claim (Count 1) Should Be Dismissed. ......................... 6

        1.    Plaintiffs' RFRA Claim Should Be Dismissed for Lack of
            Standing. ........................................................................................... 6

            a.    *Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution.* ...... 6

            b.    *Plaintiffs Fail To Demonstrate Associational Standing.* .............................. 8

        2.    Plaintiffs Fail To State a RFRA Claim........................................... 9

    B.    Plaintiffs' Constitutional Claims (Counts 2-7) Should Be Dismissed.............. 11

        1.    First Amendment—Free Exercise (Count 2) ........................................... 11

        2.    First Amendment—Establishment of Religion (Count 3) .................... 12

        3.    Fifth Amendment—Procedural Due Process (Count 4) ...................... 13

        4.    Fifth Amendment—Substantive Due Process (Count 5) ..................... 14

        5.    Fifth Amendment—Equal Protection (Count 6)................................... 14

        6.    Ninth Amendment—Unenumerated Rights (Count 7) ........................ 15

    C.    Plaintiffs Should Seek an Exemption from DEA in the First Instance. .......... 16

IV.   CONCLUSION ................................................................................................... 17

ii

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson,*
   355 F.3d 1179 (9th Cir. 2004) .......................................................................... 6

*Albright v. Oliver,*
   510 U.S. 266 (1994) ........................................................................................ 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................... 5, 6

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.,*
   733 F.3d 939 (9th Cir. 2013) .......................................................................... 8

*Barren v. Harrington,*
   152 F.3d 1193 (9th Cir. 1998) ........................................................................ 14

*Barton v. Comm'r,*
   737 F.2d 822 (9th Cir. 1984) ...................................................................... 15, 16

*Bd. of Regents of State Colls. v. Roth,*
   408 U.S. 564 (1972) ........................................................................................ 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................... 5

*Cetacean Cmty. v. Bush,*
   386 F.3d 1169 (9th Cir. 2004) .......................................................................... 8

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,*
   561 U.S. 661 (2010) ........................................................................................ 11

*Church of the Holy Light of the Queen v. Mukasey(CHLQ),*
   615 F. Supp. 2d 1210 (D. Or. 2009) .............................................................. 12

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................................ 6, 7

*Dorfmont v. Brown,*
   913 F.2d 1399 (9th Cir. 1990) ........................................................................ 13

*Emp't Div. v. Smith,*
   494 U.S. 872 (1990) ........................................................................................ 11

*Everson v. Bd. of Educ.,*
  330 U.S. 1 (1947) .................................................................................. 12

*Fleming v. Charles Schwab Corp.,*
  878 F.3d 1146 (9th Cir. 2017) ................................................................. 6

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal (O Centro),*
  546 U.S. 418 (2006) ....................................................... 2, 8-9, 12, 15

*Gutierrez v. Mun. Court of the Se. Jud. Dist.,*
  838 F.2d 1031 (9th Cir. 1988) ............................................................... 14

*Hernandez v. Comm'r,*
  490 U.S. 680 (1989) ............................................................................... 12

*Hunt v. Wash. State Apple Adver. Comm'n,*
  432 U.S. 333 (1977) ................................................................................. 8

*Jamali v. Maricopa Cnty.,*
  No. CV-13-00613-PHX-DGC, 2013 WL 5705422 (D. Ariz. Oct. 21, 2013) ............ 15

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ................................................................................. 5

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................................. 6

*McCarthy v. Madigan,*
  503 U.S. 140 (1992) ............................................................................... 16

*Montana Caregivers Ass'n, LLC v. United States,*
  526 F. App'x 756 (9th Cir. 2013) ........................................................... 15

*Morrison-Knudsen Co. v. CHG Int'l, Inc.,*
  811 F.2d 1209 (9th Cir. 1987) ............................................................... 16

*Navajo Nation v. U.S. Forest Serv.,*
  535 F.3d 1058 (9th Cir. 2008) ......................................................... 10, 11

*Nelsen v. King Cty.,*
  895 F.2d 1248 (9th Cir. 1990) ................................................................. 7

*Perkel v. U.S. Dep't of Just.,*
  365 F. App'x 755 (9th Cir. 2010) ........................................................... 17

*Reynolds v. U.S.,*

iv

98 U. S. 145 (1878) .................................................................................. 12

*Rossides v. Gonzales,*
210 F. App'x 711 (9th Cir. 2006) ........................................................... 7

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ............................................................... 5

*San Diego Cty. Gun Rs. Comm'n v. Reno,*
98 F.3d 1121 (9th Cir. 1996) ............................................................ 7, 15

*Schowengerdt v. United States,*
944 F.2d 483 (9th Cir. 1991) ............................................................... 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,*
806 F.2d 1393 (9th Cir. 1986) ............................................................... 6

*Short v. Berger,*
No. CV-22-00444-PHX-DJH, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022)
*appeal filed,* No. 22-15755 (9th Cir. May 18, 2022) ............................... 9

*Simon v. Henning,*
No. EDCV 13-2281 RGK (MAN), 2014 WL 12853094 (C.D. Cal. Jan. 7, 2014) ............. 14

*Thomas v. Anchorage Equal Rts. Comm'n,*
220 F.3d 1134 (9th Cir. 2000) .......................................................7, 8, 10

*United Pub. Workers of Am. (C.I.O.) v. Mitchell,*
330 U.S. 75 (1947) ............................................................................... 15

*United States v. California Care Corp.,*
709 F.2d 1241 (9th Cir. 1983) .........................................................16, 17

