# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

|   |   |   |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22-11072 |
| MERRICK B. GARLAND, *et al.*, | ) ) | |
| Defendants-Appellees. | ) ) | |

_____

## RESPONSE TO PLAINTIFFS' SUPPLEMENTAL AUTHORITY LETTER

Mark Stern
  (202) 514-5089
Lowell V. Sturgill Jr.
  (202) 514-3427
*Attorneys, Civil Division*
*Appellate Staff, Room 7257*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20530*

***SOUL QUEST CHURCH OF MOTHER EARTH, INC. ET AL. V.
ATTORNEY GENERAL OF THE UNITED STATES, ET AL.*, NO. 22-11072
(11TH CIR.)**

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for respondents Attorney General of the United States and Administrator, U.S. Drug Enforcement Administration hereby certify that the following have an interest in the outcome of this appeal:

Soul Quest Church of Mother Earth, Inc. (plaintiff-appellant)

Young, Christopher (plaintiff-appellant)

U.S. Attorney General (defendant-appellee)

Administrator, U.S. Drug Enforcement Administration (defendant-appellee)

Brett, Derek Benjamin (counsel for plaintiff-appellant)

The Burnside Law Group (plaintiff's counsel's law firm)

Phillips, Andrew Brian (counsel for plaintiff-appellant)

A. Brian Phillips PA (plaintiff counsel's law firm)

Sturgill Jr., Lowell V. (counsel for defendants-appellees)

Stern, Mark B. (counsel for defendants-appellees)

Harris, Julie Strauss (counsel for defendants-appellees)

Hancock, Kevin P. (counsel for defendants-appellees)

Gaffney, Michael James (counsel for defendants-appellees)

United States Department of Justice

Submitted this 6th day of May, 2022.

<u>s/s Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.
202-514-3427
*Attorney, Civil Division*
*Appellate Staff, Room 7241*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20530*
*Counsel for Respondents*



**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7527
Washington, DC 20530

Tel: (202) 514-3427

April 26, 2023

David J. Smith
Clerk, United States Court of Appeals
  for the Eleventh Circuit
56 Forsyth Street N.W.
Atlanta, GA 30303

    Re:    *Soul Quest Church of Mother Earth, Inc. v. US Drug Enforcement Admin.*, No. 22-11072 (11th Cir.)

Dear Mr. Smith:

This letter responds to plaintiffs' letter discussing *Church of the Eagle and Condor v. Garland*, No. CV-22-01004 (D. Ariz.).

Plaintiffs contend that in *Eagle and Condor*, defendants argued "that ayahuasca churches *are required* to first submit to the Respondent DEA's 'registration process' for a 'RFRA exemption.'" Let. 1. That is incorrect. Defendants' reply brief in *Eagle and Condor* expressly disavowed plaintiffs' reading of defendants' arguments in that case. *See* Reply Br. 11 (noting that "[p]laintiffs mistakenly suggest that [d]efendants asked this Court to '*require*[] that [p]laintiffs apply for a religious exemption from the CSA'"). Rather, Defendants argued that where there exists under the CSA a mechanism for obtaining a registration, a party cannot make a prima facie RFRA case challenging the CSA without alleging that the administrative process for obtaining a registration substantially burdens the party's sincere religious beliefs. Br. 10-11. That does not amount to an argument for a mandatory administrative exhaustion requirement, and is thus not inconsistent with counsel's arguments before this Court here.

In any event, these points are not relevant here because Soul Quest voluntarily sought a religious exemption from the CSA before filing suit and agreed to stay its civil RFRA suit to allow that administrative process to conclude, resulting in a final DEA

decision. The question before this Court here is not whether the administrative process is required, but whether, once that process results in a final determination, 21 U.S.C. § 877 governs.

Enclosed is defendants' briefing and the district court's opinion in *Eagle and Condor*, which emphasize the cases' different postures.

Sincerely,

Mark B. Stern
  (202) 514-5089

s/<u>Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing letter complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(e)(1)(E) and the type-volume limitations of Federal Rules of Appellate Procedure 27(e)(2) and 28(j). The letter contains 258 words as calculated by Microsoft Word, and has been prepared in a proportionally spaced typeface using Garamond 14-point type.

s/s Lowell V. Sturgill Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing motion on April 26, 2023, by use of the

Court's CM/ECF system. Service will be made on counsel by that system.

s/s Lowell V. Sturgill Jr.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| The Church of the Eagle and the Condor *et al.*, | 22-cv-01004 |
| Plaintiffs, | **MOTION TO DISMISS** |
| vs. | |
| Merrick Garland *et al.*, | |
| Defendants.* | |

---

\* Christopher Magnus no longer serves as Commissioner of U.S. Customs and Border Protection and should be substituted with Troy Miller in his official capacity as Acting Commissioner of Customs and Border Protection as a Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

1

## **TABLE OF CONTENTS**

2    MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

3    I.      BACKGROUND .............................................................................................2

4         A.     Statutory and Regulatory Background .................................................2

5

6         B.     Factual Allegations.............................................................................4

7         C.     Procedural Background........................................................................5

8    II.     LEGAL STANDARDS ..................................................................................5

9    III.    LEGAL ARGUMENT ....................................................................................6

10        A.     Plaintiffs' RFRA Claim (Count 1) Should Be Dismissed. ..................6

11             1.      Plaintiffs' RFRA Claim Should Be Dismissed for Lack of
12                     Standing. ..................................................................................6

13                  a.     *Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution.* .....6

14                  b.     *Plaintiffs Fail To Demonstrate Associational Standing.* ...........................8

15             2.      Plaintiffs Fail To State a RFRA Claim.......................................9

16        B.     Plaintiffs' Constitutional Claims (Counts 2-7) Should Be Dismissed.........11

17

18             1.      First Amendment—Free Exercise (Count 2) ...........................11

19             2.      First Amendment—Establishment of Religion (Count 3) ...................12

20             3.      Fifth Amendment—Procedural Due Process (Count 4) .......................13

21             4.      Fifth Amendment—Substantive Due Process (Count 5)....................14

22             5.      Fifth Amendment—Equal Protection (Count 6)........................14

23

24             6.      Ninth Amendment—Unenumerated Rights (Count 7) ........................15

25        C.     Plaintiffs Should Seek an Exemption from DEA in the First Instance. ..........16

26   IV.     CONCLUSION ..............................................................................................17

27

28

ii

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ................................................................. 6

*Albright v. Oliver,*
    510 U.S. 266 (1994) ....................................................................... 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 5, 6

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.,*
    733 F.3d 939 (9th Cir. 2013) ............................................................... 8

*Barren v. Harrington,*
    152 F.3d 1193 (9th Cir. 1998) .............................................................. 14

*Barton v. Comm'r,*
    737 F.2d 822 (9th Cir. 1984) ........................................................... 15, 16

*Bd. of Regents of State Colls. v. Roth,*
    408 U.S. 564 (1972) ...................................................................... 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................... 5

*Cetacean Cmty. v. Bush,*
    386 F.3d 1169 (9th Cir. 2004) ............................................................... 8

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,*
    561 U.S. 661 (2010) ...................................................................... 11

*Church of the Holy Light of the Queen v. Mukasey(CHLQ),*
    615 F. Supp. 2d 1210 (D. Or. 2009) ......................................................... 12

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ...................................................................... 6, 7

*Dorfmont v. Brown,*
    913 F.2d 1399 (9th Cir. 1990) .............................................................. 13

*Emp't Div. v. Smith,*
    494 U.S. 872 (1990) ...................................................................... 11

iii

*Everson v. Bd. of Educ.*,
  330 U.S. 1 (1947) ................................................................ 12

*Fleming v. Charles Schwab Corp.*,
  878 F.3d 1146 (9th Cir. 2017) ............................................... 6

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal (O Centro)*,
  546 U.S. 418 (2006) ............................................. 2, 8-9, 12, 15

*Gutierrez v. Mun. Court of the Se. Jud. Dist.*,
  838 F.2d 1031 (9th Cir. 1988) ............................................. 14

*Hernandez v. Comm'r*,
  490 U.S. 680 (1989) .......................................................... 12

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ............................................................ 8

*Jamali v. Maricopa Cnty.*,
  No. CV-13-00613-PHX-DGC, 2013 WL 5705422 (D. Ariz. Oct. 21, 2013) ..... 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ............................................................ 5

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................ 6

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) .......................................................... 16

*Montana Caregivers Ass'n, LLC v. United States*,
  526 F. App'x 756 (9th Cir. 2013) .......................................... 15

*Morrison-Knudsen Co. v. CHG Int'l, Inc.*,
  811 F.2d 1209 (9th Cir. 1987) ............................................. 16

*Navajo Nation v. U.S. Forest Serv.*,
  535 F.3d 1058 (9th Cir. 2008) ......................................... 10, 11

*Nelsen v. King Cty.*,
  895 F.2d 1248 (9th Cir. 1990) .............................................. 7

*Perkel v. U.S. Dep't of Just.*,
  365 F. App'x 755 (9th Cir. 2010) .......................................... 17

*Reynolds v. U.S.*,

iv

98 U. S. 145 (1878) ................................................................................................. 12

*Rossides v. Gonzales,*
210 F. App'x 711 (9th Cir. 2006) ........................................................................... 7

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ............................................................................... 5

*San Diego Cty. Gun Rs. Comm'n v. Reno,*
98 F.3d 1121 (9th Cir. 1996) ........................................................................... 7, 15

*Schowengerdt v. United States,*
944 F.2d 483 (9th Cir. 1991) ................................................................................ 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,*
806 F.2d 1393 (9th Cir. 1986) ................................................................................ 6

*Short v. Berger,*
No. CV-22-00444-PHX-DJH, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022)
*appeal filed,* No. 22-15755 (9th Cir. May 18, 2022) ............................................ 9

*Simon v. Henning,*
No. EDCV 13-2281 RGK (MAN), 2014 WL 12853094 (C.D. Cal. Jan. 7, 2014) ............ 14

*Thomas v. Anchorage Equal Rts. Comm'n,*
220 F.3d 1134 (9th Cir. 2000) ......................................................................7, 8, 10

*United Pub. Workers of Am. (C.I.O.) v. Mitchell,*
330 U.S. 75 (1947) ................................................................................................ 15

*United States v. California Care Corp.,*
709 F.2d 1241 (9th Cir. 1983) ........................................................................16, 17

*United States v. Christie.,*
825 F.3d 1048, 1061 (9th Cir. 2016) ...................................................................... 9

*United States v. Seljan,*
547 F.3d 993 (9th Cir. 2008) ................................................................................ 10

*United States v. Tawahongva,*
456 F. Supp. 2d 1120 (D. Ariz. 2006) .................................................................. 11

*W. Radio Servs. Co. v. Qwest Corp.,*
530 F.3d 1186 (9th Cir. 2008) .............................................................................. 17

*W. Watersheds Project v. Kraayenbrink,*

v

    632 F.3d 472 (9th Cir. 2011) ................................................................ 8

*Washington v. Davis,*
    426 U.S. 229, (1976) .......................................................................... 14

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ............................................................................ 6

*Williams v. California,*
    764 F.3d 1002 (9th Cir. 2014) ........................................................11, 12

**Constitution**

U.S. Const. amend. I ...........................................................................11, 12

**Statutes**

21 U.S.C. § 801 .................................................................................... 1

21 U.S.C. § 812 ................................................................................1, 2

21 U.S.C. § 823 .........................................................................1, 2, 3, 8

21 U.S.C. § 880 .................................................................................... 3

21 U.S.C. § 954 .............................................................................1, 2, 3

21 U.S.C. § 958 ................................................................................2, 8

42 U.S.C. § 2000bb–1(b) .............................................................. 1, 6, 8, 15

**Regulations**

21 C.F.R. § 1301.31 ............................................................................... 2

21 C.F.R. §§ 1301.01-1301.52 ................................................................1, 2

21 C.F.R. § 1301.34 ............................................................................... 3

21 C.F.R. §§ 1301.71-1301.76 ................................................................... 3

21 C.F.R. §§ 1301.90-1301.93 ................................................................... 3

21 C.F.R. §§ 1304.21-1304.22 ................................................................... 3

21 C.F.R. §§ 1312.11-1312.15 ...............................................................3, 13

21 C.F.R. §§ 1316.01-1316.13...................................................................... 3

**Federal Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................... 5

Fed. R. Civ. P. 12(b)(6)........................................................................... 5

Fed. R. Civ. P. 25(d) ............................................................................... i

**Other Authorities**

U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20, 2020), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 14, 2022) Guidance) ........................................................................... 2, 3, 15, 16

LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 776 n.14 (2d ed. 1998) ........................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Defendants hereby move to dismiss Counts 1 through 7 of Plaintiffs' Complaint
2    (Doc. 1) with prejudice, or, in the alternative, to stay the case while Plaintiffs pursue a religious
3    exception from the Drug Enforcement Administration (DEA). This motion is supported by
4    the following memorandum of points and authorities and by all matters of record.

5    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

6    This case concerns a hallucinogenic substance called dimethyltryptamine (DMT).
7    Under the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, the importation and use
8    of substances listed in Schedule I are strictly controlled due to the high risk of abuse and lack
9    of accepted medical use, *id.* § 812(b)(1). To that end, anyone seeking to handle such controlled
10   substances must register with DEA. 21 U.S.C. §§ 823, 954; 21 C.F.R. §§ 1301.01-1301.52.
11   DMT is included in Schedule I.