*United States v. Christie.,*
825 F.3d 1048, 1061 (9th Cir. 2016) ...................................................... 9

*United States v. Seljan,*
547 F.3d 993 (9th Cir. 2008) ............................................................... 10

*United States v. Tawahongva,*
456 F. Supp. 2d 1120 (D. Ariz. 2006) ................................................... 11

*W. Radio Servs. Co. v. Qwest Corp.,*
530 F.3d 1186 (9th Cir. 2008) ............................................................. 17

*W. Watersheds Project v. Kraayenbrink,*

v

632 F.3d 472 (9th Cir. 2011) ........................................................ 8

*Washington v. Davis,*
    426 U.S. 229, (1976) ........................................................ 14

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ........................................................ 6

*Williams v. California,*
    764 F.3d 1002 (9th Cir. 2014) ........................................................ 11, 12

**Constitution**

U.S. Const. amend. I ........................................................ 11, 12

**Statutes**

21 U.S.C. § 801 ........................................................ 1

21 U.S.C. § 812 ........................................................ 1, 2

21 U.S.C. § 823 ........................................................ 1, 2, 3,8

21 U.S.C. § 880 ........................................................ 3

21 U.S.C. § 954 ........................................................ 1, 2, 3

21 U.S.C. § 958 ........................................................ 2.8

42 U.S.C. § 2000bb–1(b) ........................................................ 1, 6, 8, 15

**Regulations**

21 C.F.R. § 1301.31 ........................................................ 2

21 C.F.R. §§ 1301.01-1301.52 ........................................................ 1, 2

21 C.F.R. § 1301.34 ........................................................ 3

21 C.F.R. §§ 1301.71-1301.76 ........................................................ 3

21 C.F.R. §§ 1301.90-1301.93 ........................................................ 3

21 C.F.R. §§ 1304.21-1304.22 ........................................................ 3

21 C.F.R. §§ 1312.11-1312.15 ........................................................ 3, 13

21 C.F.R. §§ 1316.01-1316.13.................................................................................3

**Federal Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................5

Fed. R. Civ. P. 25(d) .............................................................................................i

**Other Authorities**

U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20, 2020), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 14, 2022) Guidance) ..............................................................................................2, 3, 15, 16

LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW
    776 n.14 (2d ed. 1998) .................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Defendants hereby move to dismiss Counts 1 through 7 of Plaintiffs' Complaint

2    (Doc. 1) with prejudice, or, in the alternative, to stay the case while Plaintiffs pursue a religious

3    exception from the Drug Enforcement Administration (DEA). This motion is supported by

4    the following memorandum of points and authorities and by all matters of record.

5                      **MEMORANDUM OF POINTS AND AUTHORITIES**

6    This case concerns a hallucinogenic substance called dimethyltryptamine (DMT).

7    Under the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, the importation and use

8    of substances listed in Schedule I are strictly controlled due to the high risk of abuse and lack

9    of accepted medical use, *id.* § 812(b)(1). To that end, anyone seeking to handle such controlled

10   substances must register with DEA. 21 U.S.C. §§ 823, 954; 21 C.F.R. §§ 1301.01-1301.52.

11   DMT is included in Schedule I.

12   According to the Complaint, more than two years ago, a package addressed to a

13   Plaintiff in this action arrived at the Port of Los Angeles from Peru. That package contained

14   ayahuasca, a tea brewed from plants containing DMT. Plaintiffs do not allege to have had an

15   import registration. U.S. Customs and Border Protection (CBP) seized the package. Plaintiffs

16   allege they received a note from the Department of Homeland Security (DHS) indicating

17   seizure of a controlled substance. Plaintiffs state they never received any other

18   communications from the Government.

19   With those factual allegations, Plaintiffs bring this lawsuit asserting numerous claims,

20   including one under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–

21   1(b), and several others under the Constitution, all derivative of the RFRA claim. But Plaintiffs'

22   RFRA claim cannot survive for at least two reasons. First, Plaintiffs have not demonstrated

23   standing. And, second, Plaintiffs have failed to state a claim under Rule 12(b)(6) as they have

24   not adequately alleged that their religious beliefs have been substantially burdened. To that

25   end, this Court should dismiss Counts 1 through 7 of Plaintiffs' Complaint with prejudice.

26   Plaintiffs make an extraordinary request for relief with this lawsuit: that the Court order

27   DEA to grant a religious exemption Plaintiffs have never requested. Accordingly, and as an

28

                                              1

alternative basis for resolving this motion, Defendants request that the Court exercise its discretion to decline to review Plaintiffs' claims until after they have sought an exemption from DEA. Doing so would allow DEA to evaluate in the first instance whether Plaintiffs are eligible for an exemption, including but not limited to determining whether Plaintiffs can adequately protect against the risk that the controlled substance would be diverted.

## I.   BACKGROUND

### A.   Statutory and Regulatory Background

The CSA regulates the use of psychotropic substances, including "Schedule I" controlled substances, which are strictly controlled owing to the high risk of abuse and lack of accepted medical use. 21 U.S.C. § 812(b)(1). As relevant here, DEA has authority to register an applicant to import, distribute, dispense, or manufacture the hallucinogenic compound N, N-dimethyltryptamine, known as DMT, and substances containing it, when doing so is consistent with the public interest. *Id.* § 823(b); 21 C.F.R. § 1301.31.