12   According to the Complaint, more than two years ago, a package addressed to a
13   Plaintiff in this action arrived at the Port of Los Angeles from Peru. That package contained
14   ayahuasca, a tea brewed from plants containing DMT. Plaintiffs do not allege to have had an
15   import registration. U.S. Customs and Border Protection (CBP) seized the package. Plaintiffs
16   allege they received a note from the Department of Homeland Security (DHS) indicating
17   seizure of a controlled substance. Plaintiffs state they never received any other
18   communications from the Government.

19   With those factual allegations, Plaintiffs bring this lawsuit asserting numerous claims,
20   including one under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–
21   1(b), and several others under the Constitution, all derivative of the RFRA claim. But Plaintiffs'
22   RFRA claim cannot survive for at least two reasons. First, Plaintiffs have not demonstrated
23   standing. And, second, Plaintiffs have failed to state a claim under Rule 12(b)(6) as they have
24   not adequately alleged that their religious beliefs have been substantially burdened. To that
25   end, this Court should dismiss Counts 1 through 7 of Plaintiffs' Complaint with prejudice.

26   Plaintiffs make an extraordinary request for relief with this lawsuit: that the Court order
27   DEA to grant a religious exemption Plaintiffs have never requested. Accordingly, and as an

28

1

alternative basis for resolving this motion, Defendants request that the Court exercise its discretion to decline to review Plaintiffs' claims until after they have sought an exemption from DEA. Doing so would allow DEA to evaluate in the first instance whether Plaintiffs are eligible for an exemption, including but not limited to determining whether Plaintiffs can adequately protect against the risk that the controlled substance would be diverted.

## I.     BACKGROUND

### A.     Statutory and Regulatory Background

The CSA regulates the use of psychotropic substances, including "Schedule I" controlled substances, which are strictly controlled owing to the high risk of abuse and lack of accepted medical use. 21 U.S.C. § 812(b)(1). As relevant here, DEA has authority to register an applicant to import, distribute, dispense, or manufacture the hallucinogenic compound N, N-dimethyltryptamine, known as DMT, and substances containing it, when doing so is consistent with the public interest. *Id.* § 823(b); 21 C.F.R. § 1301.31.

Through the CSA, Congress created a closed regulatory system to control and monitor controlled substances in the United States. Under this system, all parties—including health care professionals, pharmacists, medical researchers, and religious adherents—wishing to handle controlled substances must register with DEA. 21 U.S.C. §§ 823, 954; 21 C.F.R. §§ 1301.01-1301.52. This registration system ensures that controlled substances are safely handled and properly safeguarded to prevent loss, theft, and diversion to illicit use. 21 U.S.C. §§ 823, 958. DEA is statutorily authorized to create exemptions from the CSA's prohibitions. *Id.* § 823. Prior to *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* (*O Centro*), 546 U.S. 418 (2006), no process existed for an individual who wished to use a controlled substance for religious purposes to obtain formal permission to do so. That is no longer the case.

In response to *O Centro*, DEA created a religious-exemption process for petitioners who establish that the CSA burdens their sincere religious beliefs.[1] Referred to herein as the

_____

[1] U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20,

Guidance, this process allows DEA to consider a petitioner's request based on their sincere religious belief to be granted a registration to manufacture, distribute, dispense, import, export, use, or possess a controlled substance for religious purposes or to otherwise be exempted from provisions of the CSA and its implementing regulations for religious purposes. Importantly, this process also allows DEA to, among other things, weigh an individual's or organization's proposed safeguards to ensure that the controlled substance will not be diverted to illegal uses and to consider the risks of harm posed by a particular substance. That is because, under the CSA, DEA may only register an applicant to handle a Schedule I substance when doing so is consistent with the public interest. 21 U.S.C. §§ 823, 958. DEA considers a number of factors in evaluating religious-exemption applications, including but not limited to whether the registrant would maintain effective controls against diversion.[2] For example, the Guidance asks a petitioner to list "each specific religious practice" involving the controlled substance, as well as "the amounts, conditions, and locations of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession." Guidance, *supra* note 1, at 1-2.

Any DEA registrant wishing to import controlled substances into the United States must apply for a permit each time it wishes to import the substance, and the approved permit must accompany the shipment. 21 C.F.R. §§ 1301.34, 1312.11-1312.14. CBP relies on DEA's import-permitting system to ensure only lawfully imported controlled substances enter the country. As a matter of course, if CBP intercepts a nonpermitted Schedule I controlled substance, CBP will seize and summarily forfeit the substance. *Id.* § 1312.15.

---

2020) https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 15, 2022) (Guidance).

[2] DEA regulations require, inter alia, security, storage, and theft/loss avoidance measures, 21 C.F.R. §§ 1301.71-1301.76; record-keeping and inventory regarding importation, receipt, distribution, and disposal of controlled substances, *id.* §§ 1304.21-1304.22; DEA access for inspections and audits, 21 U.S.C. § 880; 21 C.F.R. §§ 1316.01-1316.13; and employee screening procedures, 21 C.F.R. §§ 1301.90-1301.93.

    **B.**    **Factual Allegations**

Plaintiff the Church of the Eagle and the Condor (CEC) alleges it is "a religion rooted in Indigenous spirituality whose essential sacrament is the holy tea, *ayahuasca*." Compl. ¶ 16; *see id.* ¶ 2 ("The Church is a religious community dedicated to the spiritual reunification of humanity in fulfillment of the Prophesy of the Eagle and the Condor."). Ayahuasca is a tea brewed from plants containing DMT, a Schedule I controlled substance under the CSA. *See id.* ¶¶ 16, 25. Plaintiff Joseph Tafur acts as "Spiritual Leader" of the Church as well as "ceremonialist for the ayahuasca ceremony." *Id.* ¶¶ 1, 42. Other Plaintiffs include a member of the Board of Directors and three additional members, all of whom, the Complaint states, "are aware that *ayahuasca* is proscribed by law" and are "violating and intend to continue to violate applicable law." *Id.* ¶¶ 16-19, 44, 77. Plaintiffs allege they have been meeting over the past four years "for prayer, ceremonies, gatherings, and sweat lodges." *Id.* ¶ 44.

More than two years ago, in September 2020, Plaintiffs allege CBP "interdicted *ayahuasca* being sent" to Plaintiffs from "Peru through the Port of Los Angeles." *Id.* ¶ 50. The Complaint states that Tafur "received a small, approximately 3" x 2.5" note displaying the [DHS] seal and the following text":

> Notice: Narcotics and/or other contraband prohibited from entry into the United States, have been seized and removed for appropriate action under 19CFR145.509. You will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near future.

*Id.* Plaintiffs state there was "no further correspondence" following receipt of the alleged note. *Id.* ¶ 52. Plaintiffs have continued, and plan to continue, using ayahuasca. *See, e.g., id.* ¶ 44 (stating that CEC and its members "continue on a regular basis, to use *ayahuasca* in ceremonies" and "continue to import, possess, and use their sacrament (*ayahuasca*) and have no plans to stop doing so"); *see also, e.g., id.* ¶¶ 16-19, 77. Plaintiffs do not allege they applied for a religious exemption from the CSA under the Guidance.

### C.   Procedural Background

Plaintiffs filed this action against Merrick Garland, Attorney General of the United States, Alejandro Mayorkas, Secretary of DHS, Anne Milgram, DEA Administrator, and Christopher Magnus, then-Commissioner of CBP, *see supra* page i, asserting nine claims:

| Claim for Relief | Defendant(s) |
|---|---|
| 1  Religious Freedom Restoration Act (RFRA) | All Defendants |
| 2  First Amendment—Free Exercise | All Defendants |
| 3  First Amendment—Establishment of Religion | All Defendants |
| 4  Fifth Amendment—Procedural Due Process | CBP |
| 5  Fifth Amendment—Substantive Due Process | CBP |
| 6  Fifth Amendment—Equal Protection | All Defendants |
| 7  Ninth Amendment—Unenumerated Constitutional Rights | All Defendants |
| 8  Freedom of Information Act | CBP |
| 9  Freedom of Information Act | DEA |

Compl. ¶¶ 20-24. Counts 1 through 7 arise from the alleged seizure of improperly imported ayahuasca. As its principal form of relief, Plaintiffs ask this Court for an injunction ordering "Defendants to permit Plaintiffs' importation, use, preparation of, and distribution . . . of . . . *ayahuasca* tea . . . and enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members . . . with arrest, prosecution, and/or imprisonment." *Id.* ¶ 89.

Defendants now move to dismiss Counts 1 through 7 without leave to amend,[3] or, in the alternative, to stay the case while Plaintiffs pursue a religious exemption from DEA.

## II.   LEGAL STANDARDS

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) attacks can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires a plaintiff to allege sufficient facts to allow

---

[3] Defendants certify that they attempted to meet and confer with Plaintiffs' counsel regarding this motion. Plaintiffs declined to amend their complaint.

the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see Iqbal*, 556 U.S. at 678-79. Leave to amend the complaint should be denied if "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III.   LEGAL ARGUMENT

### A.   Plaintiffs' RFRA Claim (Count 1) Should Be Dismissed.

This Court should dismiss Plaintiffs' RFRA[4] claim on two bases: (1) lack of standing, and (2) failure to state a plausible claim.

#### 1.   Plaintiffs' RFRA Claim Should Be Dismissed for Lack of Standing.

##### a.   *Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution.*

Plaintiffs ask this Court to enter an injunction ordering "Defendants to permit Plaintiffs' importation, use, preparation of, and distribution . . . of . . . ayahuasca tea . . . and enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members of the Church with arrest, prosecution, and/or imprisonment." Compl. ¶ 89. But without more, Plaintiffs are not entitled to this relief—and have no standing to claim it.

To demonstrate Article III standing, Plaintiffs must show that each provision they challenge has caused them a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To establish an injury-in-fact to support a claim for injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017) (alteration in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Instead, there must be a "sufficient likelihood that [the plaintiff] will again be wronged

---

[4] RFRA, 42 U.S.C. § 2000bb–1(b), provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest.

1    in a similar way." *Lyons*, 461 U.S. at 111. Where, as here, the allegedly feared future harm is

2    prosecution, there must be a "genuine threat of imminent prosecution," and "neither the mere

3    existence of a proscriptive statute nor a generalized threat" is sufficient. *Thomas v. Anchorage*

4    *Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Plaintiffs' broad claim for injunctive

5    relief fails for multiple reasons.

6         *First*, Plaintiffs base their claim for relief entirely on a single allegation of past harm—

7    namely, the alleged September 2020 seizure. Even assuming that the past seizure qualifies as

8    harm, "the Supreme Court has concluded that past exposure to harm is largely irrelevant when

9    analyzing claims of standing for injunctive relief that are predicated upon threats of future

10   harm." *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see Lyons*, 461 U.S. at 108.

11        *Second*, Plaintiffs have not demonstrated a threat to initiate proceedings that would

12   support pre-enforcement standing. Plaintiffs fail to allege that Defendants "have

13   communicated a specific warning or threat to initiate proceedings" against them. *Thomas*, 220

14   F.3d at 1139; *see Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (explaining that

15   there is no standing where "[n]o prosecuting authorities have ever communicated a specific

16   threat or warning to initiate proceedings against [plaintiff]"). Rather, Plaintiffs' allegations

17   involve communications that, at most, constitute generalized statements. The alleged note

18   indicated only that "[n]arcotics and/or other contraband prohibited from entry into the United

19   States, have been seized and removed for appropriate action under 19[ ]CFR [§] 145.509. You

20   will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near

21   future." Compl. ¶ 50. That communication, which Plaintiffs confirm included no follow-up

22   or any penalty, does not credibly rise to the level of "genuine threat[s] of imminent

23   prosecution," but rather serves as a general reference to "the mere existence of a proscriptive

24   statute," which cannot support standing for a pre-enforcement challenge. *Thomas*, 220 F.3d at

25   1139; *see San Diego Cty. Gun Rs. Comm'n v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (citing cases

26   for the proposition that "a general threat of prosecution is not enough to confer standing").

27

28

1    *Third*, there is also no demonstrated history or pattern of past prosecution or

2    enforcement against Plaintiffs alleged in the Complaint. Indeed, Plaintiffs have not identified

3    any past federal prosecutions of anyone for ayahuasca use, further undermining their claim

4    that they face a genuine threat of imminent prosecution.

5                    b.    *Plaintiffs Fail To Demonstrate Associational Standing.*

6           Plaintiff CEC appears to assert associational standing to sue on behalf of its members.

7    *See* Compl., Caption (stating CEC is suing "on its own behalf, and on behalf of its members");

8    *id.* ¶ 7 ("seek[ing] a preliminary order . . . to enjoin Defendants from actually arresting and

9    prosecuting[] the Church members who partake in the sacramental tea"); *see also id.* Prayer for

10   Relief ¶¶ 84, 86, 89. An association may bring suit on its members' behalf when: "(a) its

11   members would otherwise have standing to sue in their own right; (b) the interests it seeks to

12   protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

13   relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash.

14   State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Because Plaintiffs do not satisfy the first

15   or third factor, they fail to demonstrate associational standing.

16          As explained above, *supra* Section III.A.1.a, the Complaint does not sufficiently allege

17   that any member faces the requisite "genuine threat of imminent prosecution." *Thomas*, 220

18   F.3d at 1139. Thus, CEC fails to establish that "at least one of [its] members has 'suffered

19   sufficient injury to satisfy the case or controversy requirement of Article III.'" *Ass'n of Pub.