Through the CSA, Congress created a closed regulatory system to control and monitor controlled substances in the United States. Under this system, all parties—including health care professionals, pharmacists, medical researchers, and religious adherents—wishing to handle controlled substances must register with DEA. 21 U.S.C. §§ 823, 954; 21 C.F.R. §§ 1301.01-1301.52. This registration system ensures that controlled substances are safely handled and properly safeguarded to prevent loss, theft, and diversion to illicit use. 21 U.S.C. §§ 823, 958. DEA is statutorily authorized to create exemptions from the CSA's prohibitions. *Id.* § 823. Prior to *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal (O Centro)*, 546 U.S. 418 (2006), no process existed for an individual who wished to use a controlled substance for religious purposes to obtain formal permission to do so. That is no longer the case.

In response to *O Centro*, DEA created a religious-exemption process for petitioners who establish that the CSA burdens their sincere religious beliefs.[1] Referred to herein as the

---

[1] U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20,

Guidance, this process allows DEA to consider a petitioner's request based on their sincere religious belief to be granted a registration to manufacture, distribute, dispense, import, export, use, or possess a controlled substance for religious purposes or to otherwise be exempted from provisions of the CSA and its implementing regulations for religious purposes. Importantly, this process also allows DEA to, among other things, weigh an individual's or organization's proposed safeguards to ensure that the controlled substance will not be diverted to illegal uses and to consider the risks of harm posed by a particular substance. That is because, under the CSA, DEA may only register an applicant to handle a Schedule I substance when doing so is consistent with the public interest. 21 U.S.C. §§ 823, 958. DEA considers a number of factors in evaluating religious-exemption applications, including but not limited to whether the registrant would maintain effective controls against diversion.[2] For example, the Guidance asks a petitioner to list "each specific religious practice" involving the controlled substance, as well as "the amounts, conditions, and locations of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession." Guidance, *supra* note 1, at 1-2.

Any DEA registrant wishing to import controlled substances into the United States must apply for a permit each time it wishes to import the substance, and the approved permit must accompany the shipment. 21 C.F.R. §§ 1301.34, 1312.11-1312.14. CBP relies on DEA's import-permitting system to ensure only lawfully imported controlled substances enter the country. As a matter of course, if CBP intercepts a nonpermitted Schedule I controlled substance, CBP will seize and summarily forfeit the substance. *Id.* § 1312.15.

---

2020) https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 15, 2022) (Guidance).

[2] DEA regulations require, inter alia, security, storage, and theft/loss avoidance measures, 21 C.F.R. §§ 1301.71-1301.76; record-keeping and inventory regarding importation, receipt, distribution, and disposal of controlled substances, *id.* §§ 1304.21-1304.22; DEA access for inspections and audits, 21 U.S.C. § 880; 21 C.F.R. §§ 1316.01-1316.13; and employee screening procedures, 21 C.F.R. §§ 1301.90-1301.93.

1

**B.   Factual Allegations**

2       Plaintiff the Church of the Eagle and the Condor (CEC) alleges it is "a religion rooted

3   in Indigenous spirituality whose essential sacrament is the holy tea, *ayahuasca*." Compl. ¶ 16;

4   *see id.* ¶ 2 ("The Church is a religious community dedicated to the spiritual reunification of

5   humanity in fulfillment of the Prophesy of the Eagle and the Condor."). Ayahuasca is a tea

6   brewed from plants containing DMT, a Schedule I controlled substance under the CSA. *See*

7   *id.* ¶¶ 16, 25. Plaintiff Joseph Tafur acts as "Spiritual Leader" of the Church as well as

8   "ceremonialist for the ayahuasca ceremony." *Id.* ¶¶ 1, 42. Other Plaintiffs include a member

9   of the Board of Directors and three additional members, all of whom, the Complaint states,

10  "are aware that *ayahuasca* is proscribed by law" and are "violating and intend to continue to

11  violate applicable law." *Id.* ¶¶ 16-19, 44, 77. Plaintiffs allege they have been meeting over the

12  past four years "for prayer, ceremonies, gatherings, and sweat lodges." *Id.* ¶ 44.

13      More than two years ago, in September 2020, Plaintiffs allege CBP "interdicted

14  *ayahuasca* being sent" to Plaintiffs from "Peru through the Port of Los Angeles." *Id.* ¶ 50. The

15  Complaint states that Tafur "received a small, approximately 3" x 2.5" note displaying the

16  [DHS] seal and the following text":

17              Notice: Narcotics and/or other contraband prohibited from
              entry into the United States, have been seized and removed for
18              appropriate action under 19CFR145.509. You will be receiving
              correspondence from our Fines, Penalties and Forfeitures
19              Branch in the near future.

20  *Id.* Plaintiffs state there was "no further correspondence" following receipt of the alleged note.

21  *Id.* ¶ 52. Plaintiffs have continued, and plan to continue, using ayahuasca. *See, e.g., id.* ¶ 44

22  (stating that CEC and its members "continue on a regular basis, to use *ayahuasca* in ceremonies"

23  and "continue to import, possess, and use their sacrament (*ayahuasca*) and have no plans to

24  stop doing so"); *see also, e.g., id.* ¶¶ 16-19, 77. Plaintiffs do not allege they applied for a religious

25  exemption from the CSA under the Guidance.