20   Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 949 (9th Cir. 2013) (quoting *Cetacean

21   Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)); *see also W. Watersheds Project v. Kraayenbrink*,

22   632 F.3d 472, 483 (9th Cir. 2011).

23          Moreover, Plaintiffs' RFRA claim "requires the participation of individual members in

24   the lawsuit," *Hunt*, 432 U.S. at 343, and cannot be brought in a representative capacity. RFRA

25   requires the Court to identify the contours of "*a person's*" sincere religious belief to determine

26   whether it is substantially burdened and, if so, to decide whether the "application of the burden

27   *to the person*" is justified. 42 U.S.C. § 2000bb-1(a)-(b) (emphases added); *see also O Centro*, 546

28

                                          8

U.S. at 430-31 (explaining that RFRA contemplates "an inquiry more focused than [a] categorical approach" because it requires "application of the challenged law 'to the person'— the particular claimant whose sincere exercise of religion is being substantially burdened"); *Short v. Berger*, No. CV-22-00444-PHX-DJH, 2022 WL 1203876, at *12 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022) (explaining that RFRA "analysis requires the government to consider its actions as applied 'to the person' who is affected"). While there are church members identified as Plaintiffs in this lawsuit, the Complaint does not include an individual attestation from each member indicating that their sincerely held religious beliefs are being substantially burdened by the Government's actions. The Complaint contains only generalized allegations that the Church's members are "substantially burdened" by federal drug laws. *See, e.g.*, Compl. ¶ 64. These allegations cannot support associational standing.

### 2.      Plaintiffs Fail To State a RFRA a Claim.

Plaintiffs' RFRA claim also fails to state a claim upon which relief could be granted. RFRA requires a threshold showing that "application of the Controlled Substances Act would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro*, 546 U.S. at 428. Here, Plaintiffs have fallen far short of that threshold showing.

As an initial matter, even assuming that the CEC is in fact "a religion" and "religious community," as alleged, Compl. ¶ 16, Plaintiffs have failed to satisfy their burden that its alleged members share the same religious beliefs about ayahuasca, and that all practitioners use ayahuasca with a religious mindset. *See O Centro*, 546 U.S. at 428 (requiring "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened"); *see also United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016). Plaintiffs "cannot simply point to other groups who have won accommodations for [religious ayahuasca use] . . . and say 'we'll have what they're having.'" *Id.*

Moreover, Plaintiffs have failed to plead a substantial burden. On this point, Plaintiffs allege that "seizing Plaintiffs' sacramental tea and continuing to hold the threat of seizure and criminal prosecution over their heads constitute a substantial burden on Plaintiffs' religious

practice and beliefs." Compl. ¶ 64. But, based on these allegations, Plaintiffs fail to sufficiently plead that they have been or would be "coerced to act contrary to [their] religious beliefs." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc).

*First*, a general risk of seizure—or even an actual seizure—of a Schedule I controlled substance is not itself sufficient proof of a substantial burden where Plaintiffs continue to practice without seeking a DEA registration to abate the risk of seizure. Here, the Complaint admits repeatedly that Plaintiffs have continued and plan to continue using ayahuasca. *E.g.*, Compl. ¶ 44 ("[T]he Church and its members continue to import, possess, and use their sacrament (*ayahuasca*) and have no plans to stop doing so . . . ."); *see also, e.g., id.* ¶¶ 16-19, 77.

*Second*, Plaintiffs, as explained above, *supra* Section III.A.1.a, have not pleaded a genuine threat of actual prosecution. Plaintiffs' threadbare allegation concerning threat of prosecution stems from the "small . . . note" received after CBP seized the package containing ayahuasca. Compl. ¶¶ 50-51. Neither the seizure nor the alleged note can establish any genuine threat of imminent prosecution. DHS has broad authority to inspect all packages entering the United States without any individualized suspicion, *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008), and Plaintiffs do not claim the sole seizure, which occurred more than two years ago, *id.* ¶ 50, stemmed from any investigation aimed at them. Instead, the seizure resulted from a lack of registration and a failure to obtain the necessary import permits from DEA, without which importation of controlled substances is prohibited and subject to seizure as a matter of course. And again, the note contains no individualized threat of prosecution, but, rather, a generalized reference to "the mere existence of a proscriptive statute." *Thomas*, 220 F.3d at 1139; *see supra* Section III.A.1.a. To the extent a reference to "receiving correspondence from our Fines, Penalties and Forfeitures Branch" can be credibly construed as a threat of prosecution, Plaintiffs admit that threat never materialized. Compl. ¶ 50.

*Last*, Plaintiffs' grievances stem from the fact that Plaintiffs lack a DEA registration. But Plaintiffs have not alleged that they applied for and were denied a registration. Nor have they pleaded that they would be "coerced to act contrary to [their] religious beliefs" by seeking

10

a RFRA exemption. *Navajo Nation*, 535 F.3d at 1069-70; *see, e.g.*, *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1132 (D. Ariz. 2006) (finding RFRA plaintiff was not substantially burdened "by the requirement that he acquire a permit"). If Plaintiffs successfully obtained a registration through the RFRA exemption process, they could obtain import permits and not risk seizure of their ayahuasca. While Plaintiffs claim there is "no adequate remedy," Compl. ¶ 62, this formal process clearly provides them with a means to pursue the remedy they seek here.

**B.      Plaintiffs' Constitutional Claims (Counts 2-7) Should Be Dismissed.**

The Complaint asserts six causes of action for constitutional violations: two claims under the First Amendment, three under the Fifth Amendment, and one under the Ninth Amendment. But these claims are largely derivative of, and overlapping with, Plaintiffs' RFRA claim. None has any factual specificity, or basis in law, and all should be dismissed.

**1.      First Amendment—Free Exercise (Count 2)**

The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. "In order to establish a violation of the Free Exercise Clause, a plaintiff must establish that the challenged conduct resulted in an impairment of the plaintiff's free exercise of genuinely held beliefs." *Williams v. California*, 764 F.3d 1002, 1011 (9th Cir. 2014). Critically, though, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 1011-12 (quoting *Emp't Div. v. Smith,* 494 U.S. 872, 879 (1990)). Put differently, "the Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010). That is exactly the case here. Plaintiffs do not appear to contest that the CSA is a neutral law of general applicability. *See* Compl. ¶¶ 67-68. And, as discussed earlier, *supra* Section III.A.2, Plaintiffs have not shown that a governmental action has substantially burdened their religious

practice, as Plaintiffs admit in the Complaint that they continue to practice their religion and participate in ayahuasca ceremonies. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

### 2. First Amendment—Establishment of Religion (Count 3)

Plaintiffs allege that the Government's accommodation (emerging from litigation prior to issuance of DEA's Guidance) of two other religious groups, to the exclusion of CEC, violates the Establishment Clause of the First Amendment. Compl. ¶¶ 68-69; *see O Centro*, 546 U.S. 418 (2006); *Church of the Holy Light of the Queen v. Mukasey* (*CHLQ*), 615 F. Supp. 2d 1210 (D. Or. 2009).

The Establishment Clause prohibits the Government from enacting a law "respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has explained that the Establishment Clause "means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. . . . [T]he [Establishment] [C]lause . . . was intended to erect a 'wall of separation between Church and State.'" *Everson v. Bd. of Educ.*, 330 U.S. 1, 15-16 (1947) (quoting *Reynolds v. U.S.*, 98 U. S. 145 (1878)); *see also Williams*, 764 F.3d at 1013.

Plaintiffs offer no factual allegations to support their Establishment Clause claim except simply pointing to two other organizations. But the Complaint's reliance on UDV and CHLQ as comparators is misplaced: both of those cases involve differently situated Plaintiffs, and both pre-dated the Guidance process as an available means of seeking a religious exemption. In *O Centro*, on appeal from a preliminary injunction, the Supreme Court held that RFRA requires "case-by-case consideration of religious exemptions" even for "exceptionally dangerous" Schedule I substances. 546 U.S. at 430-36. In *O Centro*, however, the federal authorities had actually "threatened [the plaintiffs] with prosecution," *id.* at 425, and applied the CSA without exception, *id.* at 430. Since *O Centro*, DEA has considered religious-based exemptions through the Guidance process that Plaintiffs apparently have declined to use. And *CHLQ*, the other case the Complaint references, likewise predated the Guidance. Plaintiffs' bare contention that they are "in the same position" as the Plaintiffs in those cases cannot

serve as the basis for an Establishment Clause claim, particularly given the intervening issuance of the Guidance, which was designed to facilitate the very accommodations that the Court found lacking in *O Centro*. Yet Plaintiffs ignore this Guidance, both factually and legally.

### 3.    Fifth Amendment—Procedural Due Process (Count 4)

Plaintiffs' allegation that CBP's September 2020 seizure of the ayahuasca package suffices to make out a Procedural Due Process claim is likewise flawed. Plaintiffs allege that the seizure of their ayahuasca "without any notice and without an opportunity to be heard deprived Plaintiffs of their ownership, possession, and use of their sacramental tea, *ayahuasca*." Compl. ¶ 71. But because they have not shown a cognizable property interest in the package, Plaintiffs' claim must be dismissed.

Due process requirements "do not apply unless [Plaintiffs] can first show that [they have] a cognizable liberty or property interest." *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990). "Where there is no right, no process is due under the Constitution." *Id.* Here, Plaintiffs have not shown they have a property interest in a package containing a controlled substance imported without a permit. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). *Roth*, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," which is to say, the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

In this case, no person or entity has an entitlement to import a controlled substance without an importation permit under the CSA. To the contrary, under the "existing rules," when CBP intercepts a non-permitted Schedule I controlled substance, CBP will seize the shipment, and it will be forfeited. *See* 21 C.F.R. § 1312.15.

13

### 4.      **Fifth Amendment—Substantive Due Process (Count 5)**

Plaintiffs' Substantive Due Process claim against CBP also lacks merit. In support of this claim, Plaintiffs allege that CBP, "in confiscating [their ayahuasca], in continuing to threaten prosecution of Plaintiffs, in continuing threats to confiscate the sacrament and to prosecute Plaintiffs and other members of the Church who in the future attempt to worship according to the central tenets of their religion," violated the Due Process Clause of the Fifth Amendment. Compl. ¶ 73.

But this claim fails as a matter of law. Where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Simon v. Henning*, No. EDCV 13-2281 RGK (MAN), 2014 WL 12853094, at *5 (C.D. Cal. Jan. 7, 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, because Plaintiffs' claims are grounded in the First Amendment's right to free exercise, Plaintiffs cannot also pursue a generalized substantive due process claim under the Fourteenth Amendment. *See, e.g.*, *Simon*, 2014 WL 12853094, at *5 (dismissing substantive due process claim on this basis).

### 5.      **Fifth Amendment—Equal Protection (Count 6)**

Plaintiffs' Equal Protection claim also cannot survive this motion. As the basis of this claim, Plaintiffs state that Defendants' alleged "denial of the use of ayahuasca" violates the Due Process Clause of the Fifth Amendment because "Plaintiffs are similarly situated to other churches," such as UDV and Santo Daime, "that are not denied such rights." Compl. ¶ 75.

To make out "a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239-40, (1976)); *see also Gutierrez v. Mun. Court of the Se. Jud. Dist.*, 838 F.2d 1031, 1047 (9th Cir. 1988) (explaining that purposeful discrimination is an essential element of an equal protection claim). Here, even assuming Plaintiffs have made a sufficient showing that they are members

of a protected class, they have plainly not provided any allegations of purposeful discrimination, much less any allegations based on protected status. As described above, the two groups Plaintiffs describe are differently situated. *See supra* Section III.B.2.

Moreover, the Equal Protection claim is entirely dependent on Plaintiffs' flawed RFRA claim. RFRA itself, as a matter of law, requires an individualized determination "to the person." 42 U.S.C. § 2000bb-1(a)-(b); *see O Centro*, 546 U.S. at 430-36 (requiring "case-by-case consideration of religious exemptions"); *see also* Guidance, *supra* note 1. An Equal Protection claim, which depends on differential treatment among the same members of a protected class, cannot logically survive where the underlying right depends on the *individualized* assessment of the religious beliefs of a particular group. For that separate reason, Plaintiffs' Equal Protection claim must be dismissed.

### 6.      Ninth Amendment—Unenumerated Rights (Count 7)

This Court should also dismiss Plaintiffs' Ninth Amendment claim, which is undeveloped, conclusory, and lacks merit. The Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *San Diego Cty. Gun Rts. Comm.*, 98 F.3d at 1125 (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)). Indeed, as this Court has explained, the Ninth Amendment is not "a source of substantive rights." *Jamali v. Maricopa Cnty.*, No. CV-13-00613-PHX-DGC, 2013 WL 5705422, at *3 (D. Ariz. Oct. 21, 2013) (citing *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 96 (1947); Laurence H. Tribe, American Constitutional Law, 776 n.14 (2d ed. 1998) ("It is a common error, but an error nonetheless, to talk of 'ninth amendment rights.' The ninth amendment is not a source of rights as such; it is simply a rule about how to read the Constitution.")).

To that end, as "long as Congress acts pursuant to an enumerated power, and does not exceed a 'specific limitation' on that power, an 'objection . . . that the exercise of [that] power infringes upon rights served by the ninth and tenth amendments . . . must fail.'" *Montana Caregivers Ass'n, LLC v. United States*, 526 F. App'x 756, 758 (9th Cir. 2013) (quoting *Barton v.*

1  *Comm'r*, 737 F.2d 822, 823 (9th Cir. 1984) (per curiam)). Here, Plaintiffs cite no authority in

2  support of a Ninth Amendment claim, which is entirely derivative of their RFRA claim.