26

27

28

4

C.    **Procedural Background**

Plaintiffs filed this action against Merrick Garland, Attorney General of the United States, Alejandro Mayorkas, Secretary of DHS, Anne Milgram, DEA Administrator, and Christopher Magnus, then-Commissioner of CBP, *see supra* page i, asserting nine claims:

| Claim for Relief | | Defendant(s) |
|---|---|---|
| 1 | Religious Freedom Restoration Act (RFRA) | All Defendants |
| 2 | First Amendment—Free Exercise | All Defendants |
| 3 | First Amendment—Establishment of Religion | All Defendants |
| 4 | Fifth Amendment—Procedural Due Process | CBP |
| 5 | Fifth Amendment—Substantive Due Process | CBP |
| 6 | Fifth Amendment—Equal Protection | All Defendants |
| 7 | Ninth Amendment—Unenumerated Constitutional Rights | All Defendants |
| 8 | Freedom of Information Act | CBP |
| 9 | Freedom of Information Act | DEA |

Compl. ¶¶ 20-24. Counts 1 through 7 arise from the alleged seizure of improperly imported ayahuasca. As its principal form of relief, Plaintiffs ask this Court for an injunction ordering "Defendants to permit Plaintiffs' importation, use, preparation of, and distribution . . . of . . . *ayahuasca* tea . . . and enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members . . . with arrest, prosecution, and/or imprisonment." *Id.* ¶ 89.

Defendants now move to dismiss Counts 1 through 7 without leave to amend,[3] or, in the alternative, to stay the case while Plaintiffs pursue a religious exemption from DEA.

## II.    **LEGAL STANDARDS**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) attacks can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires a plaintiff to allege sufficient facts to allow

---

[3] Defendants certify that they attempted to meet and confer with Plaintiffs' counsel regarding this motion. Plaintiffs declined to amend their complaint.

1    the court to "draw the reasonable inference that the defendant is liable for the misconduct

2    alleged." *Id.* "[C]onclusory allegations of law and unwarranted inferences are insufficient to

3    defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see Iqbal*,

4    556 U.S. at 678-79. Leave to amend the complaint should be denied if "allegations of other

5    facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber*

6    *Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

7    **III.    LEGAL ARGUMENT**

8          **A.    Plaintiffs' RFRA Claim (Count 1) Should Be Dismissed.**

9          This Court should dismiss Plaintiffs' RFRA[4] claim on two bases: (1) lack of standing,

10   and (2) failure to state a plausible claim.

11               **1.    Plaintiffs' RFRA Claim Should Be Dismissed for Lack of Standing.**

12               *a.    Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution.*

13         Plaintiffs ask this Court to enter an injunction ordering "Defendants to permit

14   Plaintiffs' importation, use, preparation of, and distribution . . . of . . . ayahuasca tea . . . and

15   enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members of

16   the Church with arrest, prosecution, and/or imprisonment." Compl. ¶ 89. But without more,

17   Plaintiffs are not entitled to this relief—and have no standing to claim it.

18         To demonstrate Article III standing, Plaintiffs must show that each provision they

19   challenge has caused them a concrete and particularized "injury in fact" that is "actual or

20   imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61

21   (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To establish an injury-in-fact

22   to support a claim for injunctive relief, "[p]ast exposure to illegal conduct does not in itself

23   show a present case or controversy." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1

24   (9th Cir. 2017) (alteration in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

25   (1983)). Instead, there must be a "sufficient likelihood that [the plaintiff] will again be wronged

26

27   [4] RFRA, 42 U.S.C. § 2000bb–1(b), provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of

28   advancing a compelling interest.

1    in a similar way." *Lyons*, 461 U.S. at 111. Where, as here, the allegedly feared future harm is

2    prosecution, there must be a "genuine threat of imminent prosecution," and "neither the mere

3    existence of a proscriptive statute nor a generalized threat" is sufficient. *Thomas v. Anchorage*

4    *Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Plaintiffs' broad claim for injunctive

5    relief fails for multiple reasons.

6         ***First***, Plaintiffs base their claim for relief entirely on a single allegation of past harm—

7    namely, the alleged September 2020 seizure. Even assuming that the past seizure qualifies as

8    harm, "the Supreme Court has concluded that past exposure to harm is largely irrelevant when

9    analyzing claims of standing for injunctive relief that are predicated upon threats of future

10   harm." *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see Lyons*, 461 U.S. at 108.

11        ***Second***, Plaintiffs have not demonstrated a threat to initiate proceedings that would

12   support pre-enforcement standing. Plaintiffs fail to allege that Defendants "have

13   communicated a specific warning or threat to initiate proceedings" against them. *Thomas*, 220

14   F.3d at 1139; *see Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (explaining that

15   there is no standing where "[n]o prosecuting authorities have ever communicated a specific

16   threat or warning to initiate proceedings against [plaintiff]"). Rather, Plaintiffs' allegations

17   involve communications that, at most, constitute generalized statements. The alleged note

18   indicated only that "[n]arcotics and/or other contraband prohibited from entry into the United

19   States, have been seized and removed for appropriate action under 19[ ]CFR [§] 145.509. You

20   will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near

21   future." Compl. ¶ 50. That communication, which Plaintiffs confirm included no follow-up

22   or any penalty, does not credibly rise to the level of "genuine threat[s] of imminent

23   prosecution," but rather serves as a general reference to "the mere existence of a proscriptive

24   statute," which cannot support standing for a pre-enforcement challenge. *Thomas*, 220 F.3d at

25   1139; *see San Diego Cty. Gun Rs. Comm'n v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (citing cases

26   for the proposition that "a general threat of prosecution is not enough to confer standing").

27

28

7

1     ***Third***, there is also no demonstrated history or pattern of past prosecution or

2     enforcement against Plaintiffs alleged in the Complaint. Indeed, Plaintiffs have not identified

3     any past federal prosecutions of anyone for ayahuasca use, further undermining their claim

4     that they face a genuine threat of imminent prosecution.