3        **C.    Plaintiffs Should Seek an Exemption from DEA in the First Instance.**

4        As an alternative basis for resolving the instant motion, the Court should exercise its

5  discretion to decline to review Plaintiffs' claims at this juncture. Plaintiffs ask the Court to

6  order DEA to grant a religious exemption that Plaintiffs have not yet requested from DEA.

7  Plaintiffs have not argued that they are burdened by the application process under the

8  Guidance. And as a form of relief, Plaintiffs seek an injunction that amounts to an exception

9  from the CSA. As a matter of sensible governance and judicial economy, DEA should be

10 afforded the opportunity in the first instance to evaluate Plaintiffs' potential eligibility for an

11 exemption, including, but not limited to, whether Plaintiffs' current importation and

12 distribution procedures adequately protect against diversion of the controlled substance.

13       If the Court does not dismiss this action, it should stay the case until Plaintiffs complete

14 the administrative process. This approach would strike the proper balance between "the

15 agency's interest in applying its expertise, correcting its own errors, making a proper record,

16 and maintaining an efficient, independent administrative system," and Plaintiffs' interest "in

17 finding adequate redress." *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir.

18 1987). Further, Courts have discretion to decline to exercise review on administrative

19 exhaustion grounds even when the governing statutes and regulation do not make exhaustion

20 mandatory. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). DEA created a religious-

21 exemption process for petitioners who establish that the CSA burdens their sincere religious

22 beliefs. Guidance, *supra* note 1. Because Plaintiffs have not yet requested that exemption, an

23 order deferring further litigation until the administrative process has run its course is

24 warranted. *See United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983)

25 (outlining factors justifying a court's discretionary power to require administrative exhaustion).

26       Such an order is proper for at least three reasons. *First*, DEA has the "agency

27 expertise" in diversion prevention "to generate a proper record and reach a proper decision"

28

regarding possible accommodations that would both ensure that sincere religious exercise is not substantially burdened and that controlled substances are not diverted to improper, secular uses. *Id.*; *see also W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1201 (9th Cir. 2008) ("The agency is thus much better situated than the district court to 'mak[e] a proper record' and determine the facts [at issue] . . . ."). The traditional tools of civil discovery—which are comparatively burdensome and inflexible—are a poor substitute for DEA's pre-registration investigation process. To provide DEA with the material it needs to make an informed decision about Plaintiffs' eligibility for a religious exemption, and to generate a complete record for possible judicial review in the court of appeals, DEA should be afforded the opportunity to create an administrative record in the first instance. **Second**, allowing an entity seeking a RFRA exemption from DEA to skip the straightforward step of requesting one from DEA "would encourage the deliberate bypass of the administrative scheme" that DEA has established to grant eligible entities such exemptions. *See United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). **Third**, requesting an exemption from DEA may "preclude the need for judicial review," preserving the resources of the parties and the Court. *See id.* Either DEA will grant Plaintiffs' exemption request, obviating the need for any further judicial review, or DEA will deny the request and Plaintiffs will be entitled to seek review of that denial before the court of appeals on a fully developed record. *See, e.g.*, *Perkel v. U.S. Dep't of Just.*, 365 F. App'x 755, 755-56 (9th Cir. 2010). Both scenarios conserve judicial resources.

It is not clear why Plaintiffs have not sought an exemption directly from DEA; they make no reference to the Guidance in their Complaint. In any event, if the Court does not dismiss this action, it should enter a stay pending the administrative exemption process.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Counts 1 through 7 with prejudice. In the alternative, the Court should stay the case while Plaintiffs pursue a religious exception from DEA.

1    Respectfully submitted this 15th day of November, 2022.

2                                  BRIAN M. BOYNTON
3                                  Principal Deputy Assistant Attorney General

4                                  BRIGHAM J. BOWEN
5                                  Assistant Branch Director

6                                  */s/ Giselle Barcia*
                                   GISELLE BARCIA
7                                  Trial Attorney
8                                  Civil Division, Federal Programs Branch
                                   U.S. Department of Justice
9                                  1100 L Street NW
10                                 Washington, D.C. 20005
                                   Telephone: (202) 305-1865
11                                 Fax: (202) 514-8640
12                                 E-mail: giselle.barcia@usdoj.gov

13                                 *Counsel for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **NOTICE OF CERTIFICATION OF CONFERRAL**

I hereby certify that the parties have conferred regarding the instant motion to dismiss. The parties were unable to agree that an amendment to Plaintiffs' Complaint could cure the deficiencies addressed in the motion to dismiss.

_s/ Giselle Barcia_
GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice

1      <u>**CERTIFICATE OF SERVICE**</u>

2          I hereby certify that on November 15, 2022, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing a copy to the following

4   CM/ECF registrants:

5
        Jack Silver
6       Law Office of Jack Silver
        708 Gravenstein Hwy N, Ste. 407
7       Sebastopol, CA 95472-2808
        Tel.: 707-528-8175
8       Fax: 707-829-0934
        E-mail: lhm28843@sbcglobal.net
9       E-mail: jsilverenvironmental@gmail.com
10

11      Gilbert Paul Carrasco
        Willamette University College of Law
12      19431 Sunray Lane, Ste. 102
        Huntington Beach, CA 92648-6401
13      Tel.: 714-698-8142
        E-mail: carrasco@willamette.edu
14

15      Ismail L Ali
        1530 Campus Dr.
16      Berkeley, CA 94708
        Tel.: 559-801-7317
17      E-mail: lourido.ali@gmail.com
18

19      Martha J Hartney
        Hartney Law LLC
20      4450 Arapahoe Ave.
        Boulder, CO 80303
21      Tel.: 303-747-3909
        Fax: 303-835-7199
22      E-mail: martha@hartneylaw.com
23

24      Sean T McAllister
        McAllister Law Office PC
25      4035 E 3rd Ave.
        Denver, CO 80220
26      Tel.: 720-448-6235
        E-mail: sean@mcallisterlawoffice.com
27

28

                                          20

1

2        *s/ Giselle Barcia*
         GISELLE BARCIA
3        Trial Attorney
         Civil Division, Federal Programs Branch
4        U.S. Department of Justice

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| The Church of the Eagle and the Condor *et al.*,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>Merrick Garland *et al.*,<br><br>                    Defendants. | Case No. 22-cv-01004-SRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS [Doc. 23]** |

1

## **TABLE OF CONTENTS**

2   I.   LEGAL ARGUMENT ............................................................... 1

3        A.   Plaintiffs' Opposition Cannot Save the RFRA Claim (Count 1)...................... 1

4             1.   Plaintiffs' Have Not Met Their Burden To Show Standing.................. 1

5

6                  a.   Plaintiffs Fail To Allege Any Genuine Threat of Imminent
                        Prosecution. ........................................................... 2

7                  b.   Plaintiffs Fail To Demonstrate Associational Standing. ............ 4

8
             2.   Plaintiffs' Opposition Confirms They Failed To State a RFRA
9                 Claim........................................................................ 6

10       B.   Plaintiffs' Opposition Confirms Their Constitutional Claims Lack
11            Factual Specificity, Have No Basis in Law, and Should Be Dismissed............ 7

12            1.   First Amendment—Free Exercise (Count 2) ....................................... 7

13            2.   First Amendment—Establishment of Religion (Count 3)................... 8

14            3.   Fifth Amendment—Procedural Due Process (Count 4) ..................... 9

15
              4.   Fifth Amendment—Substantive Due Process (Count 5) ................... 10
16
17            5.   Fifth Amendment—Equal Protection (Count 6)................................ 10

18            6.   Ninth Amendment—Unenumerated Rights (Count 7) ...................... 11

19       C.   Plaintiffs Should Seek an Exemption from DEA in the First Instance.......... 11

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Oliver,*
    510 U.S. 266 (1994).................................................................................................. 10

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.,*
    733 F.3d 939 (9th Cir. 2013) ..................................................................................... 5

*Bd. of Regents of State Colls. v. Roth,*
    408 U.S. 564 (1972)................................................................................................... 9

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,*
    561 U.S. 661 (2010)................................................................................................... 8

*Church of the Holy Light of the Queen v. Mukasey, (CHLQ)*
    615 F. Supp. 2d 1210 (D. Or. 2009).......................................................................... 8

*City of L.A. v. Lyons,*
    461 U.S. 95 (1983).................................................................................................... 3

*Daniels v. Williams,*
    474 U.S. 327 (1986)................................................................................................. 10

*Dorfmont v. Brown,*
    913 F.2d 1399 (9th Cir. 1990) ................................................................................... 9

*Emp. Div. v. Smith,*
    494 U.S. 872 (1990)................................................................................................... 8

*Fleming v. Charles Schwab Corp.,*
    878 F.3d 1146 (9th Cir. 2017) ................................................................................... 2

*Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal (O Centro),*
    546 U.S. 418 (2006)...........................................................................................*passim*

*Graven v. Arizona,*
    2020 WL 134861 (D. Ariz. Jan. 13, 2020) ............................................................... 2

*Gutierrez v. Mun. Court of the Se. Jud. Dist.,*
    838 F.2d 1031 (9th Cir. 1988) ................................................................................. 10

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010).................................................................................................... 2

*Hunt v. Wash. State Apple Adver. Comm'n,*
    432 U.S. 333 (1977)..................................................................................... 5

*Kennedy v. Bremerton Sch. Dist.,*
    142 S. Ct. 2407 (2022)................................................................................ 9

*Leite v. Crane,*
    749 F.3d 1117 (9th Cir. 2014) ................................................................. 2

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971)................................................................................... 9

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)................................................................................... 2

*Navajo Nation v. U.S. Forest Serv.,*
    535 F.3d 1058 (9th Cir. 2008) ................................................................. 6

*NewGen, LLC v. Safe Cig, LLC,*
    840 F.3d 606 (9th Cir. 2016) ................................................................... 2

*Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder,*
    719 F. Supp. 2d 1217 (D. Haw. 2010) ................................................... 3

*Oklevueha Native American Church of Hawaii, Inc. v. Holder,*
    676 F.3d 829 (9th Cir. 2012) ...............................................................3, 4

*Parrat v. Taylor,*
    451 U.S. 527 (1981)...............................................................................9, 10

*San Diego Cnty. Gun Rts. Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ................................................................. 11

*Short v. Berger,*
    2022 WL 1203876 (D. Ariz. Apr. 22, 2022) ........................................ 6

*Simon v. Henning,*
    2014 WL 12853094 (C.D. Cal. Jan. 7, 2014)...................................... 10

*Thomas v. Anchorage Equal Rts. Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ......................................................3, 4, 5, 7

*United States v. Christie,*
    825 F.3d 1048 (9th Cir. 2016) ................................................................. 6

iv

*United States v. Seljan*,
   547 F.3d 993 (9th Cir. 2008) ........................................................................ 3, 7

*Williams v. California*,
   764 F.3d 1002 (9th Cir. 2014) ........................................................................ 7

**Statutes**

19 U.S.C. § 1595a(c)(1)(B) ............................................................................. 9

21 U.S.C. § 801 .............................................................................................. 1

21 U.S.C. § 841 .............................................................................................. 3

42 U.S.C. § 2000bb-1 .......................................................................... 1, 5, 11

**Regulations**

19 C.F.R. § 145.59 ....................................................................................... 7, 9

21 C.F.R. § 1312.11 ...................................................................................... 9

21 C.F.R. § 1312.15 ...................................................................................... 9

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 2

**Other Authorities**

U.S. Dep't of Justice, Guidance Regarding Petitions for Religious Exemption from the
   Controlled Substances Act Pursuant to the Religious Freedom Restoration Act,
   (Nov. 20, 2020), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-
   007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 14, 2022)
   Guidance) ................................................................................................. 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

Plaintiffs' opposition brief remarkably both illuminates and amplifies the Complaint's deficiencies. Plaintiffs do not seriously grapple with Defendants' arguments, nor do they attempt to distinguish the cases Defendants cite. Casting aside inconvenient points and legal authorities, Plaintiffs resort to restating the same conclusory assertions offered in the Complaint. And Plaintiffs' citations to well-known Supreme Court cases for general and ultimately inapposite points of law offer no help to this Court in understanding the legal issues in the case. Plaintiffs, in the end, have failed to state a claim under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1(b), or the Constitution.

At bottom, Plaintiffs' claims all derive from the unavoidable premise that their alleged religious practice involves a controlled substance under the Controlled Substances Act (CSA), 21 U.S.C. § 801: the hallucinogen dimethyltryptamine (DMT). Plaintiffs ask to be freed from the "Damocles' sword" of their admitted CSA violations, Pls' Mem. (Doc. 24) 3, but they have done nothing to avail themselves of means to alleviate that alleged burden—other than file a Complaint in federal court. They seek, for example, to import ayahuasca, which contains DMT, without risk of seizure but have never sought an import permit. Indeed, they have never sought any religious exemption through the Guidance process the Drug Enforcement Administration (DEA) established for exactly this purpose.[1] Plaintiffs' grievances could be addressed—or at least exhausted and then properly asserted in court—if they applied for an exemption. But Plaintiffs concede, and in fact flaunt: "Defendants are correct that 'Plaintiffs ignore this Guidance, both factually and legally.'" Pls.' Mem. 9-10. As a matter of common sense, it is difficult to understand how Defendants could be expected to accommodate a religious group or practice when that accommodation was never requested in the first place.