5                    *b.      Plaintiffs Fail To Demonstrate Associational Standing.*

6            Plaintiff CEC appears to assert associational standing to sue on behalf of its members.

7     *See* Compl., Caption (stating CEC is suing "on its own behalf, and on behalf of its members");

8     *id.* ¶ 7 ("seek[ing] a preliminary order . . . to enjoin Defendants from actually arresting and

9     prosecuting[] the Church members who partake in the sacramental tea"); *see also id.* Prayer for

10    Relief ¶¶ 84, 86, 89. An association may bring suit on its members' behalf when: "(a) its

11    members would otherwise have standing to sue in their own right; (b) the interests it seeks to

12    protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

13    relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash.*

14    *State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Because Plaintiffs do not satisfy the first

15    or third factor, they fail to demonstrate associational standing.

16           As explained above, *supra* Section III.A.1.a, the Complaint does not sufficiently allege

17    that any member faces the requisite "genuine threat of imminent prosecution." *Thomas*, 220

18    F.3d at 1139. Thus, CEC fails to establish that "at least one of [its] members has 'suffered

19    sufficient injury to satisfy the case or controversy requirement of Article III.'" *Ass'n of Pub.*

20    *Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 949 (9th Cir. 2013) (quoting *Cetacean*

21    *Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)); *see also W. Watersheds Project v. Kraayenbrink*,

22    632 F.3d 472, 483 (9th Cir. 2011).

23           Moreover, Plaintiffs' RFRA claim "requires the participation of individual members in

24    the lawsuit," *Hunt*, 432 U.S. at 343, and cannot be brought in a representative capacity. RFRA

25    requires the Court to identify the contours of "*a person's*" sincere religious belief to determine

26    whether it is substantially burdened and, if so, to decide whether the "application of the burden

27    *to the person*" is justified. 42 U.S.C. § 2000bb-1(a)-(b) (emphases added); *see also O Centro*, 546

28

8

U.S. at 430-31 (explaining that RFRA contemplates "an inquiry more focused than [a] categorical approach" because it requires "application of the challenged law 'to the person'— the particular claimant whose sincere exercise of religion is being substantially burdened"); *Short v. Berger*, No. CV-22-00444-PHX-DJH, 2022 WL 1203876, at *12 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022) (explaining that RFRA "analysis requires the government to consider its actions as applied 'to the person' who is affected"). While there are church members identified as Plaintiffs in this lawsuit, the Complaint does not include an individual attestation from each member indicating that their sincerely held religious beliefs are being substantially burdened by the Government's actions. The Complaint contains only generalized allegations that the Church's members are "substantially burdened" by federal drug laws. *See, e.g.*, Compl. ¶ 64. These allegations cannot support associational standing.

### 2.     Plaintiffs Fail To State a RFRA a Claim.

Plaintiffs' RFRA claim also fails to state a claim upon which relief could be granted. RFRA requires a threshold showing that "application of the Controlled Substances Act would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro*, 546 U.S. at 428. Here, Plaintiffs have fallen far short of that threshold showing.

As an initial matter, even assuming that the CEC is in fact "a religion" and "religious community," as alleged, Compl. ¶ 16, Plaintiffs have failed to satisfy their burden that its alleged members share the same religious beliefs about ayahuasca, and that all practitioners use ayahuasca with a religious mindset. *See O Centro*, 546 U.S. at 428 (requiring "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened"); *see also United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016). Plaintiffs "cannot simply point to other groups who have won accommodations for [religious ayahuasca use] . . . and say 'we'll have what they're having.'" *Id.*

Moreover, Plaintiffs have failed to plead a substantial burden. On this point, Plaintiffs allege that "seizing Plaintiffs' sacramental tea and continuing to hold the threat of seizure and criminal prosecution over their heads constitute a substantial burden on Plaintiffs' religious

1   practice and beliefs." Compl. ¶ 64. But, based on these allegations, Plaintiffs fail to sufficiently

2   plead that they have been or would be "coerced to act contrary to [their] religious beliefs."

3   *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc).

4       ***First***, a general risk of seizure—or even an actual seizure—of a Schedule I controlled

5   substance is not itself sufficient proof of a substantial burden where Plaintiffs continue to

6   practice without seeking a DEA registration to abate the risk of seizure. Here, the Complaint

7   admits repeatedly that Plaintiffs have continued and plan to continue using ayahuasca. *E.g.*,

8   Compl. ¶ 44 ("[T]he Church and its members continue to import, possess, and use their

9   sacrament (*ayahuasca*) and have no plans to stop doing so . . . ."); *see also, e.g., id.* ¶¶ 16-19, 77.

10      ***Second***, Plaintiffs, as explained above, *supra* Section III.A.1.a, have not pleaded a

11  genuine threat of actual prosecution. Plaintiffs' threadbare allegation concerning threat of

12  prosecution stems from the "small . . . note" received after CBP seized the package containing

13  ayahuasca. Compl. ¶¶ 50-51. Neither the seizure nor the alleged note can establish any genuine

14  threat of imminent prosecution. DHS has broad authority to inspect all packages entering the

15  United States without any individualized suspicion, *United States v. Seljan*, 547 F.3d 993, 999

16  (9th Cir. 2008), and Plaintiffs do not claim the sole seizure, which occurred more than two

17  years ago, *id.* ¶ 50, stemmed from any investigation aimed at them. Instead, the seizure resulted

18  from a lack of registration and a failure to obtain the necessary import permits from DEA,

19  without which importation of controlled substances is prohibited and subject to seizure as a

20  matter of course. And again, the note contains no individualized threat of prosecution, but,

21  rather, a generalized reference to "the mere existence of a proscriptive statute." *Thomas*, 220

22  F.3d at 1139; *see supra* Section III.A.1.a. To the extent a reference to "receiving correspondence

23  from our Fines, Penalties and Forfeitures Branch" can be credibly construed as a threat of

24  prosecution, Plaintiffs admit that threat never materialized. Compl. ¶ 50.