## I.   LEGAL ARGUMENT

### A.   Plaintiffs' Opposition Cannot Save the RFRA Claim (Count 1).

#### 1.   Plaintiffs' Have Not Met Their Burden To Show Standing.

---

[1] U.S. Dep't of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20, 2020)   https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 15, 2022) (Guidance).

1

Defendants moved to dismiss Plaintiffs' RFRA claim under Rule 12(b)(1) because Plaintiffs have not properly pleaded facts to support subject-matter jurisdiction. Defs.' Mem. (Doc. 23) 5-6. Specifically, Defendants challenged Plaintiffs' standing without disputing the facts alleged in the Complaint. *Id.* at 6-9. "In resolving such a facial attack, the Court accepts the well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Graven v. Arizona*, 2020 WL 134861, at *1 (D. Ariz. Jan. 13, 2020).

But Plaintiffs have now inappropriately filed with their opposition six declarations, five of which are from individual Plaintiffs. Confronting a facial challenge to jurisdiction, a plaintiff cannot cure deficiencies in the complaint through evidence outside the pleadings such as affidavits.[2] In this case, if Plaintiffs wished to adduce additional allegations to support subject-matter jurisdiction, the proper course would have been to amend their Complaint. *See, e.g.,* *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 615 (9th Cir. 2016) ("[A] facial attack in this posture merits only leave to amend the allegations, not wholesale revival of a defaulted defense and an obligation to supplement the record."). Indeed, in the parties' meet and confer regarding this motion, Defendants advised Plaintiffs of their challenge to the court's subject-matter jurisdiction. Nevertheless, Plaintiffs declined the opportunity to amend their Complaint. They should be denied the work-around they attempt to arrogate to themselves here, and the Court should not consider the affidavits filed with Plaintiffs' opposition.

a.    *Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution.*

Plaintiffs have failed to sufficiently plead standing to support their RFRA claim. Plaintiffs must show a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). And, where, as here, there is a claim for injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017). Instead, there must be a "sufficient likelihood that [the plaintiff] will

---

[2] Had Defendants asserted a factual attack, *i.e.* "contest[ed] the truth of the . . . factual allegations," by, for example "introducing evidence outside the pleadings," then Plaintiffs could have supported their "jurisdictional allegations with 'competent proof.'" *Leite v. Crane*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)).

1   again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). And if the

2   alleged feared future harm is prosecution, there must be a "genuine threat of imminent

3   prosecution"; "neither the mere existence of a proscriptive statute nor a generalized threat" is

4   sufficient. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

5        Citing *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 836 (9th

6   Cir. 2012), Plaintiffs argue that "Defendants' reference to *Thomas . . .* is inapposite" because

7   "[u]nlike the injury suffered by Plaintiffs, the *Thomas* plaintiffs never received any warning nor

8   suffered any injury." Pls.' Mem. 4. Pointing to the alleged seizure and accompanying note from

9   more than two years ago, they contend that Defendants have in fact taken recent enforcement

10  action against them. However, this alleged seizure was carried out by U.S. Customs and Border

11  Protection (CBP) exercising its broad authority (uncontested by Plaintiffs) to inspect all

12  packages entering the United States without individualized suspicion, not DEA. *See United

13  States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008). And that alleged injury is the result of

14  Plaintiffs' refusal to obtain registration and import permits, without which imported controlled

15  substances are subject to seizure by CBP as a matter of course. That crucial fact distinguishes

16  this case from the enforcement action in *Oklevueha*.

17       In *Oklevueha*, the Plaintiffs sued DEA following DEA's seizure of a parcel of cannabis

18  cultivated and shipped domestically. *Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder*, 719

19  F. Supp. 2d 1217, 1219 (D. Haw. 2010). This Circuit concluded that "Plaintiffs need not allege

20  a threat of future prosecution because [21 U.S.C. § 841, the statute generally barring handling

21  of controlled substances] has already been enforced against them" by DEA. *Oklevueha*, 676

22  F.3d at 836. More specifically, when DEA "seized Plaintiffs' marijuana pursuant to the CSA,

23  a definite and concrete dispute regarding the lawfulness of that seizure came into existence."

24  *Id.* In other words, DEA had already undertaken an enforcement action against the *Oklevueha*

25  plaintiff premised on that individual's attempt to possess a controlled substance. Thus, the

26  court said that it "need not rely on enforcement of the statute against other groups in

27  determining whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA

28

3

has already been enforced against Plaintiffs through the seizure of their marijuana." *Id.* at 837.

By contrast, the only provision that allegedly has been enforced against Plaintiffs is that they impermissibly imported a controlled substance into the United States. Plaintiffs' assertion, then, that *Oklevueha* somehow renders *Thomas* inapplicable is incorrect. Pls.' Mem. 3-5. CBP's alleged seizure cannot form the basis for a broad pre-enforcement injunction against DEA and the CSA *in toto* because DEA has not "enforced" against Plaintiffs any proscription on handling or use of a controlled substance. *Thomas*, 220 F.3d at 1141. Nor can Plaintiffs claim the alleged seizure demonstrates Defendants are investigating or targeting them; border seizures of controlled substances lacking the necessary import permit (which Plaintiffs have never sought to obtain) occur as a matter of course. As in (and under the guidance of) *Thomas*, "any threat of enforcement or prosecution . . . though theoretically possible—is not reasonable or imminent." *Id.*[3]

b.   *Plaintiffs Fail To Demonstrate Associational Standing.*

Plaintiffs' opposition does not save the Church of the Eagle and the Condor's (CEC) attempt to assert associational standing to sue on its members' behalf. An association may sue on its members' behalf when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and

---

[3] The Hartney declaration seeks to identify prior ayahuasca prosecutions. Hartney Decl. ¶ 2. But of the nine matters mentioned, three are *state* prosecutions—not federal—and thus have no bearing on whether there is an imminent threat of prosecution by federal defendants. *Id.* ¶¶ 10, 12-13. Further, three of the other matters predated the Guidance, *id.* ¶¶ 5-7, the Government affirmatively dropped another, *id.* ¶ 8; Order, *United States v. Agreda-Chindoy*, 4:10-mj-01020, Dkt. 16 (S.D. Tex. 2010), and the third is the note Plaintiff Tafur alleges he received, *id.* ¶ 11. The only incident involving a federal DMT prosecution is *United States v. Vargas*, 8:18-cr-00296 (M.D. Fla. 2018), *id.* ¶ 9, in which a defendant pleaded guilty to one count of possession of DMT in violation of the CSA, resulting in twelve months of probation, *id.* Ex. A at 8. There is no suggestion that this case stemmed from any investigation related to DMT or religious use of ayahuasca. To the contrary, it stemmed from CBP's discovery of 4 liters of an unknown liquid in shampoo bottles in the defendant's luggage at the airport—defendant falsely stated it was hair tonic/shampoo, and the initial testing that led to arrest indicated the presence of other controlled substances, which were only later determined to be DMT. Plea Agreement, *Vargas*, Dkt. 17, at 10-11. In any event, this single example since issuance of the Guidance in 2009 cannot constitute a credible threat of imminent prosecution against the Plaintiffs. *See Thomas*, 220 F.3d at 1141; *see also Oklevueha*, 676 F.3d at 836-37 (where DEA had already undertaken an enforcement action against *the same Plaintiff*, the court "need not rely on enforcement of the statute against other groups").

4

1  (c) neither the claim asserted nor the relief requested requires the participation of individual

2  members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

3  　　　　As to the first factor, as explained above, the Complaint does not sufficiently allege

4  that any member faces the requisite "genuine threat of imminent prosecution." *Thomas*, 220

5  F.3d at 1139. Plaintiffs' opposition states in conclusory fashion that its "Plaintiff members

6  have standing to sue on their own," citing the entirety of the five Plaintiff declarations without

7  any discussion. Putting aside whether those declarations are properly considered in the case,

8  those declarations nevertheless do not show that "at least one of [those] members has suffered

9  sufficient injury to satisfy the case or controversy requirement of Article III." *Ass'n of Pub.*

10  *Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 949 (9th Cir. 2013).

11  　　　　As to the third factor, Plaintiffs misunderstand *Hunt*. Plaintiffs claim that "*Hunt* held

12  that 'individual participation' is not normally necessary when an association seeks prospective

13  or injunctive relief for its members." Pls.' Mem. 7 (quoting *Hunt*, 432 U.S. at 343). But

14  Plaintiffs' characterization is neither *Hunt*'s holding, nor its explanation of the third factor.

15  *Hunt* simply noted that in all cases in which the Supreme Court had "expressly recognized

16  standing in associations to represent their members, the relief sought ha[d] been of this kind

17  [(prospective or injunctive relief)]." 432 U.S. at 343. That description does not render a

18  complaint's request for injunctive relief automatic satisfaction of the third factor.

19  　　　　Rather, the third factor is that "neither *the claim asserted* nor *the relief requested* requires the

20  participation of individual members in the lawsuit." *Id.* (emphases added). Plaintiffs ignore

21  "the claim." Pls.' Mem. 7 (failing to discuss RFRA claim). A RFRA claim requires the court to

22  identify the contours of "*a person's*" sincere religious belief to determine whether it is

23  substantially burdened and, if so, to decide whether the "application of the burden *to the person*"

24  is justified. 42 U.S.C. § 2000bb-1(a)-(b) (emphases added); *see also Gonzalez v. O Centro Espirita*

25  *Beneficente Uniao do Vegetal* (*O Centro*), 546 U.S. 418, 430-31 (2006) (explaining that RFRA

26  contemplates "an inquiry more focused than [a] categorical approach" because it requires

27  "application of the challenged law 'to the person'—the particular claimant whose sincere

28

exercise of religion is being substantially burdened"); *Short v. Berger*, 2022 WL 1203876, at *12 (D. Ariz. Apr. 22, 2022) (explaining that a RFRA "analysis requires the government to consider its actions as applied 'to the person' who is affected"). While the Complaint identifies church members—and leaving aside the propriety of the affidavits attached to Plaintiffs' opposition, *supra* p. 2—Plaintiffs offer only generalized allegations that CEC's members are all "substantial[ly] burden[ed]" by the CSA. *See, e.g.*, Compl. ¶ 64.

### 2.    Plaintiffs' Opposition Confirms They Failed To State a RFRA Claim.

To state a claim under RFRA, Plaintiffs must make a threshold showing that "application of the [CSA] would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro*, 546 U.S. at 428. Plaintiffs' opposition confirms that their allegations fall short.

Assuming CEC is a "religion" and "religious community" as alleged, Compl. ¶ 16, Plaintiffs' brief is silent on whether CEC's alleged members share the same religious beliefs about ayahuasca and whether all practitioners use ayahuasca with a religious mindset. *O Centro*, 546 U.S. at 428 (requiring "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened"); *see United States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016). Again, Plaintiffs cannot "point to other groups who have won accommodations. . . and say 'we'll have what they're having.'" *Id.* at 1061.

Plaintiffs argue in general terms that "[b]y depriving [them] of their sacrament, the government is substantially burdening [them]" and that "[c]ompelling a party to forego a religious practice imposes a substantial burden." Pls.' Mem. 6. But Plaintiffs' Complaint lacks allegations buttressing these generalized statements. Plaintiffs do not show how they have been or would be "coerced to act *contrary* to their religious beliefs." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc) (emphasis added).

*First*, as Defendants have noted, a general risk of seizure—or even an actual seizure—of a Schedule I controlled substance is not itself sufficient proof of a substantial burden where Plaintiffs continue their practice without seeking a DEA registration to abate the risk of seizure. *See* Defs.' Mem. 10. Moreover, Plaintiffs repeatedly admit they have continued and

plan to continue importing and using ayahuasca. *E.g.*, Pls.' Mem. 1, 8; Compl. ¶¶ 16-19, 44, 77. **Second**, Plaintiffs have not pleaded a genuine threat of actual prosecution. Plaintiffs' threadbare allegation stems from the "small . . . note" received after CBP seized the package under 19 C.F.R. § 145.59. Compl. ¶¶ 50-51. The note merely indicated that CBP's Office of Fines, Penalties, and Forfeiture, which handles CBP's administrative processing of seizures, would send "correspondence." *Id.* Neither the seizure nor the note establish any genuine threat of imminent prosecution. As stated above, CBP has broad authority to inspect all packages entering the country without individualized suspicion, *Seljan*, 547 F.3d at 999, and Plaintiffs do not claim this sole seizure, which occurred more than two years ago, Compl. ¶ 50, stemmed from any investigation aimed at them. The note contains a generalized reference to "the mere existence of a proscriptive statute." *Thomas*, 220 F.3d at 1139. And Plaintiffs admit they received no further communication. Compl. ¶ 52. Plaintiffs' attempt to cure those deficiencies with declarations should be disregarded—though the declarations' substance does not support a reasonable fear of prosecution in any event. *See supra* Section I.A.1.a. **Third,** while Plaintiffs' grievances stem from the fact that they lack a DEA registration, they tersely claim that this is not "the issue." Pls.' Mem. 5. But if Plaintiffs successfully obtained a registration through the RFRA exemption process, any alleged burden would disappear.

### B.   Plaintiffs' Opposition Confirms Their Constitutional Claims Lack Factual Specificity, Have No Basis in Law, and Should Be Dismissed.