25      ***Last***, Plaintiffs' grievances stem from the fact that Plaintiffs lack a DEA registration.

26  But Plaintiffs have not alleged that they applied for and were denied a registration. Nor have

27  they pleaded that they would be "coerced to act contrary to [their] religious beliefs" by seeking

28

1   a RFRA exemption. *Navajo Nation*, 535 F.3d at 1069-70; *see, e.g.*, *United States v. Tawahongva*, 456

2   F. Supp. 2d 1120, 1132 (D. Ariz. 2006) (finding RFRA plaintiff was not substantially burdened

3   "by the requirement that he acquire a permit"). If Plaintiffs successfully obtained a registration

4   through the RFRA exemption process, they could obtain import permits and not risk seizure

5   of their ayahuasca. While Plaintiffs claim there is "no adequate remedy," Compl. ¶ 62, this

6   formal process clearly provides them with a means to pursue the remedy they seek here.

7         **B.    Plaintiffs' Constitutional Claims (Counts 2-7) Should Be Dismissed.**

8         The Complaint asserts six causes of action for constitutional violations: two claims

9   under the First Amendment, three under the Fifth Amendment, and one under the Ninth

10   Amendment. But these claims are largely derivative of, and overlapping with, Plaintiffs' RFRA

11   claim. None has any factual specificity, or basis in law, and all should be dismissed.

12         **1.    First Amendment—Free Exercise (Count 2)**

13         The First Amendment provides that "Congress shall make no law . . . prohibiting the

14   free exercise" of religion. U.S. Const. amend. I. "In order to establish a violation of the Free

15   Exercise Clause, a plaintiff must establish that the challenged conduct resulted in an

16   impairment of the plaintiff's free exercise of genuinely held beliefs." *Williams v. California*, 764

17   F.3d 1002, 1011 (9th Cir. 2014). Critically, though, "the right of free exercise does not relieve

18   an individual of the obligation to comply with a valid and neutral law of general applicability

19   on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or

20   proscribes)." *Id.* at 1011-12 (quoting *Emp't Div. v. Smith,* 494 U.S. 872, 879 (1990)). Put

21   differently, "the Free Exercise Clause does not inhibit enforcement of otherwise valid

22   regulations of general application that incidentally burden religious conduct." *Christian Legal*

23   *Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010).

24   That is exactly the case here. Plaintiffs do not appear to contest that the CSA is a neutral law

25   of general applicability. *See* Compl. ¶¶ 67-68. And, as discussed earlier, *supra* Section III.A.2,

26   Plaintiffs have not shown that a governmental action has substantially burdened their religious

27

28

practice, as Plaintiffs admit in the Complaint that they continue to practice their religion and participate in ayahuasca ceremonies. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

**2.    First Amendment—Establishment of Religion (Count 3)**

Plaintiffs allege that the Government's accommodation (emerging from litigation prior to issuance of DEA's Guidance) of two other religious groups, to the exclusion of CEC, violates the Establishment Clause of the First Amendment. Compl. ¶¶ 68-69; *see O Centro*, 546 U.S. 418 (2006); *Church of the Holy Light of the Queen v. Mukasey* (*CHLQ*), 615 F. Supp. 2d 1210 (D. Or. 2009).

The Establishment Clause prohibits the Government from enacting a law "respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has explained that the Establishment Clause "means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. . . . [T]he [Establishment] [C]lause . . . was intended to erect a 'wall of separation between Church and State.'" *Everson v. Bd. of Educ.*, 330 U.S. 1, 15-16 (1947) (quoting *Reynolds v. U.S.*, 98 U. S. 145 (1878)); *see also Williams*, 764 F.3d at 1013.

Plaintiffs offer no factual allegations to support their Establishment Clause claim except simply pointing to two other organizations. But the Complaint's reliance on UDV and CHLQ as comparators is misplaced: both of those cases involve differently situated Plaintiffs, and both pre-dated the Guidance process as an available means of seeking a religious exemption. In *O Centro*, on appeal from a preliminary injunction, the Supreme Court held that RFRA requires "case-by-case consideration of religious exemptions" even for "exceptionally dangerous" Schedule I substances. 546 U.S. at 430-36. In *O Centro*, however, the federal authorities had actually "threatened [the plaintiffs] with prosecution," *id.* at 425, and applied the CSA without exception, *id.* at 430. Since *O Centro*, DEA has considered religious-based exemptions through the Guidance process that Plaintiffs apparently have declined to use. And *CHLQ*, the other case the Complaint references, likewise predated the Guidance. Plaintiffs' bare contention that they are "in the same position" as the Plaintiffs in those cases cannot

12

serve as the basis for an Establishment Clause claim, particularly given the intervening issuance of the Guidance, which was designed to facilitate the very accommodations that the Court found lacking in *O Centro*. Yet Plaintiffs ignore this Guidance, both factually and legally.

### 3.    Fifth Amendment—Procedural Due Process (Count 4)

Plaintiffs' allegation that CBP's September 2020 seizure of the ayahuasca package suffices to make out a Procedural Due Process claim is likewise flawed. Plaintiffs allege that the seizure of their ayahuasca "without any notice and without an opportunity to be heard deprived Plaintiffs of their ownership, possession, and use of their sacramental tea, *ayahuasca*." Compl. ¶ 71. But because they have not shown a cognizable property interest in the package, Plaintiffs' claim must be dismissed.