#### 1.   First Amendment—Free Exercise (Count 2)

Plaintiffs' summary Free Exercise discussion is difficult to parse but clearly fails to address Defendants' arguments: whether Plaintiffs contest that the CSA is a neutral law of general applicability, and whether their religious practice has been sufficiently burdened.

As Defendants explained, Defs.' Mem. 11-12, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)," *Williams v. California*, 764 F.3d 1002, 1011-12 (9th Cir. 2014). To that end, that right "does not inhibit enforcement of otherwise valid regulations of general

application that incidentally burden religious conduct." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010).

Plaintiffs do not appear to contest that the CSA is a neutral law of general applicability. Compl. ¶¶ 67-68; Pls.' Mem. 7-8. They claim their allegations have "render[ed] inapplicable the criterion of 'application of a neutral, generally applicable law to religiously motivated conduct,'" Pls.' Mem. 8 (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 882 (1990)), but offer no explanation or analysis. Similarly, Plaintiffs state in conclusory fashion that "[t]he ban on the religious use of ayahuasca is much more than an incidental burden" but offer no further explanation. Pls.' Mem. 8. As discussed, *see supra* Section I.A.2; Defs.' Mem. 9-11, Plaintiffs have not sufficiently alleged that a governmental action has substantially burdened their religious practice. As Plaintiffs admit, they continue to practice their religion and participate in ayahuasca ceremonies. Compl. ¶¶ 16-19, 77; Pls.' Mem. 1, 8. And while Plaintiffs note they continue to practice even though "Defendants have given Plaintiffs no assurance that they do not continue to be in legal jeopardy," Pls.' Mem. 8, Plaintiffs have never requested such assurance from Defendants, including by applying for an exemption under the Guidance.

## 2.    First Amendment—Establishment of Religion (Count 3)

Plaintiffs' opposition doubles down on its flawed argument that the Government's accommodation (the result of litigation prior to issuance of DEA's Guidance) of two other religious groups violates the Establishment Clause. Pls.' Mem. 8-10; *see O Centro*, 546 U.S. at 418; *Church of the Holy Light of the Queen v. Mukasey* (*CHLQ*), 615 F. Supp. 2d 1210 (D. Or. 2009). But this is not sufficient to support an Establishment Clause claim.

Plaintiffs' claim is premised on Defendants' alleged "decision to prefer the members of other religions." Compl. ¶ 69. But no such decision or preference existed. The two groups, UDV and CHLQ are differently situated. Because each group's case was filed before the Guidance was an available means of seeking a religious exemption, those groups pursued and obtained the only available remedy at the time. Defs.' Mem. 12-13. Indeed, the Guidance process was created as a result of the *O Centro* decision, in which the Supreme Court held that

8

RFRA required "case-by-case consideration of religious exemptions." 546 U.S. at 430-36. It was designed to facilitate the very accommodations that the Court found lacking in *O Centro*. Yet Plaintiffs concede that they "ignore this Guidance, both factually and legally." Pls.' Mem. 9-10. CEC remains able to pursue an exemption, and DEA's granting an exemption to CEC or another entity would not provide the basis of an Establishment Clause claim.[4]

### 3.   Fifth Amendment—Procedural Due Process (Count 4)

Plaintiffs claim CBP violated their procedural due process rights when it seized their ayahuasca, but Defendants explained, Defs.' Mem. 13, due process requirements "do not apply unless [Plaintiffs] can first show that [they have] a cognizable liberty or property interest," *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990). "Where there is no right, no process is due under the Constitution." *Id.* Plaintiffs have not shown a cognizable property interest here.

Because Plaintiffs imported a controlled substance without an import permit, they did not have "a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by existing rules . . . that stem from an independent source such as state law," which is to say, the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Here, Plaintiffs imported the package exactly contrary to the "existing rules," *i.e.*, that Schedule I controlled substances be imported with a proper permit. When CBP intercepts a non-permitted controlled substance, CBP will seize the shipment, and it will be forfeited. *See, e.g.*, 19 U.S.C. § 1595a(c)(1)(B); 19 C.F.R. § 145.59; 21 C.F.R. §§ 1312.11(a), 1312.15.

Plaintiffs cite two cases, *O Centro*, 546 U.S. 418 (2006), and *Parrat v. Taylor*, 451 U.S. 527 (1981), for the point that they had a property interest in the package—but neither case supports that position. ***First***, *O Centro* does not concern a procedural due process claim nor does it discuss any question of property interests. 546 U.S. at 430-36. ***Second***, contrary to

---

[4] Plaintiffs also seem to argue that the purported preferential treatment of the two groups would satisfy the endorsement test under *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Pls.' Mem. 9. But the Supreme Court has "abandoned *Lemon* and its endorsement test offshoot" and instructed: that the "Establishment Clause must be interpreted by reference to historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427-28 (2022). Since Plaintiffs' claim rests on a flawed premise, though, the Court need not reach this analysis.

Plaintiffs' suggestion, in *Parratt* the question of property interests in mailings was not at issue. 451 U.S. at 529 n.1 (noting it was "not contended that under Nebraska law [that] respondent does not enjoy a property interest in the hobby materials [mailed] here in question"). And more relevant to this case, the question of property interest in contraband at the border, including controlled substances imported without a permit, was not covered by the case at all.[5]

### 4.  Fifth Amendment—Substantive Due Process (Count 5)

As to Substantive Due Process, Plaintiffs' opposition again entirely misses the point, misunderstanding Defendants' argument and citing irrelevant Supreme Court precedent. Where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Simon v. Henning*, 2014 WL 12853094, at *5 (C.D. Cal. Jan. 7, 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Because Plaintiffs' claims are grounded in the First Amendment's right to free exercise, Plaintiffs cannot also pursue a generalized substantive due process claim under the Fourteenth Amendment. Defs.' Mem. 14 (citing cases). Plaintiffs do not distinguish this case from the overwhelming body of cases in which courts decline to entertain substantive due process claims that are grounded in separate, more specific constitutional protections.

### 5.  Fifth Amendment—Equal Protection (Count 6)

Plaintiffs' opposition, painted with broad strokes and confused legalese, fails to explain how the Complaint alleged the elements of an Equal Protection claim, Pls.' Mem. 13-14, including purposeful discrimination, which is an essential element, *Gutierrez v. Mun. Court of the Se. Jud. Dist.*, 838 F.2d 1031, 1047 (9th Cir. 1988). Assuming, without conceding, that Plaintiffs have made a sufficient showing that they are members of a protected class, Plaintiffs have plainly not alleged purposeful discrimination based on that status. Plaintiffs' sole argument is that the members of UDV and CHLQ received an accommodation that Plaintiffs currently lack. Pls.' Mem. 13-14. But that argument does not go to any purposeful discrimination, and,

---

[5] Regardless, the Court subsequently overruled *Parratt. Daniels v. Williams*, 474 U.S. 327 (1986).

1   in any event, those groups are differently situated from Plaintiffs. Defs.' Mem. 14-15.

2   Plaintiffs also misunderstand Defendants' alternate argument for dismissing the Equal

3   Protection claim. Plaintiffs' claim is uniquely dependent on their flawed RFRA claim: it is

4   based on a comparison to *UDV* and *CHLQ*, two pre-Guidance RFRA cases. Yet RFRA

5   requires an individualized determination "to the person." 42 U.S.C. § 2000bb-1(a)-(b); *see O*

6   *Centro*, 546 U.S. at 430-36 (requiring "case-by-case consideration of religious exemptions"); *see*

7   *also* Guidance, *supra* note 1. An Equal Protection claim, which depends on differential

8   treatment among the same members of a protected class, cannot logically survive where the

9   underlying right depends on the *individualized* assessment of the religious beliefs of a particular

10  group. For that separate reason, Plaintiffs' Equal Protection claim must be dismissed.

11  **6.      Ninth Amendment—Unenumerated Rights (Count 7)**

12  Plaintiffs cannot—and indeed do not—contend that the Ninth Amendment has been

13  interpreted "as independently securing any constitutional rights for purposes of making

14  constitutional violations." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir.

15  1996). It has not. Instead of grappling with any of the cases Defendants cited, *see* Defs.' Mem.

16  15-16, Plaintiffs simply cite obviously inapposite Supreme Court cases, *see* Pls.' Mem. 15.

17  Because the Ninth Amendment is not a source of rights whereby Plaintiffs can claim a

18  constitutional violation, the claim must be dismissed. *San Diego Cnty.*, 98 F.3d at 1125.

19  **C.      Plaintiffs Should Seek an Exemption from DEA in the First Instance.**

20  Defendants suggest, in the alternative, that the Court may, in its discretion, stay the

21  case while Plaintiffs pursue a religious exemption from DEA. Defs.' Mem. 16-18. While

22  Plaintiffs mistakenly suggest that Defendants asked this Court to "*require*[] that Plaintiffs apply

23  for a religious exemption from the CSA." Pls.' Mem 16 (emphasis added), Defendants were

24  clear: "Courts have discretion to decline to exercise review on administrative exhaustion

25  grounds even when the governing statutes and regulation do not make exhaustion mandatory."

26  Defs.' Mem. 16. That remains true. An order deferring litigation until the administrative

27  process, if pursued, has run its course would be proper and conserve judicial resources. *Id.*

28

1

2   Respectfully submitted this 5th day of January, 2023.

3           BRIAN M. BOYNTON
4           Principal Deputy Assistant Attorney General

5           BRIGHAM J. BOWEN
6           Assistant Branch Director

7           */s/ Giselle Barcia*
8           GISELLE BARCIA
            Trial Attorney
9           Civil Division, Federal Programs Branch
            U.S. Department of Justice
10          1100 L Street NW
11          Washington, D.C. 20005
            Telephone: (202) 305-1865
12          Fax: (202) 514-8640
13          E-mail: giselle.barcia@usdoj.gov

14          *Counsel for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 5, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Jack Silver
Law Office of Jack Silver
708 Gravenstein Hwy N, Ste. 407
Sebastopol, CA 95472-2808
Tel.: 707-528-8175
Fax: 707-829-0934
E-mail: lhm28843@sbcglobal.net
E-mail: jsilverenvironmental@gmail.com

Gilbert Paul Carrasco
Willamette University College of Law
19431 Sunray Lane, Ste. 102
Huntington Beach, CA 92648-6401
Tel.: 714-698-8142
E-mail: carrasco@willamette.edu

Ismail L Ali
1530 Campus Dr.
Berkeley, CA 94708
Tel.: 559-801-7317
E-mail: lourido.ali@gmail.com

Martha J Hartney
Hartney Law LLC
4450 Arapahoe Ave.
Boulder, CO 80303
Tel.: 303-747-3909
Fax: 303-835-7199
E-mail: martha@hartneylaw.com

Sean T McAllister
McAllister Law Office PC
4035 E 3rd Ave.
Denver, CO 80220
Tel.: 720-448-6235
E-mail: sean@mcallisterlawoffice.com

13

1

2      *s/ Giselle Barcia*
       GISELLE BARCIA
3      Trial Attorney
       Civil Division, Federal Programs Branch
4      U.S. Department of Justice

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Church of the Eagle and the Condor, et al., | No. CV-22-01004-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Merrick Garland, et al., | |
| Defendants. | |

The Court now considers Defendants' Motion to Dismiss ("Motion") Plaintiffs'[1] Complaint. (Doc. 23, ("Mot.").) The Court will grant the Motion in part and deny the Motion in part.

## I.    BACKGROUND

This case arises out of Plaintiffs' importation and use of ayahuasca for religious purposes. (Doc. 1, Compl. ¶ 16.)

Ayahuasca is a sacramental tea brewed from the ayahuasca vine and the chacruna leaf, with spiritual significance for many indigenous tribes in South America. (*Id.* ¶ 25.) The chacruna leaf contains N,N-dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act ("CSA"). (*Id.*); *see* 21 U.S.C. § 812(c)(6). Plaintiffs allege that ayahuasca produces "spiritual visions" and is not known to have wide recreational use. (*Id.* ¶ 28.) Since 2006, at least two religious organizations have received accommodations under the Religious Freedom Restoration Act ("RFRA") to use ayahuasca

---

[1]   Referring collectively to the Church of the Eagle and the Condor ("Church"), Joseph Tafur, Belinda Eriacho, Kewal Wright, Benjamin Sullivan, and Joseph Bellus.

for religious purposes in the United States. (*Id.* ¶¶ 29, 33–36.)

### A.      The Church's Beliefs and Ayahuasca Use

In 2017, Mr. Tafur, Ms. Eriacho, and Rodney Garcia formed the Church in Phoenix, Arizona. (*Id.* ¶¶ 37, 43.) The Church has approximately forty members and describes itself as a "faith-merging belief system" that has adopted practices from the indigenous Shipibo people of Peru and the "Native North American peoples." (*Id.* ¶¶ 30, 38, 44.) Like many indigenous tribes in South America, the Shipibo people consider ayahuasca to be a "sacred medicine" with spiritual and ceremonial significance. (*Id.* ¶¶ 25, 30, 39.) The Church conducts ayahuasca ceremonies to pursue "spiritual healing" and "wholeness," and the Church believes ayahuasca is a conscious spiritual being. (*Id.* ¶¶ 40–41, 54.) The Church and its members are "dedicated to universal spirituality in fulfillment of the Prophecy of the Eagle and the Condor" and believe ayahuasca is integral to this prophecy. (*Id.* ¶¶ 37, 39–41.) Specifically, the Church believes that the ceremonial use of ayahuasca is expanding beyond South America to merge with Native North American principles "in fulfillment of the Prophecy, to engender spiritual community across all races, ethnicities, and nationalities and to instruct its members in understanding and valuing indigenous spiritual practices, emphasizing the importance of maintaining relationships by developing pride in one's body, mind, soul, spirit and honoring all life." (*Id.* ¶ 39 (internal quotations omitted).)