Due process requirements "do not apply unless [Plaintiffs] can first show that [they have] a cognizable liberty or property interest." *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990). "Where there is no right, no process is due under the Constitution." *Id.* Here, Plaintiffs have not shown they have a property interest in a package containing a controlled substance imported without a permit. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). *Roth*, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," which is to say, the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

In this case, no person or entity has an entitlement to import a controlled substance without an importation permit under the CSA. To the contrary, under the "existing rules," when CBP intercepts a non-permitted Schedule I controlled substance, CBP will seize the shipment, and it will be forfeited. *See* 21 C.F.R. § 1312.15.

13

### 4.    Fifth Amendment—Substantive Due Process (Count 5)

Plaintiffs' Substantive Due Process claim against CBP also lacks merit. In support of this claim, Plaintiffs allege that CBP, "in confiscating [their ayahuasca], in continuing to threaten prosecution of Plaintiffs, in continuing threats to confiscate the sacrament and to prosecute Plaintiffs and other members of the Church who in the future attempt to worship according to the central tenets of their religion," violated the Due Process Clause of the Fifth Amendment. Compl. ¶ 73.

But this claim fails as a matter of law. Where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Simon v. Henning*, No. EDCV 13-2281 RGK (MAN), 2014 WL 12853094, at *5 (C.D. Cal. Jan. 7, 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, because Plaintiffs' claims are grounded in the First Amendment's right to free exercise, Plaintiffs cannot also pursue a generalized substantive due process claim under the Fourteenth Amendment. *See, e.g., Simon*, 2014 WL 12853094, at *5 (dismissing substantive due process claim on this basis).

### 5.    Fifth Amendment—Equal Protection (Count 6)

Plaintiffs' Equal Protection claim also cannot survive this motion. As the basis of this claim, Plaintiffs state that Defendants' alleged "denial of the use of ayahuasca" violates the Due Process Clause of the Fifth Amendment because "Plaintiffs are similarly situated to other churches," such as UDV and Santo Daime, "that are not denied such rights." Compl. ¶ 75.

To make out "a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239-40, (1976)); *see also Gutierrez v. Mun. Court of the Se. Jud. Dist.*, 838 F.2d 1031, 1047 (9th Cir. 1988) (explaining that purposeful discrimination is an essential element of an equal protection claim). Here, even assuming Plaintiffs have made a sufficient showing that they are members

of a protected class, they have plainly not provided any allegations of purposeful discrimination, much less any allegations based on protected status. As described above, the two groups Plaintiffs describe are differently situated. *See supra* Section III.B.2.

Moreover, the Equal Protection claim is entirely dependent on Plaintiffs' flawed RFRA claim. RFRA itself, as a matter of law, requires an individualized determination "to the person." 42 U.S.C. § 2000bb-1(a)-(b); *see O Centro*, 546 U.S. at 430-36 (requiring "case-by-case consideration of religious exemptions"); *see also* Guidance, *supra* note 1. An Equal Protection claim, which depends on differential treatment among the same members of a protected class, cannot logically survive where the underlying right depends on the *individualized* assessment of the religious beliefs of a particular group. For that separate reason, Plaintiffs' Equal Protection claim must be dismissed.

### 6.    Ninth Amendment—Unenumerated Rights (Count 7)

This Court should also dismiss Plaintiffs' Ninth Amendment claim, which is undeveloped, conclusory, and lacks merit. The Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *San Diego Cty. Gun Rts. Comm.*, 98 F.3d at 1125 (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)). Indeed, as this Court has explained, the Ninth Amendment is not "a source of substantive rights." *Jamali v. Maricopa Cnty.*, No. CV-13-00613-PHX-DGC, 2013 WL 5705422, at *3 (D. Ariz. Oct. 21, 2013) (citing *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 96 (1947); LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW, 776 n.14 (2d ed. 1998) ("It is a common error, but an error nonetheless, to talk of 'ninth amendment rights.' The ninth amendment is not a source of rights as such; it is simply a rule about how to read the Constitution.")).

To that end, as "long as Congress acts pursuant to an enumerated power, and does not exceed a 'specific limitation' on that power, an 'objection . . . that the exercise of [that] power infringes upon rights served by the ninth and tenth amendments . . . must fail.'" *Montana Caregivers Ass'n, LLC v. United States*, 526 F. App'x 756, 758 (9th Cir. 2013) (quoting *Barton v.*

*Comm'r*, 737 F.2d 822, 823 (9th Cir. 1984) (per curiam)). Here, Plaintiffs cite no authority in support of a Ninth Amendment claim, which is entirely derivative of their RFRA claim.

### C. Plaintiffs Should Seek an Exemption from DEA in the First Instance.

As an alternative basis for resolving the instant motion, the Court should exercise its discretion to decline to review Plaintiffs' claims at this juncture. Plaintiffs ask the Court to order DEA to grant a religious exemption that Plaintiffs have not yet requested from DEA. Plaintiffs have not argued that they are burdened by the application process under the Guidance. And as a form of relief, Plaintiffs seek an injunction that amounts to an exception from the CSA. As a matter of sensible governance and judicial economy, DEA should be afforded the opportunity in the first instance to evaluate Plaintiffs' potential eligibility for an exemption, including, but not limited to, whether Plaintiffs' current importation and distribution procedures adequately protect against diversion of the controlled substance.