Ayahuasca is the Church's only sacrament. (*Id.* ¶ 44.) The Church's ayahuasca supply is accessible only to Mr. Tafur, Ms. Eriacho, and Mr. Garcia and the Church maintains records of its ayahuasca importation and use. (*Id.* ¶ 46.) As the "ayahuasquero," Mr. Tafur oversees the Church's ayahuasca use and is the only person permitted to serve the tea during ayahuasca ceremonies. (*Id.* ¶¶ 42, 46.) The Church screens each prospective ayahuasca ceremony participant for any medical and psychological conditions that may interact with ayahuasca and provides participants with written ceremony guidelines. (*Id.* ¶ 47.) The loss of any ayahuasca is considered a sacrilege. (*Id.* ¶ 27.)

### B.   CBP's Seizure of Plaintiffs' Ayahuasca

It is generally unlawful to import controlled substances into the United States. *See* 21 U.S.C. § 952. U.S. Customs and Border Protection ("CBP") is authorized to seize "[a]ll mail shipments containing articles the importation of which is prohibited, or articles imported into the United States in any manner contrary to law." 19 C.F.R. § 145.59(a); *see* 21 C.F.R. § 1312.15. However, the Attorney General may approve limited importation and transportation of Schedule I controlled substances. 21 U.S.C. §§ 954, 957, 958(a); *see* 21 C.F.R. §§ 1307.03, 1312.11(a).

In September 2020, CBP intercepted and seized a shipment of ayahuasca intended for delivery to the Church. (Compl. ¶ 50.) Plaintiffs do not allege that they ever sought approval to import the ayahuasca into the United States. (*See generally id.*) Mr. Tafur received a note bearing the Department of Homeland Security's ("DHS") seal that stated:

> Notice: Narcotics and/or other contraband prohibited from entry into the United States, have been seized and removed for appropriate action under 19CFR145.509 [sic]. You will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near future.

(*Id.*) Plaintiffs received no further correspondence relating to CBP's seizure and Plaintiffs allege that CBP "summarily destroyed" the ayahuasca shipment. (*Id.* ¶ 52.) In March 2021, the Church submitted Freedom of Information Act ("FOIA") requests to CBP and the Drug Enforcement Administration ("DEA") inquiring about ayahuasca seizures. (*Id.* ¶ 55.) CBP allegedly indicated that it "had seized hundreds of shipments" of what Plaintiffs believe is ayahuasca. (*Id.*) CBP and the DEA have otherwise not responded to Plaintiffs' FOIA requests. (*Id.* ¶¶ 56–58.) Plaintiffs allege that the DEA has leveraged CBP's ayahuasca seizures to prosecute people using ayahuasca for religious purposes. (*Id.* ¶ 59.) Plaintiffs have continued to import and use ayahuasca after CBP's seizure despite Plaintiffs' fear that Defendants may enforce the CSA against them. (*See id.* ¶¶ 16–19, 44.)

### C.   Procedural Background

Plaintiffs filed the Complaint on June 9, 2022 against the DEA, CBP, DHS, and Attorney General, seeking an accommodation for their religious use of ayahuasca under RFRA. (*Id.* ¶¶ 20–24, 63–64.) Plaintiffs also allege, *inter alia*, that Defendants have

1   violated Plaintiffs' First Amendment, due process, and equal protection rights. (*Id.* ¶¶ 65–
2   77.) Defendants filed the Motion on November 15, 2022, arguing that Plaintiffs lack
3   standing to bring their RFRA claim and that Plaintiffs otherwise fail to state a claim. (*See*
4   Mot. at 6, 11.) Plaintiffs filed their Response on December 14, 2022, to which Defendants
5   replied on January 5, 2023. (Doc. 24, Resp. in Opp'n ("Resp."); Doc. 25, Reply.)

## II.   LEGAL STANDARDS & ANALYSIS

### A.   Standing to Bring a RFRA Claim

8       In considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court
9   takes the allegations in the plaintiff's complaint as true. *Wolfe v. Strankman*, 392 F.3d 358,
10  362 (9th Cir. 2004) (citations omitted). It is the plaintiff's burden to show "that the facts
11  alleged, if proved, would confer standing." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d
12  1136, 1140 (9th Cir. 2003). Under Article III of the Constitution, a plaintiff does not have
13  standing unless he can show (1) an "injury in fact" that is concrete and particularized and
14  actual or imminent (not conjectural or hypothetical); (2) that the injury is fairly traceable
15  to the challenged action of the defendant; and (3) that it is likely, as opposed to merely
16  speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of*
17  *Wildlife*, 504 U.S. 555, 560–61 (1992). In cases for prospective injunctive relief, "past
18  wrongs do not in themselves amount to that real and immediate threat of injury necessary
19  to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).
20  Rather, a plaintiff's "standing to seek the injunction requested depend[s] on whether he [is]
21  likely to suffer future injury." *Id.* at 105. "At the pleading stage, general factual allegations
22  of injury resulting from the defendant's conduct may suffice[.]" *Lujan*, 504 U.S. at 561.

23      Where plaintiffs raise a pre-enforcement claim to enjoin defendants from enforcing
24  a law against them, the plaintiffs must "allege a 'genuine threat of imminent'" enforcement.
25  *Oklevueha Native Am. Church of Haw., Inc. v. Holder* (*Oklevueha I*), 676 F.3d 829, 835
26  (9th Cir. 2012).[2] The court considers "(1) whether the plaintiffs have articulated a 'concrete

---

27  [2] In *Oklevueha I*, plaintiffs sought to enjoin the government from enforcing the CSA against
28  plaintiffs for their allegedly religious use of marijuana after the DEA had seized a shipment
    of plaintiffs' marijuana more than two years prior. 676 F.3d at 835–36. The Ninth Circuit
    applied the pre-enforcement "genuine threat" analysis because plaintiffs asserted their

plan' to violate the law in question; (2) whether the government has communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the statute." *Id.* Plaintiffs have alleged sufficient facts to meet this standard.

A plaintiff may satisfy the "concrete plan" element where the plaintiff "actually did violate [the law at issue] on a number of occasions." *Oklevueha I* at 836 (quoting *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006)) (finding plaintiffs satisfied the concrete plan element where "[p]laintiffs are currently violating and plan to continue to violate the CSA by purchasing and consuming marijuana"); *see Ariz. Yage Assembly*, 595 F. Supp. 3d at 882–83 (plaintiffs failed to allege a concrete plan to violate the CSA where plaintiffs planned to use ayahuasca only if the court issued an injunction). Plaintiffs allege that they have continued to import, possess, and use ayahuasca following CBP's 2020 seizure and "are violating and intend to continue to violate" the CSA. (Compl. ¶¶ 16–19, 44.) Plaintiffs have alleged a "concrete plan" to violate the CSA. Further, because the CSA has already been enforced against Plaintiffs, they need not allege a threat of future prosecution or a history of past prosecution. *Oklevueha I*, 676 F.3d at 836–37 (*See* Mot. at 7–8; Resp. at 4–5.) "When the Government seized Plaintiffs' [ayahuasca] pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence."[3] *Id.* at 836.

Defendants also contend that RFRA requires that all forty individual Church

---

claims "for the first time in an action for prospective relief (and not in a criminal proceeding)," and indicated that the government's prior enforcement of the CSA against plaintiffs "mitigat[ed] the relevance of a hypothetical future-enforcement." *Id.* at 835; *see Arizona Yage Assembly v. Garland*, 595 F. Supp. 3d 869, 882 n.11 (D. Ariz. 2022) (analyzing plaintiff's standing to pursue a RFRA claim under *Oklevueha I* after the government had seized four shipments of plaintiffs' ayahuasca). Plaintiffs' circumstances are factually analogous, so the Court analyzes Plaintiffs' request for injunctive relief as a pre-enforcement claim. (*See* Compl. ¶¶ 4, 6–7, 63–64, 89.)

[3] Defendants contend that *Oklevueha I* is inapposite because the DEA did not "enforce" the CSA against Plaintiffs when the CBP seized Plaintiffs' ayahuasca. (Reply at 3–4.) Defendants also argue that Plaintiffs have not alleged that Defendants have investigated Plaintiffs since the 2020 seizure. (*Id.* at 4.) In finding that the plaintiffs' fear of enforcement was not speculative after FedEx turned the plaintiffs' package of marijuana over to the DEA, the *Oklevueha I* Court emphasized that the plaintiffs should not "be forced to accept the possibility of continued seizure[s]" simply because they could not show that the Government was investigating or targeting plaintiffs. 676 F.3d at 837 n.2.

1   members' participate in this suit because the Court must assess the CSA's burden on each

2   member's religious beliefs. (Mot. at 8–9.) In permitting the plaintiffs' RFRA claim to

3   proceed without requiring the individual members' participation, the *Oklevueha I* Court

4   found that, "it can reasonably be supposed that the [the church's prospective relief], if

5   granted, will inure to the benefit of those members of the association actually injured." 676

6   F.3d at 839 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). The same is true for the

7   Church in this case. Plaintiffs have standing to bring their RFRA claim.[4]

8       **B.      12(b)(6)**

9       A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the

10   lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim.

11   *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In determining

12   whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are

13   presumed true, and the pleadings are construed in the light most favorable to the

14   nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th

15   Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that

16   actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"

17   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S.

18   232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the

19   nonconclusory 'factual content,' and reasonable inferences from that content, must be

20   plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*,

21   572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

22   In other words, the complaint must contain enough factual content "to raise a reasonable

23   expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

24       **1.      RFRA**

25       RFRA provides that the government "shall not substantially burden a person's

26   _____

27   [4] The Court declines Defendants' request for the Court to dismiss or stay the case until
     Plaintiffs apply directly to the DEA for an exemption. (*See* Mot. at 16.) RFRA "plainly
     contemplates" that this Court may consider Plaintiffs' requested relief from the CSA.
28   *Oklevueha I*, 676 F.3d at 838 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao
     de Vegetal*, 546 U.S. 418, 434 (2006)).

1    exercise of religion" unless the government "demonstrates that application of the burden

2    to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the

3    least restrictive means of furthering that compelling governmental interest." 42 U.S.C.

4    §§ 2000bb-1(a)–(b). To state a RFRA claim, Plaintiffs must allege that the CSA

5    substantially burdens a sincere exercise of religion. *O Centro*, 546 U.S. at 428.

6           Defendants first argue that Plaintiffs have failed to sufficiently allege that each

7    Plaintiff "share[s] the same religious beliefs about ayahuasca." (Mot. at 9.) Plaintiffs allege

8    that ayahuasca is their only sacrament and is indispensable to their religious expression.

9    (Compl. ¶¶ 39–41, 44.) Plaintiffs believe that ayahuasca is a living spiritual being and

10   consider any diversion of ayahuasca to be a sacrilege. (*Id.* ¶¶ 27, 40, 54.) Moreover,

11   Plaintiffs continue to practice their ayahuasca ceremonies despite the possibility that

12   Defendants may enforce the CSA against them. (*Id.* ¶¶ 16–19, 44); *c.f. Church of the Holy*

13   *Light of the Queen v. Mukasey* ("*CHLQ*"), 615 F. Supp. 2d 1210, 1219 (D. Or. 2009)

14   (plaintiffs' use of ayahuasca in secret demonstrated plaintiffs' commitment to their religion

15   after the government threatened plaintiffs with prosecution), vacated on other grounds,

16   *Church of Holy Light of Queen v. Holder*, 443 F. App'x 302 (9th Cir. 2011). Construed

17   most favorably to Plaintiffs, the Complaint sufficiently alleges the sincerity of Plaintiffs'

18   religious beliefs. *See Multi Denominational Ministry of Cannabis and Rastafari, Inc. v.*

19   *Gonzales*, 474 F. Supp. 2d 1133, 1146 (N.D. Cal. 2007) ("[P]lainly it is inappropriate to

20   question the sincerity of plaintiffs' religious beliefs in a Rule 12(b)(6) motion.").

21          Plaintiffs have also alleged that complying with the CSA would substantially burden

22   Plaintiffs' exercise of religion. "A statute burdens the free exercise of religion if it puts

23   substantial pressure on an adherent to modify his behavior and to violate his beliefs,

24   including when, if enforced, it results in the choice to the individual of either abandoning

25   his religious principle or facing criminal prosecution." *Guam v. Guerrero*, 290 F.3d 1210,

26   1222 (9th Cir. 2002); *see Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70

27   (2008). Plaintiffs allege that the ayahuasca ceremony is integral to fulfilling the "Prophecy

28   of the Eagle and the Condor" and to Plaintiffs' "direct and personal connection to nature

and the Divine." (Compl. ¶¶ 39–40.) Plaintiffs allege that they are forced to choose between abandoning their use of ayahuasca—the central tenet of their religion—or face the prospect of criminal prosecution under the CSA. (*Id.* ¶¶ 60–61.) This is sufficient to state a RFRA claim. *Compare CHLQ*, 615 F. Supp. 2d at 1219 (prohibiting plaintiffs from using ayahuasca would substantially burden their exercise of religion where the ceremonial use of ayahuasca was the "sole means by which plaintiffs are able to experience their religion") (citation omitted) (cleaned up), *with Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1015–16 (9th Cir. 2016) ("*Oklevueha II*") (prohibiting plaintiffs' cannabis use was not a substantial burden because plaintiffs' essential sacrament was peyote and cannabis served no unique religious function). The Court denies the Motion as to Plaintiffs' RFRA claim.