If the Court does not dismiss this action, it should stay the case until Plaintiffs complete the administrative process. This approach would strike the proper balance between "the agency's interest in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient, independent administrative system," and Plaintiffs' interest "in finding adequate redress." *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987). Further, Courts have discretion to decline to exercise review on administrative exhaustion grounds even when the governing statutes and regulation do not make exhaustion mandatory. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). DEA created a religious-exemption process for petitioners who establish that the CSA burdens their sincere religious beliefs. Guidance, *supra* note 1. Because Plaintiffs have not yet requested that exemption, an order deferring further litigation until the administrative process has run its course is warranted. *See United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (outlining factors justifying a court's discretionary power to require administrative exhaustion).

Such an order is proper for at least three reasons. *First*, DEA has the "agency expertise" in diversion prevention "to generate a proper record and reach a proper decision"

16

1    regarding possible accommodations that would both ensure that sincere religious exercise is
2    not substantially burdened and that controlled substances are not diverted to improper, secular
3    uses. *Id.*; *see also W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1201 (9th Cir. 2008) ("The
4    agency is thus much better situated than the district court to 'mak[e] a proper record' and
5    determine the facts [at issue] . . . ."). The traditional tools of civil discovery—which are
6    comparatively burdensome and inflexible—are a poor substitute for DEA's pre-registration
7    investigation process. To provide DEA with the material it needs to make an informed
8    decision about Plaintiffs' eligibility for a religious exemption, and to generate a complete
9    record for possible judicial review in the court of appeals, DEA should be afforded the
10   opportunity to create an administrative record in the first instance. ***Second***, allowing an entity
11   seeking a RFRA exemption from DEA to skip the straightforward step of requesting one from
12   DEA "would encourage the deliberate bypass of the administrative scheme" that DEA has
13   established to grant eligible entities such exemptions. *See United States v. California Care Corp.*,
14   709 F.2d 1241, 1248 (9th Cir. 1983). ***Third***, requesting an exemption from DEA may
15   "preclude the need for judicial review," preserving the resources of the parties and the Court.
16   *See id.* Either DEA will grant Plaintiffs' exemption request, obviating the need for any further
17   judicial review, or DEA will deny the request and Plaintiffs will be entitled to seek review of
18   that denial before the court of appeals on a fully developed record. *See, e.g., Perkel v. U.S. Dep't
19   of Just.*, 365 F. App'x 755, 755-56 (9th Cir. 2010). Both scenarios conserve judicial resources.
20          It is not clear why Plaintiffs have not sought an exemption directly from DEA; they
21   make no reference to the Guidance in their Complaint. In any event, if the Court does not
22   dismiss this action, it should enter a stay pending the administrative exemption process.
23   **IV.    CONCLUSION**
24          For the foregoing reasons, Defendants respectfully request that the Court dismiss
25   Counts 1 through 7 with prejudice. In the alternative, the Court should stay the case while
26   Plaintiffs pursue a religious exception from DEA.
27
28

1    Respectfully submitted this 15th day of November, 2022.

2                                    BRIAN M. BOYNTON
3                                    Principal Deputy Assistant Attorney General

4                                    BRIGHAM J. BOWEN
5                                    Assistant Branch Director

6                                    */s/ Giselle Barcia*
7                                    GISELLE BARCIA
                                     Trial Attorney
8                                    Civil Division, Federal Programs Branch
                                     U.S. Department of Justice
9                                    1100 L Street NW
                                     Washington, D.C. 20005
10                                   Telephone: (202) 305-1865
11                                   Fax: (202) 514-8640
                                     E-mail: giselle.barcia@usdoj.gov
12

13                                   *Counsel for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     18

1

## <u>NOTICE OF CERTIFICATION OF CONFERRAL</u>

2       I hereby certify that the parties have conferred regarding the instant motion to dismiss.

3  The parties were unable to agree that an amendment to Plaintiffs' Complaint could cure the

4  deficiencies addressed in the motion to dismiss.

5

6       *s/ Giselle Barcia*
         GISELLE BARCIA
7         Trial Attorney
         Civil Division, Federal Programs Branch
8         U.S. Department of Justice

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on November 15, 2022, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing a copy to the following

4  CM/ECF registrants:

5
        Jack Silver
6       Law Office of Jack Silver
        708 Gravenstein Hwy N, Ste. 407
7       Sebastopol, CA 95472-2808
        Tel.: 707-528-8175
8       Fax: 707-829-0934
        E-mail: lhm28843@sbcglobal.net
9       E-mail: jsilverenvironmental@gmail.com
10

11      Gilbert Paul Carrasco
        Willamette University College of Law
12      19431 Sunray Lane, Ste. 102
        Huntington Beach, CA 92648-6401
13      Tel.: 714-698-8142
        E-mail: carrasco@willamette.edu
14

15
        Ismail L Ali
16      1530 Campus Dr.
        Berkeley, CA 94708
17      Tel.: 559-801-7317
        E-mail: lourido.ali@gmail.com
18

19
        Martha J Hartney
20      Hartney Law LLC
        4450 Arapahoe Ave.
21      Boulder, CO 80303
        Tel.: 303-747-3909
22      Fax: 303-835-7199
        E-mail: martha@hartneylaw.com
23

24
        Sean T McAllister
25      McAllister Law Office PC
        4035 E 3rd Ave.
26      Denver, CO 80220
        Tel.: 720-448-6235
27      E-mail: sean@mcallisterlawoffice.com
28

1

2  *s/ Giselle Barcia*
   GISELLE BARCIA
3  Trial Attorney
   Civil Division, Federal Programs Branch
4  U.S. Department of Justice

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28