### 2. Free Exercise of Religion

Plaintiffs allege that Defendants have violated Plaintiffs' free exercise of religion by enforcing the CSA and seizing Plaintiffs' ayahuasca. (Compl. ¶ 66.) The Free Exercise Clause "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability.'" *Williams v. California*, 764 F.3d 1002, 1011–12 (9th Cir. 2014) (quoting *Employment Div., Dep't of Human Res. Of Or. v. Smith*, 494 U.S. 872, 879 (1990)); (*see* Mot. at 11.) A law that is not neutral and generally applicable receives strict scrutiny. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Tingley v. Ferguson*, 47 F.4th 1055, 1084 (9th Cir. 2022). But a neutral and generally applicable law "need not be justified by a compelling governmental interest" even if it creates a substantial burden on "a particular religious practice." *Church of the Lukumi*, 508 U.S. at 531; *see San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir. 2004).

Plaintiffs do not challenge that the CSA is a neutral, generally applicable law, nor that Defendants' regulation of controlled substances under the CSA is rationally related to a legitimate government purpose.[5] (Resp. at 8); *Ministry of Cannabis*, 474 F. Supp. 2d at

---

[5] The Supreme Court suggested in *Smith* that if a generally applicable law implicates other constitutional protections along with the free exercise of religion, it must withstand strict

1144 (citing *Smith* 494 U.S. at 884–85) (dismissing First Amendment claim because controlled substances are proscribed by the CSA); *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 2012 WL 6738532, at *9 (D. Haw. Dec. 31, 2012); *see Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 938 (9th Cir. 2000) (affirming district court's application of rational basis review on a 12(b)(6) motion to dismiss). The Court grants the Motion on Plaintiffs' Free Exercise Clause claim.

### 3.    Establishment Clause

"Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause ensures an "individual's freedom to believe, to worship, and to express himself in accordance with the dictates of his own conscience." *Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1137 (9th Cir. 2018). Plaintiffs allege that Defendants' accommodation of other religions' ayahuasca use "constitutes an Establishment of Religion" because Defendants have not accommodated Plaintiffs' use. (Compl. ¶¶ 68–69.) In support of their claim, Plaintiffs point to religious sects that have received exemptions under RFRA: the Uniao de Vegetal ("UDV") and the Santo Daime Church ("Santo Daime"). (*Id.* ¶¶ 33–36, 68.)

Defendants argue that Plaintiffs "cannot simply point" to UDV's and Santo Daime's religious accommodations "and say 'we'll have what they're having'" when Plaintiffs have not alleged that they ever applied for an exemption from the CSA, let alone that the DEA denied them one. (Mot. at 9 (quoting *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016)); s*ee generally* Compl.) The Court agrees. Plaintiffs contend that the DEA may not "assess religious uses of anything" and that Defendants have "advance[d]" other religions by prohibiting Plaintiffs' use of ayahuasca. (Resp. at 10.) But Plaintiffs have not cited any authority suggesting that Defendants must assume that Plaintiffs are exempt from the CSA whenever another group seeks and receives approval to import and use ayahuasca

_____

scrutiny. 494 U.S. at 881. Plaintiffs argue that their Complaint involves this so-called "hybrid rights" claim. (Resp. at 8; Compl. ¶ 66.) The Ninth Circuit has questioned whether such a claim exists and the Court declines to address this possibility. *Tingley*, 47 F.4th at 1089 n.5; *Parents for Privacy v. Barr*, 949 F.3d 1210, 1237 (9th Cir. 2020); *see Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) (discussing cases casting doubt on a "hybrid rights" analysis). Plaintiffs' hybrid rights claim is dismissed.

1  for religious purposes. (*See* Compl. ¶¶ 53, 55; Resp. at 9.)

2      Further, both UDV and Santo Daime received exemptions from the CSA pursuant

3  to RFRA. (*See* Compl. ¶¶ 33–36.) RFRA expressly tasks the courts with determining

4  whether to accommodate an alleged religious practice. 42 U.S.C. § 2000bb-1(c) (enabling

5  a person "whose religious exercise has been burdened" to initiate judicial proceedings to

6  obtain relief); *see O Centro*, 546 U.S. at 434. This requires courts to conduct fact-specific

7  inquiries into the alleged religious exercise; "Congress has determined that courts should

8  strike sensible balances, pursuant to [RFRA's] compelling interest test that requires the

9  Government to address the *particular practice at issue*." *O Centro*, 546 U.S. at 439

10 (emphasis added); (Mot. at 12.) RFRA's individualized inquiry is an instance where the

11 government must accommodate UDV and Santo Daime's ayahuasca use and "may do so

12 without violating the Establishment Clause."[6] *Hobbie v. Unemployment Appeals Comm'n*

13 *of Fla.*, 480 U.S. 136, 144–45 (1987).   The Court grants the Motion on Plaintiffs'

14 Establishment Clause claim.

15              **4.   Due Process Claims**

16              **a. Procedural Due Process**

17      Plaintiffs allege that CBP violated Plaintiffs' rights to procedural due process

18 because CBP "deprived Plaintiffs of their ownership, possession, and use" of ayahuasca

19 without notice and an opportunity to be heard. (Compl. ¶ 71.) To state a procedural due

20 process claim, a plaintiff must allege a deprivation of a protected property or liberty interest

21 without adequate procedural protections. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–

22 73 (1972).  Defendants argue that Plaintiffs have failed to state a due process claim because

23 Plaintiffs do not allege any cognizable property interest in the ayahuasca. (Mot. at 13.)

24      To allege a cognizable property interest, a plaintiff must "have a legitimate claim of

25

26 [6] Citing to *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005), which held that the Religious
   Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") is "compatible with the
27 Establishment Clause" while enabling prisoners to seek religious accommodations, the *O
   Centro* Court emphasized RFRA's case-by-case analysis of religious practices. *O Centro*,
28 546 U.S. at 436. As with RLUIPA, courts may accommodate religious practices without
   running afoul of the Establishment Clause by applying RFRA's compelling interest test "in
   an appropriately balanced way." *See id.* (quoting *Cutter*, 544 U.S. at 720).

1  entitlement" to the property. *Roth*, 408 U.S. at 577. A person cannot have a legally

2  protected property interest in "per se contraband," which may be "summarily forfeited

3  without any due process protections." *Conservation Force v. Salazar*, 677 F. Supp. 2d

4  1203, 1210 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011). "An object is contraband

5  per se if its possession, without more, constitutes a crime; or in other words, if there is no

6  legal purpose to which the object could be put." *United States v. Harrell*, 530 F.3d 1051,

7  1057 (9th Cir. 2008); *c.f. Gonzales v. Raich*, 545 U.S. 1, 27 (2005) ("The CSA designates

8  marijuana as contraband for *any* purpose" by listing it as a Schedule I substance). Because

9  it is illegal for any civilian to possess DMT for any purpose under the CSA, Plaintiffs'

10  ayahuasca was subject to summary forfeiture. 21 U.S.C. §§ 812(c)(6), 881. Though

11  Plaintiffs contend that they had a property interest in the ayahuasca because it "is a

12  protected substance" under RFRA, Plaintiffs point to no authority indicating that they had

13  a legitimate property interest in the ayahuasca without first receiving an accommodation

14  under RFRA or registering to import controlled substances.[7] (Resp. at 11); *See e.g.* 21

15  C.F.R. §§ 1301.11, 1312.11(a), 1312.15. The Court grants the Motion on Plaintiffs'

16  procedural due process claim.

### b. Substantive Due Process

18      Plaintiffs also allege that CBP's seizure of ayahuasca and threat of prosecution

19  "violate Plaintiffs' right to worship God according to the dictates of their own conscience

20  and deprive them of their liberty in violation" of due process. (Compl. ¶ 73; Resp. at 12

21  (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).) Defendants counter that Plaintiffs

22  cannot raise a generalized substantive due process claim when Plaintiffs' claim is

---

[7] Plaintiffs argue they had a "right to receive mail." (Resp. at 11 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).) Unlike Plaintiffs' package, the prisoner's mail in *Parratt* did not contain contraband. 451 U.S. at 531. Attempting to circumvent ayahuasca's status as contraband, Plaintiffs also contend that CBP deprived Plaintiffs of their liberty interest in using ayahuasca for religious purposes. (Resp. at 10–11 (a person has a liberty interest in "worship[ping] God according to the dictates of his own conscience" (quoting *Roth*, 408 U.S. at 572)).) Plaintiffs cite no authority that would support Plaintiffs' due process claim when Plaintiffs have not followed the very procedures designed to prevent summary forfeiture of the ayahuasca. *See* 21 U.S.C. § 958(d) (procedural protections for an applicant seeking registration under the CSA); (*See* Compl. ¶ 25 (acknowledging that DMT is regulated by the CSA); Mot. at 13 (explaining that a permit is required to import any controlled substances).)

1   "grounded in the First Amendment's right to free exercise." (Mot. at 14.) The Court agrees

2   with Defendants.

3          "Substantive due process analysis must begin with a careful description of the

4   asserted right . . . ." *Reno v. Flores*, 507 U.S. 292, 302 (1993). "[W]here another provision

5   of the Constitution provides an explicit textual source of constitutional protection, a court

6   must assess a plaintiff's claims under that explicit provision and 'not the more generalized

7   notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quotations

8   and citation omitted) (holding that challenges to unreasonable government searches are

9   analyzed under the Fourth Amendment instead of the Fourteenth Amendment). Plaintiffs'

10  due process claim reiterates their free exercise claim—CBP allegedly interfered with

11  Plaintiffs' ayahuasca use, thereby violating a central tenet of Plaintiffs' religious beliefs

12  and practices. (*See* Compl. ¶¶ 66, 73.) Because the First Amendment provides Plaintiffs an

13  "explicit textual source of constitutional protection," the Court dismisses Plaintiffs'

14  substantive due process claim.[8]

15                    **5.    Equal Protection**

16          Plaintiffs allege that Defendants have denied Plaintiffs the equal protection of the

17  laws by accommodating "similarly situated" religions' ayahuasca use. (Compl. ¶¶ 48, 75

18  (referencing UDV and Santo Daime).) Defendants respond that Plaintiffs have not stated

19  an equal protection claim, as Plaintiffs have not plausibly alleged that Defendants

20  discriminated against Plaintiffs because of Plaintiffs' religion. (Mot. at 14.) The Court

21  agrees with Defendants.

22          The Equal Protection Clause demands that "all persons similarly situated should be

23  treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985);

24

---

25  [8] The Court also dismisses Plaintiffs' Ninth Amendment claim. The Ninth Amendment
    does not "independently secur[e] any constitutional rights for purposes of making out a
26  constitutional violation," but works "in tandem" with the Fifth Amendment to protect
    fundamental rights. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th
27  Cir. 1996) (holding that "the Ninth Amendment does not encompass an unenumerated,
    fundamental, individual right to bear firearms") (quoting *Schowengerdt v. United States*,
28  944 F.2d 483, 490 (9th Cir. 1991)); *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp.
    2d 1142, 1156 (N.D. Cal. 2011) (citing *Raich v. Gonzales*, 500 F.3d 850, 862 (9th Cir.
    2007)).

1   *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). To state an equal protection claim, a plaintiff

2   may allege "that defendants acted with an intent or purpose to discriminate against the

3   plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d

4   668, 686 (9th Cir. 2001). Plaintiffs do not claim that Defendants discriminated against

5   Plaintiffs by seizing Plaintiffs' ayahuasca or denying Plaintiffs the right to use ayahuasca

6   because of their religion.[9] (Mot. at 14–15; *see generally* Compl.) Rather, Plaintiffs allege

7   only that CBP seized a package containing a Schedule I controlled substance that Plaintiffs

8   attempted to illegally import into the United States. (Compl. ¶ 50.) The Court grants the

9   Motion on Plaintiffs' Equal Protection Claim.

10  //

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

---

25  [9] Plaintiffs relatedly argue that Defendants must demonstrate a compelling interest to

26  enforce the CSA and deprive Plaintiffs of their right to use ayahuasca. (Resp. at 13 (citing *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974)).) Because the CSA does not violate

27  the First Amendment, it need only survive rational basis review for Plaintiffs' equal protection claim. *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004); *Johnson*, 415 U.S. at 375

28  n.14. Plaintiffs do not allege any facts to support a plausible claim that Defendants lack a legitimate interest in enforcing the CSA except against persons who have complied with procedures such as RFRA.

**III.     CONCLUSION**

The Court grants Defendants' Motion to Dismiss Plaintiffs' constitutional claims for failure to state a claim. Because Plaintiffs have standing to bring a RFRA claim and have alleged that the CSA substantially burdens Plaintiffs' sincere religious practice, the Court denies Defendants' Motion as to Plaintiffs' RFRA claim.

**IT IS ORDERED** denying Defendants' Motion to Dismiss Count 1 of the Complaint (Doc. 23).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss Counts 2, 3, 4, 5, 6 and 7 of the Complaint (Doc. 23).

Dated this 20th day of March, 2023.

Susan R. Bolton
United States District Judge

- 14 -